**Case No. 24-3155**

*In the*

# United States Court of Appeals
*for the*
# Ninth Circuit

---

FUAMATALA MOLI,
*Plaintiff-Appellant,*

v.

KING COUNTY – STATE OF WASHINGTON;
KING COUNTY METRO TRANSIT; JOHN AND JANE DOES, 1–10,
*Defendants-Appellees.*

---

*Appeal from the United States District Court for the Western District of Washington (Seattle),*
*Case No. 2:23-cv-00823-RSL · Honorable Robert S. Lasnik, District Judge*

## APPELLANT'S OPENING BRIEF

EMILY C. MIMNAUGH
PACIFIC JUSTICE INSTITUTE
1580 Grand Point Way, Suite 33171
Reno, Nevada 89533
Telephone: (916) 857-6900
emimnaugh@pji.org

*Counsel for Appellant,*
*Fuamatala Moli*

 COUNSEL PRESS INC. · (213) 680-2300     PRINTED ON RECYCLED PAPER

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iv

INTRODUCTION .......................................................................... 1

JURISDICTIONAL STATEMENT ................................................... 3

PERTINENT AUTHORITIES ......................................................... 4

ISSUES PRESENTED FOR REVIEW ............................................ 5

STATEMENT OF THE CASE ........................................................ 7

SUMMARY OF THE ARGUMENT ................................................ 12

ARGUMENT ............................................................................. 15

   I.   Standards of Review ......................................................... 15

   II.  Ms. Moli adequately alleged a violation of Title VII and satisfied the fair notice pleading standard ......................... 16

       A.   Ms. Moli's Complaint pleads each element of a disparate treatment claim to show she is entitled to relief ......................................................................... 17

          1.  *"Adverse Employment Action."* Defendants terminated Ms. Moli. ........................................... 17

          2.  *"Because Of."* Ms. Moli was terminated "because of" Defendants' refusal to grant her an accommodation ........................................................ 18

          3.  *"Religion."* Ms. Moli required accommodation because her religious beliefs conflict with the Mandate ................................................................ 20

i

B.    Ms. Moli asserted a "religious belief" that conflicts with the Mandate, but the Order impermissibly narrowed the scope of "religious belief" protected under Title VII and excluded her ................................. 23

     1. The Ninth Circuit cases cited by the Order actually support the conclusion that Ms. Moli asserted a religious belief that conflicts with the Mandate ................................................................. 24

     2. The Oregon District Court cases cited by the Order actually support the conclusion that Ms. Moli asserted a religious belief that conflicts with the Mandate ............................................................. 32

C.    The Order required a showing that an employer had "actual knowledge" and "timely notice" that an accommodation was needed, which is error ................ 42

III. The Order's denial of leave to amend was an abuse of discretion ........................................................................... 50

A.    Ms. Moli was denied leave to amend because of the erroneous addition of an "actual knowledge" and "timely notice" requirement ......................................... 50

B.    Ms. Moli provided a short and plain statement of her claims, and any defect in pleading could have been cured either through amendment or discovery ............ 55

IV. The Order failed to meaningfully address or remand Ms. Moli's WLAD claim ...................................................... 58

CONCLUSION ................................................................................. 60

CERTIFICATE OF COMPLIANCE ................................................ 64

STATEMENT OF RELATED CASES ............................................. 65

CERTIFICATE OF SERVICE ......................................................... 66

ADDENDUM .............................................................................. Add. 1

# TABLE OF AUTHORITIES

**CASES**

*Am. Postal Workers Union v. Postmaster Gen.,*
    781 F.2d 772 (9th Cir. 1986)......................................................58

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................... 16, 33, 55

*Bacon v. Woodward,*
    No. 22-35611, 2024 U.S. App. LEXIS 14756
    (9th Cir. June 18, 2024)............................................................54

*Balistreri v. Pacifica Police Dep't,*
     901 F.2d 696 (9th Cir. 1988) ...................................................54

*Bartholomew v. Washington,*
    No. 3:23-cv-05209-DGE, 2024 U.S. Dist. LEXIS 62717
    (W.D. Wash. Mar. 26, 2024)............................................... 32, 39

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................16

*Beuca v. Washington State Univ.,*
    No. 23-35395, 2024 U.S. App. LEXIS 17665,
    (9th Cir. July 18, 2024)............................................... 45, 52, 60

*Bird v. Randol,*
    No. 6:23-CV-1678-MC, 2024 U.S. Dist. LEXIS 39061
    (D. Or. Mar. 6, 2024)...................32, 33, 34, 35, 36, 37, 38, 39, 40

*Bolden-Hardge v. Office of Cal. State Controller,*
    63 F.4th 1215 (9th Cir. 2023) ..........15, 22, 24– 26, 28, 32, 34, 42

*Bostock v. Clayton Cty.*
    590 U.S. 644 (2020)................................................................49

*Bulek v. Kaiser Found. Hosps.*,
   No. 3:23-cv-01585-MO, 2024 U.S. Dist. LEXIS 61168
   (D. Or. April 3, 2024) ........................................................................40

*Burwell v. Hobby Lobby Stores, Inc.*,
   573 U.S. 682 (2014) ..........................................................................25

*Callahan v. Woods*,
   658 F.2d 679 (9th Cir. 1981) ....................................................... 30, 36

*Camp v. L.A. Arena Co., LLC*,
   No. EDCV 22-2220, 2024 U.S. Dist. LEXIS 71237
   (C.D. Cal. Apr. 18, 2024) ..................................................................45

*Conner v. Tilton*,
   No. C 07-4965 MMC (PR), 2009 U.S. Dist. LEXIS 111892
   (N.D. Cal. Dec. 2, 2009) ....................................................................22

*Desertrain v. City of Los Angeles*,
   754 F.3d 1147 (9th Cir. 2014) ...........................................................54

*Dykzeul v. Charter Communs., Inc.*,
   No. CV 18-05826 DSF, 2019 U.S. Dist. LEXIS 228981,
   (C.D. Cal. Nov. 18, 2019) ..................................................................58

*EEOC v. Abercrombie & Fitch Stores, Inc.*
   575 U.S. 768 (2015) ...............................13, 17, 19, 44–49, 59, 61

*EEOC v. Townley Eng'g & Mfg. Co.*,
   859 F.2d 610 (9th Cir. 1988) ....................................................... 48, 58

*EEOC v. Union Independiente De La Autoridad De Acueductos Y
   Alcantarillados De P.R.*,
   279 F.3d 49, 56 (1st Cir. 2002) .........................................................22

*Foman v. Davis*,
   371 U.S. 178 (1962) ..........................................................................51

*Groff v. DeJoy,*
  600 U.S. 447 (2023)................................ 17, 18, 49, 59, 60

*Heller v. EBB Auto Co.,*
  8 F.3d 1433 (9th Cir. 1993) ................................. 42, 45

*Hernandez v. Comm'r,*
  490 U.S. 680 (1989)...............................................30

*Hittle v. City of Stockton,*
  No. 2:12-cv-00766, 2022 U.S. Dist. LEXIS 37236
  (E.D. Cal. Mar. 1, 2022)...........................................30

*Kamrath v. Addictions Recovery Ctr., Inc.,*
  No. 1:23-cv-01516-MC, 2024 U.S. Dist. LEXIS 96019,
  (D. Or. May 30, 2024) .............................................37

*Kaplan v. Rose,*
  49 F.3d 1363 (9th Cir. 1994)................................. 15, 50

*Kather v. Asante Health Sys.,*
  No. 1:22-cv-01842-MC, 2023 U.S. Dist. LEXIS 131899,
  (D. Or. July 28, 2023)...................... 32, 36, 37, 38, 40

*Keene v. City & Cnty. of San Francisco,*
  No. 22-16567, 2023 U.S. App. LEXIS 11807,
  (9th Cir. May 15, 2023)............................... 22, 24, 25

*Kumar v. Gate Gourmet, Inc.,*
  180 Wn.2d 481 (Wash. 2014)................................. 58, 59

*Lawson v. Washington,*
  296 F.3d 799 (9th Cir. 2002)......................................45

*Lopez v. Smith,*
  203 F.3d 1122 (9th Cir. 2000)....................................62

*Lucky v. Landmark Med. of Mich., P.C.,*
  103 F.4th 1241 (6th Cir. 2024) ...............................................29

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
  519 F.3d 1025 (9th Cir. 2008)...........................................7, 16

*Muldrow v. City of St. Louis,*
  144 S. Ct. 967 (2024)........................................ 49, 57, 59, 62

*Oklevueha Native Am. Church of Haw., Inc. v. Lynch,*
  828 F.3d 1012 (9th Cir. 2016).........................................25, 26

*Peterson v. Hewlett-Packard Co.,*
  358 F.3d 599 (9th Cir. 2004)...........................................44, 45

*Ringhofer v. Mayo Clinic, Ambulance,*
  102 F.4th 894 (8th Cir. 2024) .........................................28, 29

*Rolovich v. Wash. State Univ.,*
  No. 22-CV-0319, 2023 U.S. Dist. LEXIS 93926,
  (E.D. Wash. May 30, 2023)...................................................40

*Sonoma County Ass'n of Retired Employees v. Sonoma County,*
  708 F.3d 1109 (9th Cir. 2013)..........................................16, 51

*Swierkiewicz v. Sorema N.A.,*
  534 U.S. 506 (2002)............................................ 16, 32, 47, 55

*Tiano v. Dillard Dep't Stores,*
  139 F.3d 679 (9th Cir. 1998)...................................................45

*Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.,*
  450 U.S. 707 (1981).........................................................22, 25, 28

*United States v. Corinthian Colls.,*
  655 F.3d 984 (9th Cir. 2011) .........................................51, 52, 53

*United States v. Hristov,*
   396 F.3d 1044 (9th Cir. 2005) .................................................62

*United States v. Seeger*
   380 U.S. 163 (1965) ...............................................................21

*Welsh v. United States,*
   398 U.S. 333 (1970) ...............................................................21

**CONSTITUTION**

U.S. CONST. amend I ................................................... 21, 22, 28, 30

**STATUTES**

28 U.S.C. § 1291 ..........................................................................3

28 U.S.C. § 1331 ..........................................................................3

28 U.S.C. § 1367(a) ......................................................................3

42 U.S.C. § 2000e-2 (Title VII of the Civil Rights Act) .. 3, 17, 43–45

42 U.S.C. § 2000e(j) ......................................................... 21, 41, 60

RCW 4.96.020 ............................................................................10

RCW 49.60.180 (Wash. Law Against Discrimination) .... 10, *passim*

**REGULATIONS**

29 C.F.R. § 1605.1. ................................................................. 18, 21

**RULES**

Fed. R. Civ. P. 8(a) ........................................ 16, 22, 28, 33, 55, 56

Fed. R. Civ. P. 12(b)(6) ........................................ 2, 16, 29, 36, 54

Fed. R. Civ. P. 15(a) .................................................................. 50, 61

**OTHER SOURCES**

King James Bible, Deuteronomy 30:15-20,
 https://www.biblegateway.com/passage/?search=Deuterono
 my%2030%3A15-20&version=KJV ............................................. 8

King James Bible, James 2:19,
 https://www.biblegateway.com/passage/?search=James+2
 %3A19&version=KJV ................................................................. 8

King James Bible, Revelation 14:9-10,
 https://www.biblegateway.com/passage/?search=Revelati
 on+14%3A9-11&version=KJV ............................................. 8, 27

King James Bible, 1 Corinthians 3:16-19,
 https://www.biblegateway.com/passage/?search=1%20Cori
 nthians%203&version=KJV ...................................... 9, *passim*

Order Pursuant to Proclamation of Emergency; COVID-19
 vaccination requirements for Executive Branch employees,
 Exec. Order No. ACO-8-27-EO (Aug. 10, 2021),
 https://your.kingcounty.gov/dnrp/temp/ACO-8-27-EO-
 emergency-order-covid-19-vaccination-requirements.pdf. ....... 7

U.S. Equal Emp. Opportunity Comm'n, Oct. 25, 2021, *What
 You Should Know About COVID-19 and the ADA, the
 Rehabilitation Act, and Other EEO Laws at L.2. to
 L.3,* https://www.eeoc.gov/wysk/what-you-should-know-
 about-covid-19-and-ada-rehabilitation-act-and-other-eeo-
 laws#L .................................................................................. 31, 60

## INTRODUCTION

This appeal urges the Court to uphold the broad religious protections provided by Title VII and to reject gamesmanship that undermines its core principles. Title VII does not permit an employer to acknowledge an employee's submission of a religious exemption request (complete with a belief statement explaining a religious conflict with a work rule) to grant the religious exemption, to confirm the employee's eligibility for accommodation and to assert that an individualized assessment was conducted, only to later claim in court that it lacked sufficient information and actual knowledge regarding the religious-basis for the accommodation request.

Plaintiff-Appellant, Ms. Fuamatala Moli, worked as the Chief of Inventory Management with Defendant-Appellee King County Metro Transit under Defendant-Appellee King County in August 2021. That month, all county executive employees were subjected to a Covid-19 vaccine mandate. Ms. Moli promptly submitted the "Religious Exemption Request," which included her statement of belief. She cited Scripture and explained that receipt of the Covid-19 vaccines would "condemn [her] spirit and soul to eternity in hell." Defendants

1

subsequently informed her that the Religious Exemption Request was **granted.** She proceeded to submit the Accommodation Request. Shortly thereafter she was told no reasonable accommodation was available, and her Accommodation Request was **denied**. Defendants discussed no alternate accommodations with Ms. Moli and offered her no interactive process before her termination. This lawsuit followed.

Defendants removed the case from state court to federal court and later moved to dismiss under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)").

The District Court accepted Defendants' assertion that the Complaint failed, as a matter of law, to "identify a sincerely held religious belief that actually precludes receiving the COVID-19 vaccine," ER-12, even though the Complaint quoted Ms. Moli's statement of belief from her employer-granted Religious Exemption Request form. The District Court also accepted Defendants' assertion that leave to amend should be denied because Ms. Moli "failed to give timely notice of any such belief and will therefore be unable to raise an inference of unlawful employment discrimination." ER-12–13. Ms. Moli's Washington Law Against Discrimination ("WLAD") claim did not receive its own separate analysis. The District Court granted

2

Defendants' Motion to Dismiss, denied Ms. Moli leave to amend and entered judgment in favor of Defendants and against Plaintiff. ER-3. This appeal follows.

## JURISDICTIONAL STATEMENT

This case presents claims arising under federal and state employment accommodation statutes. As detailed below in the Statement of the Case, Ms. Moli filed suit in state court, and Defendants removed it to federal court. The U.S. District Court for the Western District of Washington has original, federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e–2. The District Court has supplemental jurisdiction over Ms. Moli's related state law claim pursuant to 28 U.S.C. § 1367(a).

The District Court granted Defendants' Motion to Dismiss with prejudice on April 29, 2024 (the "Order"), disposing of all issues in the case. ER-13. The Judgment was entered the same day, ER-3, and the Order and Judgment are final as of April 29, 2024. Ms. Moli timely filed her Notice of Appeal on May 16, 2024. ER-46. Accordingly, this Court has jurisdiction to hear this appeal, pursuant to 28 U.S.C. § 1291.

3

## PERTINENT AUTHORITIES

All pertinent authorities are set forth in the Addendum to this Brief pursuant to Ninth Circuit Rule 28-2.7.

4

## ISSUES PRESENTED FOR REVIEW

The primary issues for appeal are as follows:

1. Ms. Moli timely submitted a "Religious Exemption Request" to her employer, including a statement of belief citing the Bible and asserting that the Covid-19 vaccine is a "desecration/defilement of my temple and it will condemn my spirit and soul to eternity in hell." The District Court concluded that under Title VII this statement fails to allege a religious belief that conflicts with receipt of a Covid-19 vaccine. Did the District Court err?

2. Ms. Moli timely submitted a Religious Exemption Request that included her statement of belief, and her employer granted the religious exemption, deemed her eligible for accommodation and claimed it conducted an individualized assessment for potential accommodations. The District Court concluded Ms. Moli's employer was not sufficiently informed of her need for a religious-based accommodation under Title VII. Did the District Court err?

3. The Supreme Court held that Title VII does not require an employer to have *actual knowledge* of a conflict between an employee's religious practice and a work rule as a necessary

condition of liability, and that an employer who acts with no more than an *unsubstantiated suspicion* that accommodation would be needed may act with a motive that violates Title VII. The District Court required Ms. Moli to make a showing that her employer received *timely notice* of how her religious beliefs *actually* precluded her from receiving the Covid-19 vaccine as a necessary condition of liability under Title VII. Did the District Court err?

4.  The District Court concluded that any amendment to the Complaint would be futile at this stage because Ms. Moli was required to timely notify her employer of how her religious beliefs actually precluded her from receiving a Covid-19 vaccine as a necessary condition of liability under Title VII. Should the District Court have permitted leave to amend?

5.  The District Court did not separately analyze Ms. Moli's WLAD claim after it dismissed the Title VII claim, nor did it remand the state claim back to the state court in which it was originally filed. Did the District Court err?

## STATEMENT OF THE CASE

The material facts alleged by Ms. Moli and which are to be accepted as true by the District Court, ER-4–5 (citing *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008)), may be summarized as follows:

Ms. Moli worked as the Chief of Inventory Management with King County Metro Transit when the King County Executive issued an order requiring all executive branch employees to be fully vaccinated against Covid-19 (the "Mandate"). ER-6.[1] The Mandate was issued on August 10, 2021, and required full vaccination by October 18, 2021. ER-6. The Mandate included an exemption for employees entitled under law to accommodation for sincerely held religious beliefs. ER-6.

On August 23, 2021, Ms. Moli informed Defendants that the Mandate conflicted with her sincerely held religious beliefs and submitted the "Religious Exemption Request." ER-6–7. Ms. Moli's Religious Exemption Request included a statement of belief as follows:

> I am requesting an exemption because my sincerely held religious beliefs conflict with King County's vaccination

---

[1] Exec. Order No. ACO-8-27-EO (the Mandate), https://your.kingcounty.gov/dnrp/temp/ACO-8-27-EO-emergency-order-covid-19-vaccination-requirements.pdf. ER-6.

7

mandate. The Religious principles that guide my objection to the COVID vaccination are as follows: God has given me a choice to live eternity in heaven or to live eternity in hell after I die. (Deuteronomy 30:15-20)[2] There is only one true God and I am to worship him only. (James 2:19[3] and Revelation 14-9-10[4]) I am a temple of God, he live in me and

---

[2] "See, I have set before thee this day life and good, and death and evil; In that I command thee this day to love the Lord thy God, to walk in his ways, and to keep his commandments and his statutes and his judgments, that thou mayest live and multiply: and the Lord thy God shall bless thee in the land whither thou goest to possess it. But if thine heart turn away, so that thou wilt not hear, but shalt be drawn away, and worship other gods, and serve them; I denounce unto you this day, that ye shall surely perish, and that ye shall not prolong your days upon the land, whither thou passest over Jordan to go to possess it. I call heaven and earth to record this day against you, that I have set before you life and death, blessing and cursing: therefore choose life, that both thou and thy seed may live: That thou mayest love the Lord thy God, and that thou mayest obey his voice, and that thou mayest cleave unto him: for he is thy life, and the length of thy days: that thou mayest dwell in the land which the Lord sware unto thy fathers, to Abraham, to Isaac, and to Jacob, to give them." Deuteronomy 30:15-20, King James Bible ("KJV"), https://www.biblegateway.com/passage/?search=Deuteronomy%2030%3A15-20&version=KJV.

[3] "Thou believest that there is one God; thou doest well: the devils also believe, and tremble." James 2:19, KJV, https://www.biblegateway.com/passage/?search=James+2%3A19&version=KJV.

[4] "And the third angel followed them, saying with a loud voice, If any man worship the beast and his image, and receive his mark in his forehead, or in his hand, The same shall drink of the wine of the wrath of God, which is poured out without mixture into the cup of his indignation; and he shall be tormented with fire and brimstone in the presence of the holy angels, and in the presence of the Lamb." KJV, Revelation 14:9-10,

I can not [sic] desecrate/defile myself. (1 Corinthians 3:16-19[5]) The COVID vaccination is a desecration/defilement of my temple and it will condemn my spirit and soul to eternity in hell after I die. My sincerely held religious beliefs conflict with King County's vaccination mandate because receiving the COVID vaccinations will guarantee that my spirit and soul will NOT return to heaven but be sent to hell for eternity. I am not opposed to all Immunizations, just the Immunizations that conflict with my sincerely held religious beliefs described above concerning the COVID vaccination. I am seeking an exemption from the mandatory COVID vaccination. I will adhere to all King County mandates that do not conflict with my sincerely held religious beliefs such as social distancing, masking up, temperature checks, cleaning procedures, etc.

ER-6–7, 17–18.

Ms. Moli's employer **granted** the Religious Exemption Request after receiving the foregoing notice describing the conflict between the Mandate and her religious beliefs. ER-7, 15, 18. Deemed exempt from the Mandate and eligible for accommodation, Ms. Moli submitted the

---

https://www.biblegateway.com/passage/?search=Revelation+14%3A9-11&version=KJV.

[5] "Know ye not that ye are the temple of God, and that the Spirit of God dwelleth in you? If any man defile the temple of God, him shall God destroy; for the temple of God is holy, which temple ye are. Let no man deceive himself. If any man among you seemeth to be wise in this world, let him become a fool, that he may be wise. For the wisdom of this world is foolishness with God. For it is written, He taketh the wise in their own craftiness."1 Corinthians 3:16-19, KJV, https://www.biblegateway.com/passage/?search=1%20Corinthians%203&version=KJV.

9

Accommodation Request on September 3, 2021. ER-14. Defendants

denied her request for accommodation on December 28, 2021, claiming

no reasonable accommodation was available. ER-7. Defendants did not

provide Ms. Moli with an interactive process or meaningful review

before denying her an accommodation. ER-7. On January 11, 2022,

Defendants placed Ms. Moli on administrative leave. ER-7. On March

18, 2022, Defendants terminated Ms. Moli. ER-7.

Following her termination, Ms. Moli received a notice of right-to-sue

letter from the Equal Employment Opportunity Commission dated

December 15, 2022. ER-18. On or about February 15, 2023, Ms. Moli

filed a claim for damages form with King County Risk Management,

pursuant to the Revised Code of Washington ("RCW") 4.96.020. ER-19.

She filed a complaint for damages in the Superior Court of King County

on February 22, 2023, alleging one cause of action for failure to

accommodate under Title VII. ER-35. Ms. Moli amended her complaint

once in state court on May 4, 2023 (the "First Amended Complaint") to

add a second cause of action for failure to accommodate under the

Washington Law Against Discrimination, RCW 49.60.180. ER-44.

On June 2, 2023, Defendants removed the case to the Western District of Washington, without opposition from Plaintiff. ER-35. On June 8, 2023, Defendants filed their Answer to the First Amended Complaint ("Answer"). ER-22. On December 28, 2023, Ms. Moli amended her complaint for the first time in federal court, and for the second time cumulatively (the "Second Amended Complaint" and the operative "Complaint"), to add a recitation of the content of Ms. Moli's statement of belief from the Religious Exemption Request. ER-4, 14. Defendants filed a motion to dismiss the case with prejudice on December 28, 2023, which Ms. Moli opposed. ER-4.

The District Court granted Defendants' Motion to Dismiss without leave to amend on April 29, 2024. ER-13. The Judgment was entered the same day, ER-3, and the Order and Judgment are final as of April 29, 2024. Ms. Moli timely filed her Notice of Appeal on May 16, 2024. ER-46.

11

## SUMMARY OF THE ARGUMENT

The decision below cannot be reconciled with Title VII because the District Court impermissibly (1) narrowed the scope of "religion" that is protected by Title VII; (2) imposed an "actual knowledge" requirement not included in Title VII, as a request for accommodation provides an employer with sufficient awareness; and (3) denied leave to amend, frustrating the policy objectives of Title VII by denying employees the opportunity to respond to religious-based questions first raised by an employer only at the litigation stage.

First, according to the Order, a statement of belief that is deemed sincere, cites to the Bible and asserts that receiving a Covid-19 vaccine will condemn the believer's soul to Hell for eternity fails as a matter of law under Title VII. This is because it allegedly "does not give rise to an inference that plaintiff's religion forbids receiving the COVID-19 vaccine." ER-11. However, a plain reading of the statement of belief included in Ms. Moli's Religious Exemption Request does not support this conclusion. Nor does the precedent from this Circuit or the Supreme Court that the Order cites. A sincere belief, rooted in the Bible, that a specific act will guarantee eternal damnation is a belief

12

encompassed within the broad definition of "religion" under Title VII. The conclusion that such a belief cannot plausibly fall within this definition unjustifiably narrows the scope of religion protected by Title VII. This is error.

Second, according to the Order, an employer lacks sufficient information about the need for a religious-based accommodation when an employee timely submits a Religious Exemption Request that includes a statement of belief. The Order further asserts that even if the employer grants the religious exemption, deems the employee eligible for accommodation consideration and claims to have conducted an individualized assessment, this is insufficient unless the employee's request provides *timely notice* that explicitly demonstrates how a religious belief "*actually* precludes" compliance with a work requirement. ER-12 (emphasis added). However, such a standard imposes a requirement for an employer to have "actual knowledge" of a conflict between an employee's religion and a workplace requirement, which Title VII does not require. As held in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015), Title VII prohibits an employer from refusing to accommodate an employee's religious belief,

13

even if the employer has only an unsubstantiated suspicion that the accommodation request has a religious basis. The Order imposed an actual knowledge requirement that is not a requirement of Title VII. This is error.

Third, the District Court erroneously concluded any amendment to the Complaint would be futile due to the Order's mistaken requirement that an initial religious exemption and accommodation request provide an employer with actual knowledge of a religious-based conflict. Both Title VII and the factors set forth by this Circuit for requests to amend pleadings suggest a different result.

If the Order remains in place, it will effectively lock an employee's initial religious exemption request in place as though it were frozen in amber, preventing any further clarification or response to questions about the religious basis of the request, even if such questions arise for the first time during litigation. This approach unfairly penalizes employees who complete an employer-provided exemption request form in good faith and rely on the employer's assurance that the exemption has been granted. Conversely, it benefits employers who deliberately delay questioning the sufficiency of the request until litigation to exploit

14

alleged inadequacies in the form they themselves provided. An employer who sandbags an employee is rewarded. Such a policy would undermine the bilateral cooperative principle central to Title VII.

Lastly, the District Court failed to address Ms. Moli's WLAD state law discrimination claim in a meaningful way. At the very least, the case should have been remanded to the state court from which it was removed, rather than being dismissed outright without discussion, without leave to amend and with prejudice.

## ARGUMENT

### I.    Standards of Review

On appeal, the Court reviews de novo the granting of a motion to dismiss based on failure to state a claim. *Bolden-Hardge v. Office of Cal. State Controller*, 63 F.4th 1215, 1220 (9th Cir. 2023). The Court accepts well-pleaded factual allegations as true and construes inferences in a plaintiff's favor. *Id.* Denial of leave to amend is reviewed for abuse of discretion, but dismissal without leave to amend is improper unless it is clear, on de novo review, that the complaint could not be saved by any amendment. *Id.* Dismissal for failure to state a claim is disfavored. *Kaplan v. Rose,* 49 F.3d 1363, 1370 (9th Cir. 1994).

## II.   Ms. Moli adequately alleged a violation of Title VII and satisfied the fair notice pleading standard.

The question before the District Court on a motion to dismiss, as stated in the Order, is whether the facts alleged in the complaint sufficiently state a plausible ground for relief. ER-5 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Under Rule 12(b)(6), the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." ER-5 (quoting *Manzarek,* 519 F.3d at 1031). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sonoma Cty. Ass'n of Retired Emples. v. Sonoma Cty.,* 708 F.3d 1109, 1115 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Ms. Moli's Complaint for unlawful employment discrimination was a short and plain statement showing she was entitled to relief for disparate treatment in violation of Title VII, which satisfies the fair notice pleading standard under Fed. R. Civ. P. 8(a) ("Rule 8"). *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 (2002).

16

### A. Ms. Moli's Complaint pleads each element of a disparate treatment claim to show she is entitled to relief.

The elements of a prima facie disparate treatment claim are established by Title VII, 42 U.S.C. §2000e-2(a), which the Supreme Court set forth as follows: (1) an adverse employment action, such as "discharge" (2) "because of" (3) "such individual's . . . religion (which includes his religious practice)." *Abercrombie,* 575 U.S. at 772 (ellipsis in original); see also, *Groff v. DeJoy*, 600 U.S. 447, 457 (2023).

The Complaint adequately alleges facts that, at a minimum, give rise to a reasonable inference that Ms. Moli suffered (1) "an adverse employment action," termination, (2) "because of" her employer's refusal to accommodate her (3) "religion," her biblically-based belief that receipt of a Covid-19 vaccine would defile her body as a temple of God and condemn her soul to Hell.

### 1. *"Adverse Employment Action."* Defendants terminated Ms. Moli.

Ms. Moli suffered an adverse employment action when she was terminated. This is alleged in the Complaint, admitted in the Answer and not at issue. ER-7, 11, 18, 29.

### 2. *"Because Of."* Ms. Moli was terminated "because of" Defendants' refusal to grant her an accommodation.

Defendants terminated Ms. Moli "because of" their refusal to accommodate her following the announcement of the Mandate. ER-14–15. Ms. Moli submitted the Request for Religious Exemption, which was granted, and then the Accommodation Request, which was denied with an assertion of undue hardship. ER-14–15, 23.

The prohibition against discrimination "because of" a refusal to accommodate developed through statute and regulation: "As originally enacted," the Supreme Court explained, "Title VII did not spell out what it meant by discrimination 'because of . . . religion.'" *Groff,* 600 U.S. at 457. But, after Section 1605.1(a)(2) was published in 1967, and then, after "some tinkering, the EEOC settled on a formulation that obligated employers 'to make reasonable accommodations to the religious needs of employees'" absent undue hardship. *Id.*

The prohibition against discrimination "because of" a refusal to accommodate was discussed and further clarified by the Supreme Court in 2015. "The term 'because of' appears frequently in antidiscrimination laws. It typically imports, at a minimum, the traditional standard of

18

but-for causation." *Abercrombie,* 575 U.S. at 772. But, in a failure-to-accommodate claim, "Title VII relaxes this standard." *Id.* at 773. For this reason, "an employer who acts with the motive of avoiding accommodation may violate Title VII even if he has no more than an unsubstantial suspicion that accommodation would be needed." *Id.*

The Supreme Court thus held that Title VII does not "impose a knowledge requirement" as a necessary element of a failure-to-accommodate claim brought against an employer. *Id.* An employer does not need to have actual knowledge of an employee's religion, or to have actual knowledge about how an employee's religion conflicts with a work rule, in order for an employer's actions to violate Title VII. *Id.* An employer can violate Title VII by acting with the motive of avoiding the provision of an accommodation, even if the employer does not have actual knowledge of the religious basis underlying the need for accommodation.

Here, Ms. Moli's Complaint pleads facts that allege discrimination "because of" the denial of an accommodation where the employer acted with actual knowledge, as evidenced by the content of her statement of belief given to her employer and acted with the motive of avoiding the

19

provision of an accommodation, as evidenced by the explicit accommodation denial and her subsequent termination. ER-14–15, 23.

"A request for accommodation," though "not a necessary condition of liability," easily satisfies the "because of" requirement for unlawful discrimination and avoids the need for a fact-specific inquiry into whether an employer acted with a motive of avoiding an accommodation. *Id.* at 774. The Complaint alleges termination "because of" Defendants' refusal to accommodate her religion, despite her request.

### 3. *Religion.*" Ms. Moli required accommodation because her religious beliefs conflict with the Mandate.

Ms. Moli required an accommodation because her *religion* prevented her from receiving a Covid-19 vaccine. In her statement of belief, included in the Religious Exemption Request, Ms. Moli informed her employer that she has sincere, biblically grounded religious beliefs that her body is a temple of God who lives in her, that she cannot defile her temple and that receipt of the Covid-19 vaccine will defile her temple and condemn her spirit and soul to eternity in Hell. ER-6–7.

20

A belief grounded in an aversion to eternal damnation is not a purely secular belief or merely a personal preference. It is not a medical claim. It is not a political opinion. It can only be described as a *religious* belief.

Defendants agreed. ER-7, 15. The Complaint includes the factual assertion that Defendants **granted** Ms. Moli a religious exemption after she submitted her statement of belief with the Religious Exemption Request. *Id.*

Ms. Moli's statement of belief falls within the statutory definition of "religion," which "includes all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). The protective sweep of Title VII is so broad that in "most cases whether or not a practice or belief is religious is not at issue." 29 C.F.R. § 1605.1 (citing *Welsh v. United States*, 398 U.S. 333 (1970) and *United States v. Seeger*, 380 U.S. 163 (1965)). Applying *Seeger,* Ms. Moli's statement of belief asserts that they are "sincerely held," which is not at issue; her beliefs are, in her "own scheme of things, religious," 380 U.S. at 185, which she asserts and which is self-evident through her discussion of Heaven and Hell and eternal damnation. Moreover, the test in *Seeger* was designed to consider when "religion" is protected under the First Amendment. *Id.* In

21

contrast, the "standard applied to determine whether a particular set of beliefs qualifies as a religion for purposes of Title VII, however, is broader than that applicable in the context of the First Amendment." *Conner v. Tilton,* No. C 07-4965 MMC, 2009 U.S. Dist. LEXIS 111892, at \*17 n.4 (N.D. Cal. Dec. 2, 2009); see also, *EEOC v. Union Independiente De La Autoridad De Acueductos Y Alcantarillados De P.R.,* 279 F.3d 49, 56 (1st Cir. 2002) ("The statute [Title VII] thus leaves little room for a party to challenge the religious nature of an employee's professed beliefs."). This Court provided another reminder in *Keene* that a plaintiff's "assertion of a sincere religious belief is generally accepted." *Keene v. City & Cnty. of San Francisco,* No. 22-16567, 2023 U.S. App. LEXIS 11807, at \*3 (9th Cir. May 15, 2023) (citing *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.,* 450 U.S. 707, 714 (1981)).

With respect to the Rule 8 pleading standard for a failure-to-accommodate claim, the "burden to allege a conflict with religious beliefs is fairly minimal." *Bolden-Hardge,* 63 F.4th at 1223 (citing *Thomas*, 450 U.S. at 715). The Complaint meets the fair notice pleading standard because it adequately pleads each element of a prima facie

disparate treatment claim with allegations that give rise to a plausible inference that Ms. Moli is entitled to relief.

**B. Ms. Moli asserted a "religious belief" that conflicts with the Mandate, but the Order impermissibly narrowed the scope of "religious belief" that is protected under Title VII and excluded her.**

Religion, says the District Court, is the "key element at issue here," and specifically, "whether plaintiff has adequately alleged a religious belief that conflicts with the COVID-19 vaccination requirement." ER-8. The Order concludes that she did not. ER-11. The Complaint quotes Ms. Moli's statement of belief, which was part of the Religious Exemption Request she submitted to her employer, to allege that her religion conflicts with the Mandate. ER-17–18. The District Court, however, found that her statement does not "give rise to a plausible inference that plaintiff's sincerely held objections to obtaining a COVID-19 vaccine were religious in nature." ER-11.

The District Court justifies its reading of Ms. Moli's statement of belief by relying on two decisions from this Court and on three decisions from the Oregon District Court. ER-8–11. Each of these five cases, however, supports the conclusion that Ms. Moli's objection to the Covid-19 vaccine is a religious belief entitled to the full protection of Title VII.

23

### 1. The Ninth Circuit cases cited by the Order actually support the conclusion that Ms. Moli asserted a religious belief that conflicts with the Mandate.

The District Court cites two cases from this Court, *Bolden-Hardge* and *Keene,* but both decisions undermine the conclusion of the Order. ER-8–10 (citing *Bolden-Hardge,* 63 F.4th at 1223, and *Keene,* 2023 U.S. App. LEXIS 11807, at \*5). The Order references *Keene* with the following quotation:

> A plaintiff's "religious belief need not be consistent or rational to be protected under Title VII, and an assertion of a sincere religious belief is generally accepted."

ER-8 (quoting *Keene,* 2023 U.S. App. LEXIS 11807, at \*5). Ms. Moli agrees with this principle. But the Order, having quoted *Keene,* then sets the opinion aside. In so doing, the Order overlooks guidance from by this Court on how to approach the key element in this case: religion. *Keene* cautions against the impulse to interrogate or "question the legitimacy of [Appellant's] religious beliefs regarding COVID-19 vaccinations." *Id.* (bracketed alteration in original; internal quotation and citation omitted).

24

The Order, despite *Keene*'s instruction, proceeds to interrogate Ms. Moli's statement of belief. To justify this approach, the Order quotes a single phrase from another recent opinion from this Court:

> Nevertheless, courts need not accept conclusory assertions that a particular belief is "religious," *Bolden-Hardge,* [63 F.4th at 1223].

ER-9. This single-phrase quotation subtly but critically changes the original meaning of the direction from this Circuit. *Bolden-Hardge* addressed skepticism as to "conclusory statements" about whether a conflict exists between a religious belief and a workplace requirement, but not about whether a particular belief is itself "religious" in nature. 63 F.4th at 1223. This full instruction from this Court, including its example from *Oklevueha*, clarifies this focus:

> The Supreme Court has, albeit in the free exercise context, cautioned against **second-guessing the reasonableness** of an individual's assertion that a requirement burdens her religious beliefs, emphasizing that a court's "'**narrow function** . . . in this context is to determine' whether the line drawn reflects 'an honest conviction.'" *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014) (quoting *Thomas,* 450 U.S. at 716). **This principle does not mean that courts must take plaintiffs' conclusory assertions of violations of their religious beliefs at face value**. *See Oklevueha Native Am. Church of Haw., Inc. v. Lynch*, 828 F.3d 1012, 1016-17 (9th Cir. 2016) (deeming inadequate plaintiffs' assertion that a statute prohibiting cannabis substantially burdened their religious beliefs because they

25

did not allege that cannabis served a religious function and they conceded that their religious ceremonies did not involve cannabis).

*Bolden-Hardge*, 63 F.4th at 1223 (citations and quotations cleaned up). In contrast to the plaintiffs in *Oklevueha,* who failed to demonstrate a conflict between a prohibition against cannabis and their religious beliefs, Ms. Moli explicitly articulated her religious belief that receiving a Covid-19 vaccine would defile her body as a temple, leading to eternal damnation. ER-6–7, 17–18.

Even though Ms. Moli identifies a conflict with her asserted religious belief and the Mandate, as required by *Bolden-Hardge*, the District Court continues to probe. The Order questions why Ms. Moli is not unilaterally opposed to all injections or all vaccines. ER-11. Ms. Moli's statement of belief provides the answer: She is "not opposed to all Immunizations, just the Immunizations that conflict with [her] sincerely held religious beliefs," specifically those that would will defile her "temple of God" and guarantee that her "spirit and soul will NOT return to Heaven." ER-6–7, 17–18. The Biblical verses cited by Ms. Moli include references that those whose bodies receive the "mark of the

beast" shall be "tormented with fire and brimstone." ER-6–7, 17–18 (citing Rev. 14:9-10).

The Order, however, appears unsatisfied with these Biblical citations. The District Court asserts that it "fully credits [Ms. Moli's] belief that her body is to be cherished and protected as a reflection of her deity," ER-10–11, but implies a perceived logical gap or missing link in Ms. Moli's chain of religious reasoning:

> Plaintiff makes no attempt to explain **how** the injection of the COVID-19 vaccine constitutes a defilement or desecration of God's temple while the injection of a **similar substance** aimed at another illness does not.

ER-10 (emphasis added). This statement from the Order reflects a misunderstanding of Ms. Moli's religious belief. The Order seems to assume that different "injections" would have "similar substance" in relation to a religious objection about defiling God's temple, suggesting that Ms. Moli's belief is inconsistent or deficient. Even if a belief had to be logically coherent and rational to qualify as religious under Title VII, this objection would still be misplaced.

Moreover, religious beliefs that may seem illogical do not lose their Title VII protection. A party seeking the court's respect and protection for religious beliefs should not be constrained by a "rigid formula."

27

*Behrend v. S.F. Zen Ctr., Inc.*, No. 23-15399, 2024 U.S. App. LEXIS 17536, at \*7 (9th Cir. July 17, 2024) (internal quotation and citation omitted) (noting the latitude given to religious organizations under the First Amendment to internally apply their beliefs). Under Title VII, the focus is sincerity, not rationality. The key inquiry is "whether the line drawn reflects an honest conviction." *Bolden-Hardge*, 63 F.4th at 1223 (citing *Hobby Lobby*, 573 U.S. at 725) (quoting *Thomas,* 450 U.S. at 716). As applied by this Court in *Bolden-Hardge*, a principle rooted in First Amendment jurisprudence provides a baseline to understand Title VII's broader definition of "religion:"

> The determination of what is a "religious" belief or practice is more often than not a difficult and delicate task. . . . However, the resolution of that question is not to turn upon a **judicial perception** of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.

*Thomas,* 450 U.S. at 714. Similarly, the Eighth Circuit has applied *Thomas* to find short statements of religious belief are sufficient under the Rule 8 to allege an actual conflict under Title VII. *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 901-02 (8th Cir. 2024).

In *Ringhofer,* the Eighth Circuit reversed a dismissal for failure to adequately plead a religious belief for all five plaintiffs in a Covid-19 mandate case. Three plaintiffs (Ringhofer, Miller and Kiel) "plausibly connect[ed] their refusal to receive the vaccine with their religious beliefs" with objections tied to aborted fetal cells. *Id.* at 902. The remaining two plaintiffs (Rubin and Ihde) also "plausibly pled that their religious beliefs conflict with the testing requirement" because they "invoked the 'body is a temple' principle in opposing the testing requirement" and thus withstood a Rule 12(b)(6) motion. *Id.* at 898.

The Sixth Circuit also emphasized that a lower court should not require a plaintiff to explain in detail how their religion specifically prohibits vaccination. *Lucky v. Landmark Med. of Mich., P.C.,* 103 F.4th 1241 (6th Cir. 2024), 2024 U.S. App. LEXIS 14257, at *5 (reversing a dismissal of a Covid-19 disparate treatment case and asserting that the court did not "have any basis for its insistence that [plaintiff must] explain how her religion has a specific tenet or principle that does not permit her to be vaccinated."). *Lucky* also affirmed that in the Title VII context, "it is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular

29

litigants' interpretations of those creeds." *Id.* (quoting *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989)).

For both the First Amendment and Title VII's purposes, what matters is whether "one's faith is religiously based at the time it is asserted" regardless of "whether that faith derived from revelation, study, upbringing, gradual evolution, or some source that appears entirely incomprehensible." *Callahan v. Woods*, 658 F.2d 679, 687 (9th Cir. 1981). "American courts are loath to tell a person that his interpretation of his faith is a wrong one." *Hittle v. City of Stockton*, No. 2:12-cv-00766, 2022 U.S. Dist. LEXIS 37236, at *14 (E.D. Cal. Mar. 1, 2022), *aff'd, Hittle v. City of Stockton*, 76 F.4th 877 (9th Cir. 2023).

The District Court, in assessing the source of Ms. Moli's beliefs and her objections to the Covid-19 vaccine, cited EEOC guidance and reached this determination:

> Thus, the question before the Court on this motion to dismiss is whether plaintiff has plausibly alleged that her objections to her employer's COVID-19 vaccination mandate arose from her religious beliefs as opposed to her social/philosophical/medical views and/or personal preferences."

30

ER-9–10. To put a point on it, though, the EEOC guidance here cited[6] by the Order actually says the question is whether the objection is "purely" based on nonreligious concerns. Ms. Moli references the Bible as the only source for her religious beliefs. She makes no mention of a social, philosophical, medical or personal preference either generally or specifically in relation to the Covid-19 vaccination. Under the terms of the EEOC guidance, her objection can only be described as religious in nature.

Ms. Moli's statement of belief establishes a conflict between her religious conviction—of not defiling her body as a temple of God—and

---

[6] The EEOC Guidance, first published in October 2021 and most recently updated on May 15, 2023, states the following: "Title VII does not protect social, political, or economic views or personal preferences. Thus, objections to a COVID-19 vaccination requirement that are purely based on social, political, or economic views or personal preferences, or any other nonreligious concerns (including about the possible effects of the vaccine), do not qualify as religious beliefs, practices, or observances under Title VII. However, overlap between a religious and political view does not place it outside the scope of Title VII's religious protections, as long as the view is part of a comprehensive religious belief system and is not simply an isolated teaching." *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws at L.2. to L.3*, U.S. Equal Emp. Opportunity Comm'n (Oct. 25, 2021), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L." ER-9.

31

the work requirement of receiving a Covid-19 vaccine, which she believes would condemn her soul to Hell for eternity. *Bolden-Hardge*, 63 F.4th at 1223. The Complaint alleges facts to show she was terminated because of her employer's refusal to accommodate her religious beliefs, the prima facie elements of a disparate treatment claim showing she is entitled to relief. *Swierkiewicz*, 534 U.S. at 508.

> **2. The Oregon District Court cases cited by the Order actually support the conclusion that Ms. Moli asserted a religious belief that conflicts with the Mandate.**

With respect to the three decisions from the Oregon District Court cited by the Order, each lends credence to the facial sufficiency of Ms. Moli's statement of belief, and none are currently docketed for appeal. ER-9–11 (citing *Bartholomew v. Washington,* No. 3:23-cv-05209-DGE, 2024 U.S. Dist. LEXIS 62717, at *12 (W.D. Wash. Mar. 26, 2024); *Bird v. Randol*, No. 6:23-cv-1678-MC, 2024 U.S. Dist. LEXIS 39061, at *3 (D. Or. Mar. 6, 2024); *Kather v. Asante Health Sys.,* No. 1:22-cv-01842-MC, 2023 U.S. Dist. LEXIS 131899, at *13 (D. Or. July 28, 2023)).

*Bird* is the first Oregon District Court case cited by the District Court. The Order quotes only its caution that "a 'threadbare recital' to a plaintiff's religious belief is insufficient to satisfy the first elements of

her *prima facie* case for Title VII discrimination." ER-9 (quoting *Bird*, 2024 U.S. Dist. LEXIS 39061, at *3). Beyond the threadbare reminder from *Iqbal* that an "unadorned, the-defendant-unlawfully-harmed-me accusation" will not satisfy the Rule 8 pleading standard, 556 U.S. at 678, however, *Bird* carefully considered the adequacy of the pleadings provided by three plaintiffs seeking relief for disparate treatment claims related to Covid-19 mandates. The Order does not discuss any of the three plaintiffs in *Bird,* but the stated beliefs of Ms. Egenhoff, Ms. Shaw-David and Ms. Bird bear consideration.

Ms. Egenhoff adequately pled a sincerely held religious belief and actual conflict. *Id.* at *3. She informed her employer that receiving the Covid-19 vaccine "would be 'jeopardizing my relationship with God'" after "the Holy Spirit has moved on my heart and conscience that I must not accept the COVID vaccine." *Id.*[7] Like Ms. Moli, Ms. Egenhoff

---

[7] Ms. Egenhoff's full statement recited by the District Court is as follows: "I have been a Christian for many years. As a believer in Jesus, the Holy Spirit lives in me. Jesus said the Holy Spirit will guide each person who repents of their sin and believes upon Him into all truth. I seek God's will for my life through prayer, reading the Bible, and relying on the power of the Holy Spirit to help me do God's will. I believe God's promise that "if anyone lacks wisdom, let him as of God, who gives to all liberally." (James 1:5) I have prayed about how to respond to the COVID vaccine directive in light of my religious beliefs.

33

referenced a belief in the Holy Spirit. Ms. Egenhoff believed the Covid-19 vaccine would place her relationship with God in jeopardy, and Ms. Moli believed it would guarantee she would never return to Heaven. Ms. Moli's Complaint pleads an actual conflict based on religious belief just as readily as Ms. Egenhoff did in *Bird*.[8]

In contrast, Ms. Shaw-David failed to allege a conflict because she pled a belief in her "natural immunity" through "God's grace," her belief "God was looking out for [my family]" and a belief that "the mandate has caused unnecessary fear and is creating a divide that is testing our community's faith and beliefs." *Id*. at *9-10.[9] Ms. Shaw-David did not

---

As I have prayed, the Holy Spirit has moved on my heart and conscience that I must not accept the COVID vaccine. If I were to go against the moving of the Holy Spirit, I would be jeopardizing my relationship with God and violating my conscience." *Bird*, 2024 U.S. Dist. LEXIS 39061, at *9-10.

[8] When asked to see Ms. Egenhoff's objection as merely a secular choice, the District Court noted that iss "duty is not to ascertain whether Plaintiffs' beliefs are reasonable, and the Court can infer that Egenhoff used her interactions with the Holy Spirit to inform her decision about the COVID-19 vaccine. See *Bolden-Hardge*, 63 F.4th at 1223. Questions concerning the credibility of Plaintiffs' beliefs will be left for another time." *Bird*, 2024 U.S. Dist. LEXIS 39061, at *9.

[9] Ms. Shaw-David's full statement recited by the District Court is as follows: "My body has seen the virus and through God's grace, I was able to fight it off and form a natural immunity. Because of the timing of my sickness and all the events following, I can only believe that God was looking out for us and had a hand in healing our family in more

34

assert a general or specific conflict between receiving the Covid-19 vaccine and her belief in natural immunity acquired through God's grace, whereas Ms. Moli asserts a specific conflict with receiving the vaccine, eternal damnation.

Ms. Bird adequately alleged an actual conflict based upon this pleading identified by the District Court:

> She believes her body is a "temple of the Holy Spirit" that she must not defile with "potentially harmful substances" such as the COVID-19 vaccine. To explain why she thought Defendants' vaccine policy conflicted with her Christian faith, Bird included with her request "scripture from the Bible that pertains to [her] discernment toward the Covid-19 vaccine, and the current social climate surrounding vaccine mandates."

*Id.* at *2. Like Ms. Moli, Ms. Bird pled a biblically based belief that she is a temple of the Holy Spirit, could not defile her body, and discerned a conflict with receiving the vaccine based upon Scripture. *Id.* Unlike Ms. Moli, Ms. Bird referenced non-religious reasoning related to the "social

---

ways than the illness we were faced with. I believe the mandate has caused unnecessary fear and is creating a divide that is testing our community's faith and beliefs. God said, 'fear not, for I am with you; do not be dismayed, for I am with you. I will strengthen you and help you' [sic] I will uphold you with my righteous hand.' I choose not to live in fear." *Bird*, 2024 U.S. Dist. LEXIS 39061, at *9-10.

35

climate,"[10] but the District Court found she adequately alleged an actual conflict. *Id.*

The Order also cites *Kather,* another case from the Oregon District Court. The District Court quotes *Kather* for its admonition that "vague expressions of sincerely held Christian beliefs alone cannot serve as a blanket excuse of avoiding all unwanted employment obligations." *Kather,* 2023 U.S. Dist. LEXIS 131899, at *13. In *Kather,* the problematic nature of "vague expressions" of Christianity to create a "blanket excuse" arose when three plaintiffs submitted "almost identical religious exception requests," that each alleged the following:

> "[W]here [employer] Asante exalts itself in purporting to place an unbeliever in a position to judge the Word of God, it is blasphemy, satanic, sinful, untruth, and insultive [sic] trespass."

---

[10] When asked to "cherry-pick Bird's exemption request" and focus on the alleged secular statements within Ms. Bird's statement, the District Court declined: "Plausibly, the scripture verses do not disguise Bird's beliefs as religious; rather, the scripture verses emphasize how Bird's sincerely held religious beliefs conflict with her receiving the COVID-19 vaccine. Although Defendants assert that Bird's beliefs are conclusively secular, courts cannot "easily distinguish between beliefs springing from religious and secular origin." *Callahan*, 658 F.2d at 687. Under Rule 12's plausibility standard, Bird has sufficiently pled how her faith conflicts with Defendants' vaccination requirement." *Bird*, 2024 U.S. Dist. LEXIS 39061, at *7-8 (citation cleaned up).

*Id.* at \*4-5. In these three near-identical requests, the *Kather* District Court observed that the allegation "only generally emotes religious opposition to Defendant's authority to mandate vaccines" within a "sea of other text" submitted by the unsuccessful plaintiffs. *Id.* at \*13.[11] It is difficult to find any similarity between the above inadequate exemption requests in *Kather* and request submitted by Ms. Moli.

The Order also does not discuss the other three plaintiffs in *Kather,* each of whom submitted legally adequate religious beliefs in the eyes of the Oregon District Court. *Id.* at \*1-5. Plaintiff Osterberg's request is particularly informative. The *Kather* District Court found that, even while "not articulating her religious conflict with great clarity and precision," it could "be inferred that Osterberg's religious-based hostility toward the COVID-19 mandate informs a religious opposition to receiving a COVID-19 vaccine." This satisfactory inference was drawn from her statement that "Satan is at work with the whole forceful

---

[11] These inadequate statements better compared with the insufficient allegation in *Kamrath*: "It is my belief that this vaccine is of no integral good for my body, my spirituality or person in general." *Kamrath v. Addictions Recovery Ctr., Inc.*, No. 1:23-cv-01516-MC, 2024 U.S. Dist. LEXIS 96019, at \*8-9 (D. Or. May 30, 2024). The *Kamrath* statement lacks the affirmative allegation of a conflict as presented by Ms. Moli, by Osterberg in *Kather* and by Bird and Egenhoff in *Bird.*

COVID-19 mandate" and that she has the "God-given right to refuse a vaccination that goes against everything [she] believe[s] in." *Id.* at *4.[12]

The Order, before turning to *Kather,* asserts that Ms. Moli "alleges a one-off objection to a particular employer-mandated vaccine that simply labels that objection as religious in nature." ER-10. This is not a fair characterization of Ms. Moli's statement of belief and objection to the Covid-19 vaccine. She informed her employer that she could only receive immunizations that would not defile her temple, and the Covid-19 vaccine was not an immunization that belonged in that category. ER-7. This type of religious objection is consistent with the statements of belief deemed legally sufficient in *Kather* and in *Bird.*

---

[12] The second successful plaintiff (Hittinger), first alleged that the Covid-19 vaccine was "contrary to [his] religious and spiritual tenants and practices," and he later provided a supplemental statement that it would "interfere with the function of the human immune system which God created" with a reference to an objection to a vaccine that "originates from fetal cell lines." *Kather,* 2023 U.S. Dist. LEXIS 131899, at *3. The third successful plaintiff (Martin), alleged a belief in "New Age Christianity" informing her understanding that she must "raise the vibration of planet earth" but the Covid-19 vaccine contains "low energy constituents" that the "Great Spirit" tells her would lower her bodily vibrations; a potential conflict was also inferred from resistance to receiving a "vaccine developed with fetal cell lines." *Id.* at *3-4.

The District Court's last reference to a case from the Oregon District Court, *Bartholomew,* also does not explain the Order's characterization of Ms. Moli's request as a one-off objection. Nonetheless, the Order uses *Bartholomew* to support the following criticism of Ms. Moli:

> Plaintiff must do more than present labels, conclusions and/or a formulaic recitation of cause of action's elements to give rise to a plausible inference that plaintiff's sincerely held objections to obtaining a COVID-19 vaccine were religious in nature.

ER-10. In *Bartholomew,* the plaintiff informed his employer about a belief in Jesus when requesting a religious exemption. 2024 U.S. Dist. LEXIS 62717, at *12. Unlike Ms. Moli, but rather like the unsuccessful Ms. Shaw-David in *Bird*, Mr. Bartholomew's statement "focused on his belief in his own natural immunity" without alleging an actual conflict between his faith and receipt of the Covid-19 vaccine. *Id.* at *15.[13] Even if the District Court determined that Mr. Bartholomew's belief in his own "natural immunity" did not present itself on a religious footing

---

[13] Mr. Bartholomew's legal complaint, unlike Ms. Moli, made assertions about the statements he submitted to his employer that were "nowhere to be found in Bartholomew's accommodation requests, emails to HR, or any other communications pertaining to the potential for accommodation. Nor does it seem consistent with Plaintiff's answers on the accommodation request." *Bartholomew*, 2024 U.S. Dist. 62717, at *13-14.

39

from which a religious-based objection might at least be inferred, the same cannot be said of Ms. Moli. She does not rely upon mere "labels" or "conclusions" to assert her religious objection; she succinctly cites the Bible, lays out verses supporting a belief that she is a temple of God and determines the Covid-19 vaccine will defile that temple with the resulting damnation of her spirit and soul. ER-6–7, 17–18. These assertions in Ms. Moli's statement of belief surely give rise to a plausible inference of an actual conflict with a religious belief and receipt of a Covid-19 vaccine, just like Ms. Egenhoff's statement in *Bird* and Ms. Osterberg's statement in *Kather*.

It thus "boils down to a pleading requirement issue. Courts will not second-guess the reasonableness of a plaintiff's assertion that a requirement conflicts with her religious beliefs, but plaintiffs still must say what the conflict is." *Bulek v. Kaiser Found. Hosps.*, No. 3:23-cv-01585-MO, 2024 U.S. Dist. LEXIS 61168, at *3 (D. Or. April 3, 2024); see also, *Rolovich v. Wash. State Univ.*, No. 22-CV-0319, 2023 U.S. Dist. LEXIS 93926, at *3 (E.D. Wash. May 30, 2023) (finding a general assertion that plaintiff's Catholic faith, informed by prayer, Bible study, priestly advice and Church teachings to be a sufficient basis for an

40

objection to the Covid-19 vaccine at the pleading stage without the need to detail how the vaccine conflicted with plaintiff's Catholic faith).

The Order summarizes Ms. Moli's statement of belief as follows:

> Plaintiff informed her employer, and alleges in her complaint, that she has a sincerely held religious belief that receiving the COVID-19 vaccination will defile her body, a temple of God, thereby condemning her to eternity in hell.

ER-10. It is implausible, upon reading the above, that one would be unable to infer that the objection to receiving a Covid-19 vaccine is religious in nature. The use of Scripture makes a secular reading of her statement even less probable.

Title VII protects "all aspects of religious observance and practice" under 42 U.S.C. § 2000e(j):

> Title VII protects more than the observance of Sabbath or practices specifically mandated by an employee's religion: The very words of the statute, all aspects of religious observance and practice, leave little room for such a limited interpretation. To restrict the act to those practices which are mandated or prohibited by a tenet of the religion, would involve the court in determining not only what are the tenets of a particular religion, but would frequently require the courts to decide whether a particular practice is or is not required by the tenets of the religion. Such a judicial determination would be irreconcilable with the warning issued by the United States Supreme Court when it declares that it is no business of courts to say what is a religious practice or activity.

*Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir 1993). The District Court's conclusion that Ms. Moli "failed to identify any element of her religious belief system that conflicted with her employer's COVID-19 vaccination requirement," ER-11, applies an unjustifiably narrow reading of the scope of religious belief and practice protected by Title VII. The conclusion is inconsistent with the text of Title VII, the instruction provided by the EEOC and the five cases cited in the Order for guidance on "religion" under Title VII. Ms. Moli's statement of belief is entitled to the full protection of Title VII. The Complaint, quoting that statement of belief to allege Ms. Moli's religious beliefs for her disparate treatment claim, carries its "minimal" burden to allege a conflict with receiving a Covid-19 vaccine and a religious belief. *Bolden-Hardge*, 63 F.4th at 1223.

## C. The Order required a showing that an employer had "actual knowledge" and "timely notice" that an accommodation was needed, which is error.

The District Court incorrectly concluded that Ms. Moli's statement of belief did not, under Title VII, identify a religious belief that conflicts with receiving a Covid-19 vaccine. ER-11. This first error led to three

42

more errors at the conclusion of the Order's analysis of the failure-to-accommodate claim:

> [Because Ms. Moli failed to] identify a sincerely held religious belief that **actually** precludes receiving the COVID-19 vaccine, she failed to give the employer **timely notice** of any such belief, and will therefore be unable to raise an inference of unlawful employment discrimination.

ER-12–13 (emphasis added). The District Court does not cite the text of Title VII or any case law to support this conclusion as a matter of law. *Id.* The Order's conclusion contains three sequential errors, beginning with the assertion that, as a matter of law, Title VII (1) requires that an employee to give notice to an employer of a need for an accommodation; (2) requires that an employer have "actual knowledge" of the need for an accommodation; and (3) requires that an employee provide "timely notice" to her employer that provides actual knowledge about her religious belief, including how it conflicts with a work rule. The error requiring (1) "notice" and the error requiring (2) "actual knowledge" will be addressed next, with the error requiring (3) "timely notice" addressed *infra,* Section III.A, because that error led to the denial of leave to amend.

43

The text of Title VII section 2000e-2(a)(1) does not impose a notice requirement or an "actual knowledge" requirement in order for an employee to adequately allege a claim for disparate treatment. The only necessary elements are (1) an adverse employment action (2) "because of" (3) "such individual's . . . religion (which includes his religious practice)." *Abercrombie,* 575 U.S. at 772 (ellipsis in original).

Notice to an employer, including notice which provides "actual knowledge" that an accommodation is needed due to an employee's actual religious belief or practice, would naturally satisfy the "because of" requirement. *Abercrombie,* 575 U.S. at 772. Ms. Moli's statement of belief adequately identified a religious belief under Title VII that conflicted with the Mandate, so her Complaint adequately alleges that she provided her employer with notice and with actual knowledge that her sincerely held religious beliefs conflicted with the Mandate. *Supra,* II.A.2. Prior to *Abercrombie,* the formulation of the prima facie elements in this Circuit regularly included a requirement that an employee inform an employer of a need for an accommodation.[14] Even after

---

[14] *See, e.g., Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004) (a prima facie element of a failure-to-accommodate claim is that an employee must have "informed his employer of the belief and

*Abercrombie,* these same formulations are used where the issue of notice was directly at issue.[15]

Here, however, the issue of notice has been placed at issue with the implausible claim that Defendants did not have notice and did not have actual knowledge that Ms. Moli's religious beliefs actually conflicted with the Mandate and so required accommodation under Title VII.

The Supreme Court has squarely addressed the issue and flatly held that section "2000e-2(a)(1) does not impose a knowledge requirement." There is no need to belabor an issue settled as a matter of law.

With respect to whether any form of notice is required, that is, whether an employee must inform the employer of the need for an accommodation even if not the underlying reasons for the request,

---

conflict"); *Lawson v. Washington*, 296 F.3d 799, 804 (9th Cir. 2002) (same); *Heller*, 8 F.3d at 1438 (same); *Tiano v. Dillard Dep't Stores*, 139 F.3d 679, 681 (9th Cir. 1998) (same).

[15] *See,* e.g., *Beuca v. Washington State Univ.,* No. 23-35395, 2024 U.S. App. LEXIS 17665, at \*2 (9th Cir. July 18, 2024) (citing *Peterson* for the prima facie elements where the element of informing an employer about the need for an accommodation was not notice dispositive in the decision to reverse dismissal for failure to state a claim); *see generally, Camp v. L.A. Arena Co., LLC*, No. EDCV 22-2220, 2024 U.S. Dist. LEXIS 71237, at \*10 n.3 (C.D. Cal. Apr. 18, 2024).

*Abercrombie* asks if the employer acted with the motive of avoiding an accommodation:

> Instead, the intentional discrimination provision prohibits certain *motives*, regardless of the state of the actor's knowledge. **Motive and knowledge are separate concepts**. An employer who has actual knowledge of the need for an accommodation does not violate Title VII by refusing to hire an applicant if avoiding that accommodation is not his *motive*. Conversely, an employer who acts with the **motive of avoiding accommodation** may violate Title VII even if he has no more than an unsubstantiated suspicion that accommodation would be needed.

*Abercrombie,* 575 U.S. at 773 (emphasis added). It is sufficient for an employee to allege facts at this stage that an employer had a "motive of avoiding accommodation." *Id.* Justice Scalia, writing for the majority in *Abercrombie,* offers an illustration of the motive requirement:

> Thus, the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice, **confirmed or otherwise,** a factor in employment decisions. For example, suppose that an employer thinks (though he does not know for certain) that a job applicant may be an orthodox Jew who will observe the Sabbath, and thus be unable to work on Saturdays. If the applicant actually requires an accommodation of that religious practice, and the employer's desire to avoid the prospective accommodation is a motivating factor in his decision, the employer violates Title VII.

46

575 U.S. at 773-74. The Order's conclusion, in contrast to the above, reasons that the statement of belief in the Religious Exemption Request Ms. Moli submitted to her employer did not "identify a sincerely held religious belief that *actually* precludes" complying with the Mandate, ER-12 (emphasis added). Without actual knowledge that Ms. Moli had religious beliefs that did conflict with the Mandate, her employer could not have known she was need of an accommodation. *Id.* Without this knowledge, the employer had "no duty to accommodate non-religious objections to workplace policies." ER-11. This chain of reasoning and conclusion is irreconcilable with *Abercrombie* and Title VII.

The District Court subtly but significantly adds an "actual knowledge" requirement into the pleading requirements for a disparate treatment claim. This is error which rewrites the text of Title VII, conflicts with Supreme Court precedent and frustrates the policy objectives at the heart of Title VII.

The Order remains silent about *Abercrombie*, but partially concedes this distinction in a footnote:

> Plaintiff correctly points out that a complaint in an employment discrimination lawsuit need not contain factual allegations aimed at each and every element of the *prima facie* case. (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S.

47

> 506, 508 (2002). But the allegations must give rise to a plausible inference that plaintiff is entitled to relief, *i.e.*, that the [1] adverse employment action was [2] motivated by and based on plaintiff's [3] religion.

ER-8 n.4.[16] The above admission by the District Court partially

concedes that "actual knowledge" is not required, but still blurs

the clear requirement that the adverse employment action must

only be motivated by a desire not to provide an accommodation,

and the accommodation must be necessary because of the

employee's actual religion.

The Congressional policy reasons supporting the motive-based

"because of" requirement underscore the importance of resisting the

impulse to impose an "actual knowledge" standard:

> The problem with this approach is the one that inheres in most incorrect interpretations of statutes: It asks us to add

---

[16] The Order cites and quotes *EEOC v. Townley Eng'g & Mfg. Co.,* 859 F.2d 610, 614[n.5] (9th Cir. 1988) for the prima facie elements, which includes a requirement that "the employee informed the employer of the conflict." ER-7. Although *Townley* predates *Abercrombie* by almost two decades, the "because of" requirement for a disparate treatment claim can indeed be satisfied by informing an employer of the need for a religious accommodation. *Abercrombie,* 575 U.S. at 774. Ms. Moli informed her employer that she needed accommodation, ER-6–7, and can thus satisfy the "because of" element, even if styed as a "notice" requirement. Moli objects, however, to the use of prima facie elements like those in *Townley* when the result imposes a new requirement that an employer have "actual knowledge" of the employee's religion.

48

> words to the law to produce what is thought to be a desirable result. That is Congress's province. We construe Title VII's silence as exactly that: silence. Its disparate-treatment provision prohibits actions taken with the *motive* of avoiding the need for accommodating a religious practice. A request for accommodation, or the employer's certainty that the practice exists, may make it easier to infer motive, but is not a necessary condition of liability.

*Abercrombie,* 575 U.S. at 774 (emphasis in original). In the last decade, the Supreme Court has directly addressed and clarified the contours of Title VII on several occasions.[17] This past term, the Supreme Court twice admonished lower courts not to "add words" or requirements to Title VII. *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974-75 (2024). Justice Kagan sounded the Supreme Court's alarm at these judicially constructed barriers where "employees suffered some injury in employment terms or conditions," but their "claims were rejected solely

---

[17] See, *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 970 (2024) (clarifying Title VII's discrimination requirement does not require "significant" harm result from an adverse employment action); *Groff*, 600 U.S. 447 (clarifying Title VII's requirement for an undue hardship, affirmative defense requires a showing of a substantial harm, not only a showing of more than a *de minimis* cost); *Bostock v. Clayton Cty.*, 590 U.S. 644 (2020) (clarifying Title VII's "because of" requirement applies to discrimination manifesting from a statutorily protected characteristic); *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015) (clarifying Title VII's "because of" requirement does not impose a knowledge requirement).

because courts rewrote Title VII, compelling workers to make a showing that the statutory text does not require." *Id.* at 975. Ms. Moli is just such a worker who has suffered just such an injury.

The Order stands to "add words—and significant words, as it were—to the statute Congress enacted." *Id.* at 974. The Order will "impose a new requirement on a Title VII claimant, so that the law as applied demands something more of her than the law as written." *Id.* This appeal asks the Court not to further heighten the legal walls an employee must scale to seek legal redress for unlawful discrimination.

## III. The Order's denial of leave to amend was an abuse of discretion.

### A. Ms. Moli was denied leave to amend because of the erroneous addition of an "actual knowledge" and "timely notice" requirement.

The Order acknowledged that "leave to amend is the norm in this situation," and Ms. Moli requested leave to amend if the District Court found she needed to allege additional facts to support her employment discrimination claim. ER-12. The Order also recognized that there is a "strong policy in favor of allowing amendment," *Kaplan*, 49 F.3d at 1370, and considered the factors this Court has laid out for assessing the propriety of granting leave to amend under Fed. R. Civ. P. 15(a):

> Courts may decline to grant leave to amend only if there is **strong evidence** of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'"

ER-12 (citing *Sonoma County,* 708 F.3d at 1117 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (emphasis added). This Court distilled this list into five factors: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and previous amendments to the complaint. *United States v. Corinthian Colls.,* 655 F.3d 984, 995 (9th Cir. 2011).

The District Court highlighted only one of these factors as relevant: futility. ER-12. This conclusion proceeded from the Order's erroneous imposition of an actual knowledge requirement:

> Plaintiff has not identified any religious belief other than that her body is a temple of God to justify her objection to the COVID-19 vaccine, and that broad and general belief does not conflict with the employer's policy as discussed above. Even if the plaintiff could now identify a sincerely held religious belief that actually precludes receiving the COVID-19 vaccine, she failed to give the employer timely notice of any such belief and will therefore be unable to raise an inference of unlawful employment discrimination. Leave to amend is therefore denied.

51

ER-12–13. The District Court incorrectly believed that the Complaint had to satisfy an actual knowledge and timely notice requirement, leading it to conclude that amendment would be futile. Title VII imposes no such requirement, so that alleged bar to granting leave to amend evaporates.

The remaining four factors were considered and not identified by the District Court as barring leave to amend. ER-12. Ms. Moli did amend her complaint previously, once in state court and once in federal court. ER-12. She amended in state court to add her WLAD claim, ER-12, and this Court has recently acknowledged that a different pleading standard applies in Washington State Court as compared to federal court. *Beuca*, 2024 U.S. App. LEXIS 17665, at *4. Ms. Moli also amended once in federal court, adding the text of her statement of belief from the Religious Exemption Request she submitted to Defendants. At that juncture, Ms. Moli could have requested a more extensive amendment. But here, as in *Corinthian Colleges,* it could be said that conflicting signals were given to Ms. Moli about the adequacy of her statement of belief in the Religious Exemption Request and the

subsequent grant of a religious exemption, which will likely "require additional discovery." *Corinthian Colls.,* 655 F.3d at 996.

The potential for prejudice to the opposing party, the consideration that "carries the greatest weight," is minimal because the Defendants granted her a religious exemption. ER-7, 15, 18. Moreover, Ms. Moli can, if necessary and if allowed, supplement the record at this stage with documents drafted by the Defendants. For example, these documents could include the notice of Defendants' receipt of her Religious Exemption Request. Another example would be a copy of the original employer-drafted Religious Exemption Request form, which posed six specific questions to an employee and were the six questions Ms. Moli specifically answered in her statement of belief. This original employer-drafted Religious Exemption Request form would also show that Ms. Moli explicitly agreed, if needed by her employer, to provide any additional information and/or documentation about her religious practices or beliefs, to discuss the nature of her religious beliefs with a spiritual leader (if applicable) or religious scholars to address her exemption request. Additionally, a letter from Defendants confirming that Ms. Moli was deemed eligible for a religious exemption after her

53

Religious Exemption Request and statement of belief were reviewed by a committee that included Human Resources ("HR") professionals, Disability Services specialists, the Equity and Inclusion Senior HR Manager, and also after legal review by a member of Defendants' Prosecuting Attorney's Office Labor and Employment Section with a specific eye toward state, federal and local law would be relevant, even if not necessary at this stage. These documents were drafted by the Defendants, are presumably still in their possession and presumably facts already known to Defendants, thus not creating a concern for prejudice to the opposing party.

"Leave to amend shall be freely given when justice so requires, and this policy is to be applied with **extreme liberality**." *Bacon v. Woodward*, No. 22-35611, 2024 U.S. App. LEXIS 14756, at *19 (9th Cir. June 18, 2024) (quoting *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) (cleaned up) (emphasis added). A Rule 12(b)(6) motion to dismiss should be granted if there is no set of "conceivable facts" to save a complaint and leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir.

54

1988) (internal quotation omitted). The overwhelming authority of this Circuit's cases supports a grant of leave to amend, if necessary.

### B. Ms. Moli provided a short and plain statement of her claims, and any defect in pleading could have been cured either through amendment or discovery.

The Complaint was originally filed in state court and amended only once in federal court. ER-12. It is a short and plain statement asserting facts sufficient under Rule 8 to show Ms. Moli is entitled to relief for a disparate treatment claim under Title VII. *Swierkiewicz,* 534 U.S. at 508. The Complaint pleads facts, not just conclusory statements, that plausibly allege the elements of a disparate treatment claim under Title VII and the WLAD.

The allegations in the Complaint could certainly be expanded, and Ms. Moli could further describe her personal prayer practices, Bible study, spiritual discernment and the revelation and instruction she received from the Holy Spirit. However, the Complaint currently provides Defendants with fair notice of Ms. Moli's two claims and the grounds upon which they rest. *Iqbal*, 556 U.S. at 679. Her two claims are not overly complicated: She was subjected to a workplace Covid-19 vaccine mandate, she submitted a Religious Exemption Request and

was deemed eligible for religious exemption. She was subsequently informed by Defendants that no accommodation was available for her, and she was terminated.

But while the facts of this case may be relatively simple, the impact of this Order could be profound. The imposition of an actual knowledge requirement led the District Court to treat Ms. Moli's initial statement of belief as her only chance to fully and accurately present her religious objections to, and conflict with, receiving a Covid-19 vaccine. Yet Defendants only questioned the adequacy of that exemption request for the first time in litigation at the motion to dismiss stage, using that new claim to allege a lack of notice and a lack of knowledge of her religion. ER-4.

Affirming the decision below sets a troubling precedent: it would freeze an employee's initial statement of belief in place as the first and last word she gets to have about her religion. If that employee-drafted statement of belief fails to relay "sufficient information" about the religious nature of a workplace conflict under Title VII or the Rule 8 pleading standard, ER-10, then the employee can be barred from providing additional information or pleading additional facts during

litigation. The employer simply asserts a lack of timely notice and a lack of actual knowledge to escape liability. These additional, now-mandatory showings are precisely the type of new requirements "demanded now by the courts but not otherwise required under Title VII." *Muldrow,* 144 S. Ct. at 975.

This also encourages employers, armed with review committees, to delay raising questions about the adequacy of a religious belief until litigation. Once a case is in litigation, the employee is denied the opportunity to address any alleged deficiencies in her initial statement of belief. An employee like Ms. Moli can be provided with an employer-drafted form containing employer-drafted questions, complete that form, and then be informed by her employer that she has received a religious exemption. ER-7, 15, 18. She can then be notified post-termination that the explanation of the religious nature of her beliefs was actually inadequate, ER-4, 12–13, and she can be barred from correcting this alleged deficiency.

If the decision below remains in place, it will penalize employees who rely upon their employer's word and encourage employers to use a head-in-the-sand approach to deny liability for lack of actual knowledge. It

57

rewards employers who, if aware of a deficiency in a religious request, choose to sandbag an employee rather than raise the issue and risk forfeiting a legal defense for future litigation.

This Circuit has recognized that "Title VII is premised on bilateral cooperation" between employers and employees. *Am. Postal Workers Union v. Postmaster Gen.,* 781 F.2d 772, 777 (9th Cir. 1986). The decision below undermines good-faith communication and undercuts the anti-discrimination objectives of Title VII. *Dykzeul v. Charter Communications, Inc.*, No. CV 18-05826, 2019 U.S. Dist. LEXIS 228981, at *9 (C.D. Cal. Nov. 18, 2019).

## IV. The Order failed to meaningfully address or remand Ms. Moli's WLAD claim.

Nearly lost in the District Court's decision is the second half of Ms. Moli's claims—her second cause of action for failure to accommodate under the WLAD. At the start of its legal discussion, the Order quotes *Townley* to present the prima facie elements for a Title VII claim. ER-7. "Similarly," the Order says, "a *prima facie* claim for failure to accommodate religious practices under the WLAD" can be derived from *Kumar,* a leading case interpreting the statute from 2014. ER-8–9 (quoting *Kumar v. Gate Gourmet, Inc.*, 180 Wn.2d 481 (Wash.

58

2014)). A proper WLAD analysis under *Kumar* may have similarly tracked a proper Title VII analysis in 2014 pre-*Abercrombie.* But the District Court did not directly address the developments in Title VII analysis necessitated by *Abercrombie, Groff,* or *Muldrow* in the past decade. Similarly, it did not consider or address any developments in WLAD analysis that may have occurred during that same time period. The unspoken assumption is not that WLAD analysis has been static in the past decade, but that WLAD analysis has developed in a perfectly synchronized fashion to mirror all legally relevant developments in Title VII analysis. This assumption is even less likely given that *Kumar* instructs courts interpreting the WLAD that they may look to interpretations of Title VII but need not be bound thereby. *Kumar,* 180 Wn.2d at 490-91.

The one-off quotation from *Kumar* is the beginning and end of the WLAD's impact on the Order and Judgment. ER-8. Importantly, under *Kumar*, a plaintiff sufficiently states a claim for relief if it is "possible" facts could be stated that support relief. *Kumar*, 180 Wn.2d at 488. The federal plausibility standard and the state court possibility standards are not interchangeable, and this Court has recently confirmed the

59

important distinctions between the two. *Beuca,* 2024 U.S. App. LEXIS 17665, at *4.

It would be difficult, looking at the Order, to assert that the District Court meaningfully considered Ms. Moli's WLAD claim. The Order did not cite or discuss any WLAD state case law from the past decade, despite significant developments in Title VII analysis during the same time period. This silence about the WLAD is especially relevant in Ms. Moli's case because the District Court required her Complaint to make a showing that the employer had actual knowledge of religion, which is not a requirement under the WLAD any more than it is a requirement under Title VII. The District Court did not engage in the necessary analysis before dismissing the WLAD claim, but it also did not decline to exercise its supplemental jurisdiction and remand the WLAD claim to state court. This is error.

## CONCLUSION

Title VII means what it says. *Groff,* 600 U.S. at 471.  Title VII says that it protects *all* religious observances and practice, as well as belief. 42 U.S.C. § 2000e(j). The EEOC says Title VII protects religious beliefs that object to the Covid-19 vaccine so long as they are not *purely*

60

nonreligious. ER-9. The District Court says Ms. Moli *did* identify a "religious belief that her body is a temple of God to justify her objection" to the Covid-19 vaccine. ER-12. Ms. Moli says she also cannot receive a Covid-19 vaccine because her temple would be defiled and her soul and spirit would not return to Heaven and would be condemned to Hell for eternity. ER-6–7. By each of the preceding measures, Ms. Moli asserted a religious belief that conflicts with a work requirement, and she was terminated when her employer refused to accommodate her. ER-7. Title VII says these are the prima facie elements of a disparate treatment claim, which Ms. Moli pleads in her Complaint. The District Court impermissibly narrowed the scope of religion protected by Title VII to exclude Ms. Moli and her religious beliefs. ER-11. This is error.

The Order also impermissibly expanded the requirements of Title VII, by adding a requirement that Ms. Moli to make a showing that her employer had "actual knowledge" and "timely notice" of her religion and how it conflicts with the Mandate. ER-12. *Abercrombie* held that Title VII does not contain either of those requirements a condition for liability under a disparate treatment claim. 575 U.S. at 773. The 9-0 reversal in *Muldrow* sends an unmistakable message to the courts to

61

restore workers' rights when "claims were rejected solely because courts rewrote Title VII, compelling workers to make a showing that the statutory text does not require." 144 S. Ct. at 975. From Ms. Muldrow in St. Louis to Ms. Moli in Seattle, the enforcement of a "wrong standard" simply "cannot survive" appellate review, *id.* at 977, and an "actual knowledge" and "timely notice" standard are not correct under Title VII. This is error.

The Order did not provide a meaningful review of Ms. Moli's state discrimination claim under the WLAD, nor did it remand the claim. This is error.

This Circuit robustly maintains that leave to amend should be given freely in the interests of justice because the underlying purpose of Rule 15 is "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). The denial of leave to amend was an abuse of discretion.

As a matter of policy and law, the assertion that Defendants did not have notice of Ms. Moli's need for accommodation frustrates the objectives of Title VII and is implausible on its face. Ms. Moli wrote her own, sincere statement of religious belief explaining her conflict with

the Mandate. It was clear enough to prompt her employer to allegedly conduct a bespoke, individualized assessment of her request and to grant her a religious exemption. Pleading is not meant to be a game of skill where justice has no role. *United States v. Hristov*, 396 F.3d 1044, 1048 (9th Cir. 2005). If this premise does not extend to the pre-litigation process when employees must represent themselves in the workplace, then the essential, cooperative foundation on which Title VII is premised is itself in jeopardy.

Ms. Moli respectfully requests that this Court reverse the decision below in its entirety.

Dated: July 25, 2024

/s/ Emily C. Mimnaugh
Emily C. Mimnaugh

*Counsel for Plaintiff-Appellant,
Fuamatala Moli*

63

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**  | 24-3155

I am the attorney or self-represented party.

**This brief contains** | 13,112 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- ⦿ complies with the word limit of Cir. R. 32-1.

- ◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

- ◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

- ◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

- ◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - ☐ it is a joint brief submitted by separately represented parties.
  - ☐ a party or parties are filing a single brief in response to multiple briefs.
  - ☐ a party or parties are filing a single brief in response to a longer joint brief.

- ◯ complies with the length limit designated by court order dated [          ].

- ◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Emily C. Mimnaugh | **Date** | July 25, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 8** | 64 | *Rev. 12/01/22*

## STATEMENT OF RELATED CASES

The undersigned attorney pursuant to Ninth Circuit Rule 28-2.6 states the following: Counsel is unaware of any related cases currently pending in this Court.

/s/ Emily C. Mimnaugh
Emily C. Mimnaugh

# CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: July 25, 2024

/s/ Emily C. Mimnaugh
Emily C. Mimnaugh

66

# ADDENDUM

## ADDENDUM

**Statutes**

42 U.S.C. § 2000e-2 ..................................................................... Add.1

42 U.S.C. § 2000e(j) .................................................................... Add.1

RCW 49.60.180 ............................................................................ Add.2

**Regulations**

29 C.F.R. § 1605.1 ....................................................................... Add.4

**Rules**

Fed. R. Civ. P. 8(a)....................................................................... Add.5

Fed. R. Civ. P. 15(a)..................................................................... Add.6

**Statutes**

**42 U.S.C. Section 2000e-2**  [Unlawful employment practices.]

**(a) Employer practices**

It shall be an unlawful employment practice for an employer—

**(1)** to fail or refuse to hire or to discharge any individual, or

otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national

origin; or

**(2)** to limit, segregate, or classify his employees or applicants for

employment in any way which would deprive or tend to deprive any

individual of employment opportunities or otherwise adversely

affect his status as an employee, because of such individual's race,

color, religion, sex, or national origin.

**42 U.S.C. Section 2000e(j)**  [Definitions.]

**(j)** The term "religion" includes all aspects of religious observance

and practice, as well as belief, unless an employer demonstrates that he

is unable to reasonably accommodate to an employee's or prospective

**Add.1**

employee's religious observance or practice without undue hardship on the conduct of the employer's business.

**RCW 49.60.180 (Washington Law Against Discrimination)**

It is an unfair practice for any employer:

(1) To refuse to hire any person because of age, sex, marital status, sexual orientation, race, creed, color, national origin, citizenship or immigration status, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability, unless based upon a bona fide occupational qualification: PROVIDED, That the prohibition against discrimination because of such disability shall not apply if the particular disability prevents the proper performance of the particular worker involved: PROVIDED, That this section shall not be construed to require an employer to establish employment goals or quotas based on sexual orientation.

(2) To discharge or bar any person from employment because of age, sex, marital status, sexual orientation, race, creed, color, national origin, citizenship or immigration status, honorably

**Add.2**

discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability.

(3) To discriminate against any person in compensation or in other terms or conditions of employment because of age, sex, marital status, sexual orientation, race, creed, color, national origin, citizenship or immigration status, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability: PROVIDED, That it shall not be an unfair practice for an employer to segregate washrooms or locker facilities on the basis of sex, or to base other terms and conditions of employment on the sex of employees where the commission by regulation or ruling in a particular instance has found the employment practice to be appropriate for the practical realization of equality of opportunity between the sexes.

(4) To print, or circulate, or cause to be printed or circulated any statement, advertisement, or publication, or to use any form of application for employment, or to make any inquiry in connection

**Add.3**

with prospective employment, which expresses any limitation, specification, or discrimination as to age, sex, marital status, sexual orientation, race, creed, color, national origin, citizenship or immigration status, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability, or any intent to make any such limitation, specification, or discrimination, unless based upon a bona fide occupational qualification: PROVIDED, Nothing contained herein shall prohibit advertising in a foreign language.

**Regulations**

**29 C.F.R. § 1605.1**

**§ 1605.1 "Religious" nature of a practice or belief.**

In most cases whether or not a practice or belief is religious is not at issue. However, in those cases in which the issue does exist, the Commission will define religious practices to include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views. This standard was developed in *United States* v. *Seeger,* 380 U.S. 163 (1965) and *Welsh* v. *United*

**Add.4**

*States,* 398 U.S. 333 (1970). The Commission has consistently applied this standard in its decisions. 1 The fact that no religious group espouses such beliefs or the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee or prospective employee. The phrase "religious practice" as used in these Guidelines includes both religious observances and practices, as stated in section 701(j), 42 U.S.C. 2000e(j).

**Rules**

**Fed. R. Civ. P. 8**

**Rule 8. General Rules of Pleading**

**(a)** CLAIM FOR RELIEF. A pleading that states a claim for relief must contain:

 (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

 (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

**Add.5**

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

**Fed. R. Civ. P. 15.**

**Rule 15.  Amended and Supplemental Pleadings.**

**(a)** AMENDMENTS BEFORE TRIAL.

(1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course no later than:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) *Other Amendments.* In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

(3) *Time to Respond.* Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

**Add.6**