No.  24-3155

IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FUAMATALA MOLI,

*Plaintiff-Appellant*,

v.
KING COUNTY, *et al.*,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Western District of Washington
No. 2:23-cv-00823-RSL
Honorable Robert S. Lasnik

**DEFENDANTS-APPELLEES'
ANSWERING BRIEF**

Zachary J. Pekelis, WSBA No. 44557
Meha Goyal, WSBA No. 56058
PACIFICA LAW GROUP LLP
1191 Second Avenue, Suite 2000
Seattle, WA  98101-3404
Telephone:  206-240-1700
Facsimile:  206-240-1750
zach.pekelis@pacificalawgroup.com
meha.goyal@pacificalawgroup.com

*Counsel for Defendants-Appellees*

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................1

II. JURISDICTIONAL STATEMENT .......................................................3

III. STATEMENT OF ISSUES PRESENTED FOR REVIEW ...............................3

IV. STATEMENT OF THE CASE .............................................................4

   A. The COVID-19 Pandemic and the Emergency Response..............................5

   B. The Delta Surge and the Vaccination Requirement .........................................7

   C. Moli's Religious Accommodation Request .......................................................9

   D. Procedural History..............................................................................................10

      1. Moli's lawsuit..............................................................................................10

      2. The County's Motion to Dismiss ...............................................................11

V. STANDARD OF REVIEW....................................................................13

VI. SUMMARY OF ARGUMENT.............................................................14

VII. ARGUMENT.......................................................................................16

   A. The District Court Correctly Held that Moli Failed to State Title VII and WLAD Failure-to-Accommodate Claims.................................................16

      1. The District Court applied the correct failure-to-accommodate test..........16

      2. The District Court correctly held that Moli did not allege a conflict between COVID-19 vaccination and her religious beliefs............19

         a. The County is not estopped from challenging whether Moli has plausibly alleged facts to support the first prima facie element ..............19

         b. Courts must assess whether there is a conflict between a plaintiff's religious beliefs and the job requirement in question............................20

         c. Moli has not alleged a conflict between her religion and vaccination.....25

      3. The District Court correctly ruled that Moli failed to allege facts supporting the notice element of her prima facie case ...............................33

   B. Moli Did Not Plead a Traditional Disparate Treatment Claim ......................36

   C. The District Court Correctly Dismissed the SAC With Prejudice.................40

VIII. CONCLUSION....................................................................................41

i

# TABLE OF AUTHORITIES

**Federal Cases**

*Africa v. Pennsylvania*,
    662 F.2d 1025 (3d Cir. 1981).......................................................... 22, 25, 26, 31

*Alvarado v. City of San Jose*,
    94 F.3d 1223 (9th Cir. 1996) .................................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................... 13, 14, 19

*Ashcroft v. S. Cal. Permanente Med. Grp.*,
    No. 24-cv-35-MMA (MMP), 2024 WL 4375781 (S.D. Cal. Oct. 2, 2024) ........28

*Baily v. Metro Ambulance Servs., Inc.*,
    992 F.3d 1265 (11th Cir. 2021) .............................................................36

*Bartholomew v. Washington*,
    --- F. Supp. 3d ----, No. 3:23-cv-05209-DGE,
    2024 WL 1426308 (W.D. Wash. Mar. 26, 2024) ........................................ 18, 33

*Bartholomew v. Washington*,
    693 F. Supp. 3d 1107 (W.D. Wash. Sept. 21, 2023) ...........................................20

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................... 13, 19

*Berry v. Dep't of Soc. Servs.*,
    447 F.3d 642 (9th Cir. 2006) ..................................................... 37, 39

*Beuca v. Wash. State Univ.*,
    No. 23-35395, 2024 WL 3450989 (9th Cir. July 18, 2024) ................................17

*Bhuiyan v. PNC Bank, Nat'l Ass'n*,
    No. 19-14265, 2023 WL 2733510 (11th Cir. Mar. 31, 2023) ...................... 34, 35

*Blackwell v. Lehigh Valley Health Network*,
    No. 5:22-cv-03360, 2023 WL 3623926 (E.D. Pa. Jan. 23, 2023........................30

*Blackwell v. Lehigh Valley Health Network*,
No. 5:22-cv-03360-JMG, 2023 WL 5807840 (E.D. Pa. Sept. 7, 2023) ..............34

*Bohlmann v. Kaiser Found. Hosps.*,
No. 3:23-cv-1322-JR, 2024 WL 2984517 ...........................................................28

*Bolden-Hardge v. Off. of Cal. State Controller*,
63 F.4th 1215 (9th Cir. 2023) ...................................................................... 16, 20

*Bowie v. Kaiser Found. Health Plan Inc.*,
No. 23-cv-06546-VC, 2024 WL 3872926 (N.D. Cal. Aug. 16, 2024)...............28

*Brown v. Children's Hosp. of Phila.*,
794 F. App'x 226 (3d Cir. 2020) .......................................................................21

*Brown v. Cook Cnty. Auditor's Off.*,
No. 23-cv-10452, 2024 WL 3426888 (N.D. Ill. July 16, 2024) .........................30

*Buss v. PeaceHealth*,
No. 6:23-CV-01128-AA, 2024 WL 3970662 (D. Or. Aug. 26, 2024)................20

*Caruano v. Bayhealth Med. Ctr., Inc.*,
No. 22-1284-RGA, 2024 WL 406438 (D. Del. Feb. 2, 2024).............................30

*Children's Health Defense v. FDA*,
No. 23-50167, 2024 WL 244938 (5th Cir. Jan. 23, 2024)....................................6

*Children's Health Defense v. Rutgers*,
93 F.4th 66 (3d Cir. 2024) ...................................................................................5

*Chinnery v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*,
No. 1:23cv1110 (DJN), 2024 WL 3152348 (E.D. Va. June 24, 2024) ..............26

*Church v. Biden*,
573 F. Supp. 3d 118 (D.D.C. 2021)......................................................................6

*Church v. Biden*,
No. 21-2815 (CKK), 2022 WL 1491100 (D.D.C. May 11, 2022) .......................6

*Conservation Force v. Salazar*,
646 F.3d 1240 (9th Cir. 2011) ...........................................................................14

*Cox v. Valley Health Sys.*,
   No. 5:23-cv-00051, 2024 WL 3236414 (W.D. Va. June 28, 2024) ....................32

*Craven v. Shriners Hosps. for Children*,
   No. 3:22-cv-01619-IM, 2024 WL 21557 (D. Or. Jan. 2, 2024) ................... 28, 34

*Dettmer v. Landon*,
   799 F.2d 929 (4th Cir. 1986) ..........................................................................23

*Detwiler v. Mid-Columbia Med. Ctr.*,
   No. 3:22-cv-01306-JR, 2023 WL 7221458 (D. Or. Dec. 20, 2022)............. 26, 27

*DiOrio v. Nat'l Educ. Ass'n*,
   No. 23-246 WES, 2023 WL 7300080 (D.R.I. Nov. 6, 2023) ............................30

*Doe v. San Diego Unified Sch. Dist.*,
   19 F.4th 1173 (9th Cir. 2021) .........................................................................24

*Does 1-2 v. Hochul*,
   632 F. Supp. 3d 120 (E.D.N.Y. 2022) ...............................................................8

*Does 1–6 v. Mills*,
   16 F. 4th 20 (1st Cir. 2021)..............................................................................7

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
   575 U.S. 768 (2015)........................................................ 17, 34, 35, 36

*EEOC v. Union Independiente de la Autoridad de Acueductos y
   Alcantarillados de Puerto Rico*,
   279 F.3d 49 (1st Cir. 2002)..............................................................................22

*Ellison v. Inova Health Care Servs.*,
   692 F. Supp. 3d 548 (E.D. Va. 2023) ..............................................................30

*Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*,
   877 F.3d 487 (3d Cir. 2017)......................................................... 23, 24, 25, 26

*Florida v. Dep't of Health & Hum. Servs.*,
   19 F.4th 1271 (11th Cir. 2021) .........................................................................5

*Foshee v. Astrazeneca Pharms. LP*,
   No. SAG-23-00894, 2023 WL 68454254 (D. Md. Oct. 17, 2023)....................30

*Frazee v. Ill. Dep't of Emp. Sec.*,
489 U.S. 829 (1989) ...................................................................................21

*Griffin v. Mass. Dep't of Rev.*,
No. 22-cv-11991-FDS, 2023 WL 4685942 (D. Mass. July 20, 2023) ...............24

*Guthrie-Wilson v. Cook Cnty.*,
No. 1:23-cv-362, 2023 WL 8372043 (N.D. Ill. Dec. 4, 2023) ..........................30

*Haczynska v. Mount Sinai Health Sys., Inc.*,
No. 23-CV-3091 (MKB), 2024 WL 3178639 (E.D.N.Y. June 26, 2024)...........39

*Hand v. Bayhealth Med. Ctr. Inc.*,
No. 22-1548-RGA, 2024 WL 359245 (D. Del. Jan. 31, 2024) ..........................30

*In re Finjan Holdings, Inc.*,
58 F.4th 1048 (9th Cir. 2023) ......................................................................13

*Jackson v. Tyson Foods, Inc.*,
No. 5:23-CV-5102, 2023 WL 9097854 (W.D. Ark. Nov. 27, 2023) .................30

*Johnson v. Moore*,
948 F.2d 517 (9th Cir. 1991) .......................................................................21

*Kather v. Asante Health Sys.*,
No. 1:22-cv-01843-MC, 2023 WL 4865533 (D. Or. July 28, 2023)........... 13, 33

*Keene v. City & Cnty. of S.F.*,
No. 22-16567, 2023 WL 3451687 (9th Cir. May 15, 2023)...............................17

*Kennedy v. Bremerton Sch. Dist.*,
991 F.3d 1004 (9th Cir. 2021) ......................................................................17

*King v. Cnty. of L.A.*,
885 F.3d 548 (9th Cir. 2018) .........................................................................5

*Kirksey v. R.J. Reynolds Tobacco Co.*,
168 F.3d 1039 (7th Cir. 1999) ......................................................................19

*Little v. Washington*,
517 F. App'x 552 (9th Cir. 2013) .................................................................19

v

*Love v. Reed*,
216 F.3d 682 (8th Cir. 2000) ...............................................................22

*Maggio v. Or. Health & Sci. Univ.*,
No. 3:23-cv-00116-JR, 2024 WL 665991 (D. Or. Jan. 8, 2024).........................24

*Maher v. Bayhealth Med. Ctr., Inc.*,
No. 22-1551-RGA, 2024 WL 406494 (D. Del. Feb. 2, 2024)............................30

*Mason v. Gen. Brown Cent. Sch. Dist.*,
851 F.2d 47 (2d Cir. 1988)...............................................................21

*Matos v. Discovery Commc'n*,
No. 23-CV-2218 (KMK), 2024 WL 4290674 (S.D.N.Y. Sept. 25, 2024) ..........30

*Matthews v. Legacy Health*,
No. 6:24-cv-00592-MC, 2024 WL 3970794 (D. Or. Aug. 26, 2024) .................38

*McDowell v. Bayhealth Med. Ctr., Inc.*,
No. 22-1392-RGA, 2024 WL 278187 (D. Del. Jan. 25, 2024) ..........................30

*McKinley v. Princeton Univ.*,
No. 22-5069 (MAS) (TJB), 2023 WL 8374486 (D.N.J. Dec. 1, 2023)...............30

*Medrano v. Kaiser Permanente*,
No. 8:23-cv-02501-DOC-ADSx, 2024 WL 3383704
(C.D. Cal. July 10, 2024) ....................................................... 27, 31

*Millwood v. Tyson Foods, Inc.*,
No. 8:23-cv-6004-DCC-KDW, 2024 WL 3666446 (D.S.C. June 14, 2024) ......30

*Nelson-Godfrey v. Cook Cnty.*,
No. 23 C 16893, 2024 WL 2722668 (N.D. Ill. May 28, 2024) ..........................30

*Nogowski v. St. Charles Med. Ctr.*,
No. 6:23-cv-00027-AA, 2023 WL 7003702 (D. Or. Oct. 24, 2023)...................28

*North v. Washington*,
No. 3:23-CV-05552-TMC, 2023 WL 8281609 (W.D. Wash. Nov. 30, 2023) ...18

*Nunes v. Ashcroft*,
375 F.3d 805 (9th Cir. 2004) ...............................................................40

*Passarella v. Aspirus, Inc.*,
  108 F.4th 1005 (7th Cir. 2024) ...................................................... 28, 29

*Petermann v. Aspirus, Inc.*,
  *No.* 22-cv-332-jdp, 2023 WL 26628992 (W.D. Wis. Mar. 28, 2023 ..................30

*Pilz v. Inslee*,
  No. 3:21-cv-05735-BJR, 2022 WL 1719172 (W.D. Wash. May 27, 2022) .......10

*Prakash v. Or. Health & Sci. Univ.*,
  No. 3:23-cv-01653-IM, 2024 WL 1462336 (D. Or. Apr. 4, 2024) .....................28

*Prida v. Option Care Enters., Inc.*,
  No. 5:23-CV-00905, 2023 WL 7003402 (N.D. Ohio Oct. 24, 2023)........... 30, 32

*Reed v. Great Lakes Cos., Inc.*,
  330 F.3d 931 (7th Cir. 2003) .............................................................21

*Ringhofer v. Mayo Clinic, Ambulance*,
  102 F.4th 894 (8th Cir. 2024) ............................................................28

*Riser v. St. Charles Health Sys., Inc.*,
  No. 6:23-cv-01720-AA, 2024 WL 2864405 (D. Or. June 6, 2024) ....................28

*Roberts v. Bayhealth Med. Ctr., Inc.*,
  No. 23-330-RGA, 2024 WL 359467 (D. Del. Jan. 31, 2024) ............................30

*Robinson v. L.A. Cnty. Sheriff's Dep't*,
  No. 2:21-cv-01180-DOC-PD, 2022 WL 21768584 (C.D. Cal. Oct. 18, 2022)...40

*Ruscitti v. Legacy Health*,
  No. 3:23-cv-00787-JR, 2023 WL 8007620 (D. Or. Sept. 27, 2023) ..................28

*Saloojas, Inc. v. Aetna Health of Cal., Inc.*,
  80 F.4th 1011 (9th Cir. 2023) .............................................................13

*Scafidi v. B. Braun Med., Inc.*,
  713 F. Supp. 3d 1231 (M.D. Fla. 2024).............................................20

*Sheets v. City of Winslow*,
  859 F. App'x. 161 (9th Cir. 2021)........................................................39

vii

*Slidewaters LLC v. Wash. State Dep't of Labor & Indus.*,
4 F.4th 747 (9th Cir. 2021) .......................................................................5

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ...................................................................14

*Sturgill v. Am. Red Cross*,
114 F.4th 803 (6th Cir. 2024) ..................................................................28

*Sutton v. Providence St. Joseph Med. Ctr.*,
192 F.3d 826 (9th Cir. 1999) ......................................................... 16, 17, 33

*Tabura v. Kellogg USA*,
880 F.3d 544 (10th Cir. 2018) ..................................................................17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308, 127 S. Ct. 2499 (2007)........................................................4

*Thornton v. Ipsen Biopharmaceuticals, Inc.*,
No. 23-11171-JCB, 2023 WL 7116739 (D. Mass. Oct. 26, 2023).....................30

*Tiano v. Dillard Dep't Stores, Inc.*,
139 F.3d 679 (9th Cir. 1998) ...................................................................21

*Troulliet v. Gray Media Grp., Inc.*,
No. CV 22-5256, 2023 WL 2894707 (E.D. La. Apr. 11, 2023).........................20

*Ulrich v. Lancaster Gen. Health*,
*N*o. CV 22-4945, 2023 WL 29395855 (E.D. Pa. Apr. 13, 2023.........................30

*United States v. Meyers*,
95 F.3d 1475 (10th Cir. 1996) ............................................................. 22, 23

*United States v. Quaintance*,
608 F.3d 717 (10th Cir. 2010) ..................................................................23

*United States v. Seeger*,
380 U.S. 163 (1965).................................................................................22

*Van Pelt v. Nevada ex rel. Nevada Dep't of Corr.*,
637 F. App'x 307 (9th Cir. 2016) ...............................................................38

*Walsh v. Nev. Dep't of Human Res.*,
   471 F.3d 1033 (9th Cir. 2006) ....................................................................38

*Weiss v. Permanente Med. Grp., Inc.*,
   No. 23-cv-03490-RS, 2024 WL 3090496 (N.D. Cal. June 21, 2024) .................28

*Welsh v. United States*,
   398 U.S. 333 (1970)................................................................. 22, 24, 26

*Wilson v. Arkansas Dep't of Human Servs.*,
   850 F.3d 368 (8th Cir. 2017) .....................................................................19

*Wilson v. Bayhealth Med. Ctr.*,
   No. 22-1550-RGA, 2024 WL 359464 (D. Del. Jan. 31, 2024) ..........................30

*Wisconsin v. Yoder*,
   406 U.S. 205 (1972).................................................................................21

## State Cases

*Friedman v. S. Cal. Permanente Med. Grp.*,
   102 Cal. App. 4th 39 (2002) .....................................................................23

*Kumar v. Gate Gourmet, Inc.*,
   325 P.3d 193 (Wash. 2014)................................................................. 16, 18

*Suarez v. State*,
   552 P.3d 786 (Wash. 2024)........................................................................18

## Federal Statutes

28 U.S.C. § 1291 ............................................................................................3

28 U.S.C. § 1331 ............................................................................................3

28 U.S.C. § 1367(a) .......................................................................................3

42 U.S.C. § 2000-2(a) ................................................................................ 3, 11

## State Statutes

Wash. Rev. Code. § 49.60.................................................................................3

**Federal Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................... 4, 13, 19

Fed. R. Evid. 201 ..............................................................................5

**Federal Regulations**

86 Fed. Reg. 5200 (Jan. 19, 2021) ..............................................6

x

## I.     INTRODUCTION

In August 2021, faced with an unprecedented surge in COVID-19 cases, hospitalizations, and deaths, Defendant King County adopted an emergency executive order requiring vaccination of all County executive branch employees. This executive order was one of many such vaccination requirements issued by state and local governments, healthcare and educational institutions, and other employers around the country. And this case is one of thousands challenging the application of such requirements under Title VII or state analogues such as the Washington Law Against Discrimination (WLAD). In resolving these challenges, courts have overwhelmingly dismissed cases where plaintiffs fail to connect a generalized religious principle with their specific opposition to the COVID-19 vaccine. This case fits squarely within this body of authority, and the District Court properly dismissed it.

A former employee of King County Metro Transit, Plaintiff-Appellant Fuamatala Moli failed to allege in her complaint the most basic element of a failure-to-accommodate-religion claim under Title VII and WLAD—a bona fide religious belief that *conflicts* with COVID-19 vaccination. In her request for a religious exemption and accommodation, Moli wrote: "I am a temple of God, he live[s] in me and I cannot desecrate/defile myself . . . The COVID vaccination is a desecration/defilement of my temple and it will condemn my spirit and soul to

1

eternity in hell after I die." ER-17–18 ¶ 18. Absent from Moli's request, however, was any explanation of *why* she believes receiving the COVID-19 vaccines would "desecrate" or "defile" her "temple." Nor does Moli's complaint in any way elaborate on her beliefs—despite having been permitted to amend it a second time specifically to allege the nature of her religious beliefs and how they conflict with COVID-19 vaccination.

As a result, nothing in her exemption request or complaint connected her broad religious belief that she is a Temple of God with her specific opposition to the COVID-19 vaccines. As courts around the country have held, if accepted, such fungible beliefs would essentially create a blanket privilege to object to practically any job requirement with which an employee disagrees—for any reason. The District Court thus correctly held that Moli's own allegations failed to establish a bona fide religious conflict with COVID-19 vaccination—a required element of her prima facie case under Title VII and WLAD.

Further, because Moli's exemption request did not include a bona fide religious belief in conflict with COVID-19 vaccination, the District Court correctly determined that Moli failed to inform the County of any religious conflict with the employment requirement—the second prima facie element. For these reasons and others, this Court should affirm dismissal of Moli's lawsuit.

2

## II.     JURISDICTIONAL STATEMENT

King County and King County Metro Transit (together, the County) agree that the District Court's judgment is final and that this Court has appellate jurisdiction under 28 U.S.C. § 1291. *See* Op. Br. at 3. The County further agrees that Moli's claim under 42 U.S.C. § 2000-2(a) vested the District Court with original, federal question jurisdiction pursuant to 28 U.S.C. § 1331. *See id*. This enabled the District Court to exercise supplemental jurisdiction over the state law claim under WLAD, Wash. Rev. Code § 49.60 pursuant to 28 U.S.C. § 1367(a).

## III.     STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     As alleged in the Second Amended Complaint (SAC), Moli's exemption request described her opposition to COVID-19 vaccination based on her beliefs that: (1) "God has given me a choice to live eternity in heaven or to live eternity in hell after I die"; (2) "I am a temple of God" and (3) the "COVID vaccination is a desecration/defilement of my temple"; and (4) "receiving the COVID vaccination will guarantee that my spirit and soul will NOT return to heaven." Did the District Court correctly hold that Moli failed to allege facts demonstrating that she has a bona fide religious belief in conflict with COVID-19 vaccination so as to establish the first element her Title VII and WLAD failure-to-accommodate claims' prima facie case?

3

2.     Where the SAC did not allege that Moli provided any information to the County regarding her opposition to the COVID-19 vaccines beyond what was in her exemption request, did the District Court correctly hold that Moli did not inform the County of a conflict between her religious beliefs and vaccination so as to establish the second element of her Title VII and WLAD failure-to-accommodate claims' prima facie case?

3.     Did Moli plausibly allege a traditional disparate treatment claim under Title VII where the SAC did not allege facts showing that (1) she belongs to a protected class; (2) she was qualified for her position; and (3) similarly situated individuals outside her protected class were treated more favorably?

4.     Did the District Court correctly deny leave to amend the SAC where Moli's own allegations revealed that she neither has a sincerely held religious belief precluding vaccination against COVID-19 nor gave the County notice of any such belief?

## IV.     STATEMENT OF THE CASE

This factual summary is based upon the allegations in the operative complaint and judicially noticeable facts. *See* Fed. R. Civ. P. 12(b)(6); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499 (2007). The County asks the Court to take judicial notice of basic facts regarding the COVID-19 pandemic, which are both well-known and based on sources from reliable

4

public health authorities whose accuracy cannot reasonably be questioned, including from the U.S. Food and Drug Administration (FDA), the U.S. Centers for Disease Control and Prevention (CDC), and the Washington Department of Health (DOH). *See* Fed. R. Evid. 201; *King v. Cnty. of L.A.*, 885 F.3d 548, 555 (9th Cir. 2018); *see, e.g.*, *Children's Health Defense v. Rutgers*, 93 F.4th 66, 71 (3d Cir. 2024) ("The essential contours of the COVID-19 pandemic are well-known.").

## A. The COVID-19 Pandemic and the Emergency Response

The COVID-19 pandemic was the "deadliest" in American history." *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1275 (11th Cir. 2021). The highly contagious respiratory virus has caused over 1.2 million deaths in the United States and over 16,000 deaths in Washington State.[1] In response to this public health emergency, "[g]overnments at all levels instituted restrictions to curb the transmission of the virus." *Slidewaters LLC v. Wash. State Dep't of Labor & Indus.*, 4 F.4th 747, 752 (9th Cir. 2021). In Washington State, Governor Jay Inslee proclaimed a state of emergency on February 29, 2020. *Id*. at 753. The next day,

---

[1] CDC, *COVID Data Tracker, Trends in the United States COVID-19 Deaths, Emergency Department (ED) Visits, and Test Positivity by Geographic Area*, https://covid.cdc.gov/covid-data-tracker/#trends_totaldeaths_select_53 (last visited on Oct. 8, 2024).

County Executive Dow Constantine proclaimed a state of emergency in the County.[2]

Between December 2020 and February 2021, the FDA issued Emergency Use Authorizations (EUAs) for three COVID-19 vaccines developed by Pfizer, Moderna, and Johnson & Johnson. *Children's Health Defense v. FDA*, No. 23-50167, 2024 WL 244938, at *1 (5th Cir. Jan. 23, 2024) (per curiam) (citing Authorizations of Emergency Use of Two Biological Products During the COVID-19 Pandemic; Availability, 86 Fed. Reg. 5200, 5204, 5214 (Jan. 19, 2021)); *Church v. Biden*, 573 F. Supp. 3d 118, 126 (D.D.C. 2021).[3] FDA gave full approval to Pfizer's vaccine for people 16 and older on August 23, 2021, and to Moderna's for people 18 and older on January 31, 2022.[4] *Church v. Biden*, No. 21-2815 (CKK), 2022 WL 1491100, at *2 (D.D.C. May 11, 2022). The CDC

---

[2] King Cnty. Exec. Dow Constantine, Proclamation of Emergency, Mar. 1, 2020, https://mrsc.org/getmedia/57f4603c-f7c3-465a-ae44-df1ca669b6db/k5coronaep.pdf.

[3] *See also* FDA, *Moderna COVID-19 Vaccine*, https://www.fda.gov/vaccines-blood-biologics/coronavirus-covid-19-cber-regulated-biologics/moderna-covid-19-vaccine (last visited Oct. 8, 2024); FDA, *Pfizer-BioNTech COVID-19 Vaccine*, https://www.fda.gov/vaccines-blood-biologics/coronavirus-covid-19-cber-regulated-biologics/pfizer-biontech-covid-19-vaccine (last visited Oct. 8, 2024); FDA, *Janssen COVID-19 Vaccine*, https://www.fda.gov/vaccines-blood-biologics/coronavirus-covid-19-cber-regulated-biologics/janssen-covid-19-vaccine (last visited Oct. 8, 2024).

[4] FDA, BLA Approval, (Jan. 31, 2022), https://www.fda.gov/media/155815/download.

considers the vaccines to be safe and effective in reducing the risk of severe illness or death due to COVID-19.[5]

## B. The Delta Surge and the Vaccination Requirement

In summer 2021, the "Delta variant" emerged—a new, highly infectious COVID-19 strain. *See Does 1–6 v. Mills*, 16 F. 4th 20, 26–27 (1st Cir. 2021). Twice as infectious as earlier variants, *id.*, Delta spread like wildfire, causing Washington's weekly COVID-19 hospitalizations to more than quadruple from July 3 to September 4, 2021.[6] The COVID-19 vaccines continued to prove highly effective against the Delta variant: According to a September 2021 CDC report (when Delta was dominant), unvaccinated people were five times more likely to contract, ten times more likely to be hospitalized with, and ten times more likely to die from COVID-19 than those who were fully vaccinated.[7] And as the CDC explained, "[v]accines continue to reduce a person's risk of contracting the virus

---

[5] CDC, *Overview of COVID-19 Vaccines* (May 23, 2023), http://bit.ly/3FdTjVv.

[6] CDC, *COVID-NET Dashboard*, (updated May 28, 2024), https://www.cdc.gov/coronavirus/2019-ncov/covidnetdashboard/de/powerbi/dashboard.html.

[7] CDC, *Monitoring Incidence of COVID-19 Cases, Hospitalizations, and Deaths, by Vaccination Status – 13 U.S. Jurisdictions, April 4-July 17, 2021* (MMWR) (Sept. 17, 2021), https://www.cdc.gov/mmwr/volumes/70/wr/mm7037e1.htm?s_cid=mm7037e1_w.

that cause[s] COVID-19, including this variant."[8] Unfortunately, the Delta surge coincided with a steady decline in vaccination rates in Washington State,[9] despite the "consensus of reliable public health authorities that the COVID-19 vaccines prevent the spread of the virus." *Does 1-2 v. Hochul*, 632 F. Supp. 3d 120, 127 (E.D.N.Y. 2022), *appeal docketed*, No. 22-2858 (2d Cir.).

On August 9, 2021, Governor Inslee issued Proclamation 21-14, prohibiting healthcare providers, most state employees, and educational workers in Washington State from working after October 18, 2021, without being vaccinated against COVID-19.[10] On August 10, the County Executive issued a similar emergency directive, Executive Order ACO-8-27-EO (the Executive Order).[11] The Executive Order required all County executive branch employees to be fully

---

[8] CDC, *Benefits of Getting a COVID-19 Vaccine* (updated Aug. 16, 2021), https://web.archive.org/web/20211018080349/https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html.

[9] DOH, *COVID-19 Vaccination Data*, https://doh.wa.gov/data-statistical-reports/health-behaviors/immunization/covid-19-vaccination-data (last visited on Aug. 8, 2024).

[10] On August 20, 2021, the Governor issued Proclamation 21.14.1, which expanded covered employees to include educational workers. *See* Office of Wash. Governor Jay Inslee, Procl. 21-14.1 at 4–5 (Aug. 20, 2021), https://governor.wa.gov/sites/default/files/proclamations/21-14.1%20-%20COVID-19%20Vax%20Washington%20Amendment.pdf.

[11] *See* King Cnty. Exec. Dow Constantine, Exec. Order No. ACO-8-27-EO (*Order Pursuant to Proclamation of Emergency; COVID-19 vaccination requirements for Executive Branch employees*) (Aug. 10, 2021), https://your.kingcounty.gov/dnrp/temp/ACO-8-27-EO-emergency-order-covid-19-vaccination-requirements.pdf.

vaccinated against COVID-19 by October 18, unless they received an exemption and accommodation based on a disability or a sincerely held religious belief.[12]

## C.  Moli's Religious Accommodation Request

According to the SAC, Moli was employed with King County Metro Transit as the Chief of Inventory Management. ER-14 ¶ 1. After issuance of the Executive Order, Moli submitted a request for a religious exemption and accommodation. *Id*. ¶ 1, ER-17–18 ¶ 18.

In her request, Moli asserted a belief commonly asserted in similar cases: "I am a temple of God, he live[s] in me and I can not [sic] desecrate/defile myself." ER-17–18 ¶ 18 (citing 1 Corinthians 3:16–19). Her request contained other equally broad religious beliefs, such as "God has given me a choice to live eternity in heaven or to live eternity in hell after I die" and "[t]here is only one true God and I am to worship him only." *Id*. These overarching religious principles say nothing about vaccines or even medicine generally, let alone suggest a religious prohibition on any particular inoculation or treatment. The only link Moli made between those general religious principles and her opposition to the COVID-19 vaccines was her belief that "[t]he COVID vaccination is a desecration/defilement of my temple and it will condemn my spirit and soul to eternity in hell after I die." *Id*. Critically, however, Moli did not specify *why* she believes the COVID-19 vaccines would

---

[12] *See id*.

"desecrate/defile" her "temple" and "condemn [her] spirit and soul" to hell. *Id*. Notably, Moli stated that she was "not opposed to all [i]mmunizations, just the [i]mmunizations that conflict with my sincerely held religious beliefs described above concerning the COVID vaccination." *Id*. ¶ 18.

Moli alleged that she was "granted an exemption"—meaning the County did not question her assertion that she had a sincere religious belief precluding vaccination against COVID-19—but was denied an accommodation that would have allowed her to remain in her job unvaccinated. *Id*. at 18 ¶ 19; *see generally Pilz v. Inslee*, No. 3:21-cv-05735-BJR, 2022 WL 1719172, at *2 (W.D. Wash. May 27, 2022) (describing parallel process under Proclamation 21-14 whereby, "[o]nce an exemption is granted, the agency decides whether an accommodation can be made without imposing 'undue hardship' on the agency").

The County then placed Moli on administrative leave before terminating her employment. *Id*. ¶ 21.

### D. Procedural History

#### 1. Moli's lawsuit

Moli originally filed this suit in King County Superior Court against Defendants King County, King County Metro Transit, and "fictitiously named Defendants" John and Jane Does 1-10, alleging a Title VII claim only. SER-6, 9–10. She filed an amended complaint in state court, alleging two statutory

10

employment discrimination claims under a failure-to-accommodate-religion theory—one under Title VII, 42 U.S.C. § 2000-2(a), the other under the WLAD. SER-38–39 ¶¶ 24–32. Neither the original complaint nor the first amended complaint contained a description of Moli's exemption request or anything of substance about her religious beliefs. Defendants removed the case to the U.S. District Court for the Western District of Washington. ER-35–45.

In federal court, the parties filed a Stipulated Motion to allow Moli to amend her complaint a second time. SER-62–64. The Stipulated Motion noted that "federal courts in Washington and elsewhere have dismissed similar failure-to-accommodate claims where the plaintiffs fail to allege the specific nature of their religious belief, how the belief conflicted with a vaccination requirement, or how the plaintiffs provided adequate notice of this belief to their employers." SER-63 ¶ 2. The District Court granted the Stipulated Motion, allowing Moli to "amend her complaint a second time to add such required factual allegations." SER-62–65 ¶ 3. Moli then filed the SAC. The SAC quotes her exemption request in full but does not add any additional information regarding her beliefs that supposedly preclude vaccination against COVID-19. ER-14–21.

### 2. The County's Motion to Dismiss

The County filed a motion to dismiss arguing that the SAC failed to allege a religious conflict with the County's vaccination requirement. SER-64–91. And

11

because her exemption request did not establish any religious-based opposition to the COVID-19 vaccines, she necessarily could not satisfy the second element of her Title VII and WLAD claims, namely that she informed the County of her religious beliefs and how those beliefs conflicted with the Executive Order. SER-81–88.

The District Court agreed and granted the motion to dismiss. ER-4–13. In its ruling, the District Court "fully credit[ed] her belief" that her body is a temple "to be cherished and protected," but found "no indication that this belief compel[led] her to reject any particular medical intervention, injection or foreign substance." ER-10–11. Because "[v]ague expressions of sincerely held Christian beliefs alone cannot serve as a blanket excuse for avoiding all unwanted employment obligations," the court held that "the complaint does not give rise to an inference that plaintiff's religion forbids receiving the COVID-19 vaccine." ER-11 (cleaned up). The District Court therefore concluded that Moli had failed to allege facts in support of the first element of her prima facie case under Title VII and the WLAD. In addition, as to the second prima facie element, the District Court determined that Moli had "failed to give her employer timely notice of a religious conflict" because her exemption request did not "identify any element of her religious belief system that conflicted with her employer's COVID-19 vaccination requirement." *Id*.

12

The District Court further denied Moli leave to amend where she had "already amended her complaint on two occasions" and "further amendment would be futile." *Id*. at 12. Specifically, the District Court determined that "Plaintiff has not identified any religious belief . . . to justify her objection to the COVID-19 vaccine" and "[e]ven if plaintiff could now identify a sincerely held religious belief that actually precludes receiving the COVID-19 vaccine, she failed to give the employer timely notice of any such belief." *Id*. Therefore she would "be unable to raise an inference of unlawful employment discrimination." *Id*. at 13. The District Court ordered that judgment be entered in favor of the County. *Id*.[13]

## V.     STANDARD OF REVIEW

This Court reviews de novo the grant of a motion to dismiss and "may affirm on any ground supported by the record." *Saloojas, Inc. v. Aetna Health of Cal., Inc.*, 80 F.4th 1011, 1014 (9th Cir. 2023). A "motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is analyzed using the plausibility pleading standards of Rule 8(a), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 [] (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 [] (2009)." *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1056–57 (9th Cir. 2023). Under *Twombly* and *Iqbal*, "[t]o survive a

---

[13] The District Court also dismissed the fictitiously named Defendants because Moli had "not identified any acts or omissions attributed to them or any legal theory under which individuals or entities other than her employer could be liable for a failure to accommodate." *Id*. Moli does not challenge this aspect of the District Court's ruling on appeal.

13

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Whether a complaint states a claim for relief "requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Further, while the court must accept as true all well-pleaded factual allegations in the pleading, it is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal may be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011).

## VI.    SUMMARY OF ARGUMENT

This Court should affirm the dismissal of Moli's claims against the County for four reasons. First, Moli's exemption request, as quoted in the SAC, did not assert a bona fide religious belief that conflicts with COVID-19 vaccination so as to establish the first element Moli's Title VII and WLAD failure-to-accommodate claims' prima facie case.

14

Second, because Moli's exemption request did not include a religious opposition to the COVID-19 vaccination requirement, Moli did not inform the County of a conflict between her religious beliefs and vaccination so as to establish the second element of her Title VII and WLAD failure-to-accommodate claims' prima facie case.

Third, to the extent Moli asserts a traditional disparate treatment claim under Title VII, such a theory is forfeited because she did not articulate it in the operative complaint nor in opposition to the County's motion to dismiss in the District Court. Moreover, even if it were not forfeited, Moli has not alleged facts plausibly supporting a traditional disparate treatment theory because the SAC did not: (1) identify a protected class of which Moli was a part; (2) allege that Moli was qualified for her position; or (3) allege that similarly situated individuals outside her protected class were treated more favorably than she.

Fourth, amendment of the SAC would be futile because Moli's own allegations revealed that she neither has a sincerely held religious belief precluding vaccination against COVID-19 nor gave the County notice of any such belief. The Court should affirm dismissal of the SAC with prejudice.

15

## VII.     ARGUMENT

**A.     The District Court Correctly Held that Moli Failed to State Title VII and WLAD Failure-to-Accommodate Claims**

In examining Moli's allegations regarding the first prima facie element, the District Court correctly held that Moli's asserted objections to COVID-19 vaccination are not religious in nature. Indeed, nothing in Moli's vague beliefs compelled her to reject any particular medical intervention, injection, or foreign substance. Consistent with the great weight of federal decisions in similar cases, the District Court rightly ruled that Moli's "body-as-temple" beliefs do not establish a religious conflict with vaccination. This Court should affirm.

**1.  The District Court applied the correct failure-to-accommodate test**

Claims under Title VII and the WLAD for failure to accommodate religion are "analyzed under a burden-shifting framework." *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023); *Kumar v. Gate Gourmet, Inc.*, 325 P.3d 193, 197 (Wash. 2014) (WLAD employs same standard as Title VII). "First, the employee must plead a prima facie case of failure to accommodate religion. Second, if the employee is successful, the employer can show that it was nonetheless justified in not accommodating the employee's religious beliefs or practices." *Bolden-Hardge*, 63 F.4th at 1222 (citing *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999)). To plead a prima facie case, the plaintiff must plausibly allege that "(1) she had a bona fide religious belief, the

16

practice of which conflicted with an employment duty; (2) she informed her employer of the belief and conflict; and (3) the employer threatened her or subjected her to discriminatory treatment, including discharge, because of her inability to fulfill the job requirements." *Sutton*, 192 F.3d at 830 (cleaned up).

In her opening brief, Moli appears to argue for the first time on appeal that the above standard was abrogated by the Supreme Court in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015). *See* Op. Br. at 17, 48 n.16. But Moli ignores the fact that, post-*Abercrombie*, this Court and other circuits have continued to apply that same test. *See*, *e.g.*, *Beuca v. Wash. State Univ.*, No. 23-35395, 2024 WL 3450989, at *1 (9th Cir. July 18, 2024); *Keene v. City & Cnty. of S.F.*, No. 22-16567, 2023 WL 3451687, at *1 (9th Cir. May 15, 2023); *Kennedy v. Bremerton Sch. Dist.*, 991 F.3d 1004, 1022 (9th Cir. 2021), *rev'd on other grounds*, 597 U.S. 507 (2022); *Tabura v. Kellogg USA*, 880 F.3d 544, 549 (10th Cir. 2018). Moli's argument is also inconsistent with her own pleadings in the District Court, where she accepted the well-established prima facie elements, both in her operative complaint and her opposition to the County's motion to dismiss. *See* ER-19; SER-99.

Moli also appears to argue that the WLAD standard differs from the Title VII standard in failure-to-accommodate cases. Op. Br. at 58–60. But the Washington Supreme Court has repeatedly recognized—including just months

17

ago—that a "prima facie claim of failure to accommodate religious practices under the WLAD" is the same as under Title VII. *Suarez v. State*, 552 P.3d 786, 795 (Wash. 2024) (citing *Kumar*, 325 P.3d at 203). Following the state supreme court's clear instruction, numerous federal district courts in Washington have done the same. *See, e.g.*, *Bartholomew v. Washington*, --- F. Supp. 3d ----, No. 3:23-cv-05209-DGE, 2024 WL 1426308, at *2 (W.D. Wash. Mar. 26, 2024) (recognizing that failure-to-accommodate-religion claims under Title VII and WLAD share the same standard); *North v. Washington*, No. 3:23-CV-05552-TMC, 2023 WL 8281609, at *2 (W.D. Wash. Nov. 30, 2023) (same). Once again, Moli's contrary argument is inconsistent with her position in the District Court, where she recognized that the WLAD "is modeled after Title VII, and . . . the analysis for religious discrimination claims under both statutes is *identical*." ER-20 (emphasis added). The Court should decline Moli's invitation to invent a new legal standard under state law.

Because Title VII and the WLAD employ the same legal standard for failure-to-accommodate-religion claims, the County addresses Moli's Title VII and WLAD claims together, and, for ease of reference, uses the phrase "Title VII" to refer to both statutes. Under that proper standard, the District Court correctly held that the SAC failed to plead the first and second elements of a Title VII failure-to-accommodate claim. That is, Moli did not plausibly allege (1) a conflict between

18

the COVID-19 vaccination requirement and her religious beliefs, or (2) that she informed the County of any such conflict.[14]

### 2. The District Court correctly held that Moli did not allege a conflict between COVID-19 vaccination and her religious beliefs

#### a. *The County is not estopped from challenging whether Moli has plausibly alleged facts to support the first prima facie element*

As an initial matter, Moli contends that the County is precluded from challenging whether she has alleged a religious belief in conflict with COVID-19 vaccination because it accepted her exemption request for the purpose of considering an accommodation. Op. Br. at 5, 14, 56. Moli cites no case that actually supports this "estoppel"-type theory. Her theory defies the basic principle

---

[14] Moli argues that the SAC "provided a short and plain statement of her claims" and "currently provides Defendants with fair notice of Ms. Moli's two claims and the grounds upon which they rest." Op. Br. at 55; *id.* at 22–23. But the District Court did not hold that Moli failed to meet the fair notice requirements of Rule 8. Rather, the District Court determined that her allegations did not plausibly allege a Title VII claim for religious discrimination under Rule 12(b)(6). ER-7–11. The two rules are different. Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" and it requires "sufficient allegations of underlying facts" "to give fair notice and enable an effective defense." *Little v. Washington*, 517 F. App'x 552, 552 (9th Cir. 2013). In contrast, "[t]o survive a motion to dismiss" under Rule 12(b)(6), a complaint "must contain sufficient factual matter" to make the claim to relief "plausible on its face." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. In other words, Rule 8(a) concerns "form" while Rule 12(b)(6) concerns "substance." *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999). As explained below, the SAC's deficiency is one of substance: while it describes the beliefs that, according to Moli, prevented her from being vaccinated against COVID-19, those very allegations do not plausibly establish a religious conflict with vaccination or that Moli informed the County of any such conflict.

19

that it is the *plaintiff's* burden to "plead a prima facie case of failure to accommodate religion" by plausibly "alleg[ing], among other things, that she holds a bona fide religious belief that conflicts with an employment requirement." *Bolden-Hardge*, 63 F.4th at 1222 (cleaned up). Accordingly, numerous courts have expressly rejected Moli's estoppel theory, holding that an employer's acceptance of an employee's asserted beliefs as religious in nature does not relieve the plaintiff of the ultimate burden to plead and prove the elements of her prima face case. *See, e.g.*, *Bartholomew v. Washington*, 693 F. Supp. 3d 1107, 1113 (W.D. Wash. Sept. 21, 2023) ("The fact that DSHS determined that Plaintiff held a sincerely held religious belief does not establish that Plaintiff has pled . . . that he held 'a bona fide religious belief, much less one that conflicted with a requirement of [ ] [his] employment.'") (quoting *Troulliet v. Gray Media Grp., Inc.*, No. CV 22-5256, 2023 WL 2894707, at *5 (E.D. La. Apr. 11, 2023)); *Buss v. PeaceHealth*, No. 6:23-CV-01128-AA, 2024 WL 3970662, at *4 (D. Or. Aug. 26, 2024) (similar); *Scafidi v. B. Braun Med., Inc.*, 713 F. Supp. 3d 1231, 1241 (M.D. Fla. 2024) (similar). This Court, too, should reject Moli's estoppel theory.

> **b. Courts must assess whether there is a conflict between a plaintiff's religious beliefs and the job requirement in question**

In examining the first element of the prima facie case, courts are not to "take plaintiff's conclusory assertions of violations of their religious beliefs at face value." *Bolden-Hardge*, 63 F.4th at 1223. Rather, courts must conduct "a threshold

inquiry into the 'religious' aspect of particular beliefs . . . to determine what is in fact based on religious belief, and what is based on secular . . . principles." *Mason v. Gen. Brown Cent. Sch. Dist.*, 851 F.2d 47, 51 (2d Cir. 1988) (citing *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972)); *see also Frazee v. Ill. Dep't of Emp. Sec.*, 489 U.S. 829, 833 (1989) (recognizing both "the difficulty of distinguishing between religious and secular convictions" and that "States are clearly entitled to assure themselves that there is an ample predicate for invoking the Free Exercise Clause"); *Johnson v. Moore*, 948 F.2d 517, 520 (9th Cir. 1991) ("While defining religious belief is often difficult, there is no evidence before this court suggesting that [prisoner plaintiff's] professed vegetarianism is rooted in his religious beliefs.") (citation omitted).

In failure-to-accommodate-religion cases, then, while courts do not generally question the *sincerity* of a plaintiff's asserted beliefs, courts routinely assess the *religiosity* of those beliefs. *See, e.g.*, *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681–83 (9th Cir. 1998) (noting that "Title VII does not protect secular preferences" and reversing district court's conclusion that plaintiff had established a "bona fide religious belief" that conflicted with job requirement); *Brown v. Children's Hosp. of Phila.*, 794 F. App'x 226, 227 (3d Cir. 2020) (per curiam) (affirming dismissal of Title VII failure-to-accommodate-religion claim where plaintiff's objection to vaccination was not religious); *Reed v. Great Lakes*

21

*Cos., Inc.*, 330 F.3d 931, 935 (7th Cir. 2003) ("[A]n employee is not permitted to redefine a purely personal preference or aversion as a religious belief."); *EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002) ("In order to satisfy this element, the plaintiff must demonstrate both that the belief or practice is religious and that it is sincerely held.").

To determine what constitutes a bona fide religious belief, the most common test applied by courts is the "*Africa* test" adopted by the U.S. Court of Appeals for the Third Circuit in *Africa v. Pennsylvania*, 662 F.2d 1025, 1032 (3d Cir. 1981). Under that test, which the court derived from the U.S. Supreme Court's conscientious objector cases, a religious belief must (1) "address[] fundamental and ultimate questions having to do with deep and imponderable matters," (2) be "comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching," and (3) be accompanied by "certain formal and external signs" of religion. *Id*. at 1032; *see generally Welsh v. United States*, 398 U.S. 333 (1970); *United States v. Seeger*, 380 U.S. 163 (1965). This Court and other various federal courts of appeals and state supreme courts have embraced the *Africa* test in various contexts. *See*, *e.g.*, *Alvarado v. City of San Jose*, 94 F.3d 1223, 1229–30 (9th Cir. 1996) (applying *Africa* test in Establishment Clause context); *Love v. Reed*, 216 F.3d 682, 687 (8th Cir. 2000) (same for Free Exercise Clause); *United States v.*

22

*Meyers*, 95 F.3d 1475, 1483–84 (10th Cir. 1996) (same); *Dettmer v. Landon*, 799 F.2d 929, 931 (4th Cir. 1986) (same); *see also Friedman v. S. Cal. Permanente Med. Grp.*, 102 Cal. App. 4th 39, 66 (2002) ("The test we apply is [the *Africa* test] which has been adopted by the Third, Eighth, Ninth, and Tenth Circuits.").[15]

In the leading pre-pandemic Title VII case on vaccination requirements, the Third Circuit applied the *Africa* test in holding that a former hospital employee's conscience-based opposition to the flu vaccine was not "religious in nature." *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 494 (3d Cir. 2017). The employee believed that if he "consented to the hospital['s] mandatory policy, he would violate his conscience as to what is right and what is wrong." *Id*. at 492. The Third Circuit held that this objection was not a religious belief because it does not "address fundamental and ultimate questions having to do with deep and imponderable matters, nor [was it] comprehensive in nature." *Id*. Rather, "he simply worries about the health effects of the flu vaccine, disbelieves the scientifically accepted view that it is harmless to most people, and wishes to avoid

---

[15] The Tenth Circuit's test differs somewhat from *Africa* in that the court "examine[s] five factors in evaluating religiosity of a belief system: ultimate ideas, metaphysical beliefs, moral or ethical system, comprehensiveness of beliefs, and accoutrements of religion." *United States v. Quaintance*, 608 F.3d 717, 720 n.1 (10th Cir. 2010) (Gorsuch, J.) (citing *United States v. Meyers*, 95 F.3d 1475, 1483 (10th Cir. 1996)). The "last factor includes ten subfactors: founder, teacher, or prophet; important writings; gathering places; keepers of knowledge; ceremonies and rituals; structure or organization; holidays; diet or fasting; appearance and clothing; and propagation." *Id.*

23

this vaccine." *Id.* Thus, the employee's opposition to the flu vaccine did not "'occupy . . . a place parallel to that filled by God in traditionally religious persons.'" *Id.* at 491 (cleaned up) (quoting *Welsh v. United States*, 398 U.S. 333, 340 (1970)).

In the COVID-19 vaccination context, hundreds of federal district courts have had to "undertake the delicate task of differentiating between what beliefs are religious and which are not." *Maggio v. Or. Health & Sci. Univ.*, No. 3:23-cv-00116-JR, 2024 WL 665991, at *6 (D. Or. Jan. 8, 2024), *R&R adopted*, 2024 WL 665089 (Feb. 16, 2024). It is well-established that "an employee's request for an exemption from a COVID-19 vaccination mandate can be denied on the ground that the employee's belief is not truly religious in nature." *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021). Accordingly, numerous courts have rejected failure-to-accommodate-religion claims because of plaintiffs' failure to establish that their opposition to vaccination was religious in nature. "The critical question," as one court put it, is whether it can be "reasonably inferred [from the plaintiff's complaint] that being vaccinated against COVID-19 violates a tenet or principle of her religious belief." *Griffin v. Mass. Dep't of Rev.*, No. 22-cv-11991-FDS, 2023 WL 4685942, at *5 (D. Mass. July 20, 2023), *appeal docketed*, No. 23-1668 (1st Cir.).

### c. *Moli has not alleged a conflict between her religion and vaccination*

Under any workable standard of religion, Moli has not alleged facts establishing that her opposition to COVID-19 vaccination is religious in nature. In her exemption request, Moli objected to the COVID-19 vaccines because "COVID vaccination is a desecration/defilement of [her] temple" and "will guarantee that [her] spirit and soul will NOT return to heaven." ER-17–18 ¶ 18. The obvious missing link in this chain of beliefs is *why* she believes "the COVID vaccination is a desecration/defilement" of her body or will prevent her "spirit and soul" from "return[ing] to heaven." *Id.* ¶ 18. But Moli says nothing about this critical foundation tying her general "I am a temple of God" belief to the COVID-19 vaccines specifically.

That omission dooms her Title VII claim for the same reason it doomed the *Fallon* plaintiff's. First, Moli's belief that "COVID vaccination is a desecration/defilement of [her] temple" does not "address fundamental and ultimate questions having to do with deep and imponderable matters." *Fallon*, 877 F.3d at 491 (quoting *Africa*, 662 F.2d at 1032). Rather, she "applies one general moral commandment (which might be paraphrased as, 'Do not harm your own body') to come to the conclusion that the [COVID-19] vaccine is morally wrong." *Id.* Second, "this one moral commandment"—that Moli is "a temple of God"—is "an 'isolated moral teaching'; by itself, it is not a comprehensive system of beliefs

25

about fundamental or ultimate matters." *Id.* (quoting *Africa*, 662 F.2d at 1032). Third, Moli's anti-vaccine beliefs "are not manifested in formal and external signs," or at least she does not allege fact suggesting any. *Id.* Thus, those beliefs "do not occupy in [her] life . . . 'a place parallel to that filled by . . . God' in traditionally religious persons." *Id.* at 490–91 (quoting *Welsh*, 398 U.S. at 340).

Consistent with *Fallon*, since the COVID-19 pandemic numerous courts have held that highly similar anti-vaccine beliefs to Moli's do not establish a conflict with vaccination. After canvassing cases, King County has identified over 30 federal district court decisions—including 11 in this Circuit alone—holding that equivalent "body-as-temple" beliefs do not do not establish a religious-based conflict with COVID-19 vaccination. *See infra* at 26–33 & nn.16–17. As one court put it, the "[c]ases dismissing [body-as-temple] claims are legion." *Chinnery v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:23cv1110 (DJN), 2024 WL 3152348, at *5 (E.D. Va. June 24, 2024), *appeal docketed*, No. 24-1697 (4th Cir.) (collecting cases); *see also Detwiler v. Mid-Columbia Med. Ctr.*, No. 3:22-cv-01306-JR, 2023 WL 7221458, at *2 (D. Or. Dec. 20, 2022) (stating "virtually every court examining the precise [body-as-temple] belief invoked by plaintiff has held that Title VII's protections do not apply.") (collecting cases).

In *Detwiler*, for example, the plaintiff asserted—based on the same biblical passage cited by Moli—her belief that "'her body is a temple of the Holy Spirit'"

26

and that "she has a religious duty to avoid defiling her temple." 2023 WL 7221458 at *1. Surveying similar recent cases, the court found this generalized belief inadequate. The court "readily accept[ed] that plaintiff 'has a bona fide religious belief that her body is a temple of the Holy Spirit.'" *Id*. at *6. However, "plaintiff's specific determination of what is harmful" (i.e., the COVID-19 nasal swab test) "was not, in this case, premised on the Bible or any other religious tenet or teaching." *Id*. The court therefore concluded that the complaint failed to state a Title VII claim.

Similarly, in *Medrano v. Kaiser Permanente*, the plaintiff asserted, again based on the same biblical passage as Moli here, her belief that "you are the temple of God" and "God has created us in His image, therefore introducing this vaccine distorts God's creation." No. 8:23-cv-02501-DOC-ADSx, 2024 WL 3383704, at *4 (C.D. Cal. July 10, 2024). Further, the plaintiff asserted that her decision to refuse the vaccine was "guided by the Holy Spirit" and because she does not feel peaceful when it comes to the vaccine, and her God is a God of peace. *Id*. The court determined that these beliefs were "fungible enough to cover anything [Plaintiff] trains it on" and amounted to a "blanket privilege that does not entail a bona fide religious belief under *Africa*." *Id*. The court dismissed the plaintiff's Title VII failure-to-accommodate-religion claim. *Id*. at *6. At least nine other

district courts within the Ninth Circuit have reached the same conclusion in similar "body-as-temple" cases.[16]

To be sure, not every federal court has agreed that such "body-as-temple" assertions fail to establish a religiously based opposition to COVID-19 vaccination. For example, in *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1010–11 (7th Cir. 2024), a divided panel concluded that one plaintiff's assertion of her "Christian belief that the body is a 'temple of the Holy Spirit' in tandem with concerns about the potentially harmful effects of the vaccine" established a sincerely held religious belief against COVID-19 vaccination so as to survive a motion to dismiss. *See also Sturgill v. Am. Red Cross*, 114 F.4th 803, 808 (6th Cir. 2024) (holding that plaintiff's statements that she prayed about the vaccine and must "honor God and the temple he gave her" sufficiently pleaded religious beliefs against vaccination); *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 902 (8th Cir. 2024) (similar).

---

[16] *See, e.g.*, *Ashcroft v. S. Cal. Permanente Med. Grp.*, No. 24-cv-35-MMA (MMP), 2024 WL 4375781, at *4 (S.D. Cal. Oct. 2, 2024); *Bowie v. Kaiser Found. Health Plan Inc.*, No. 23-cv-06546-VC, 2024 WL 3872926, at *1 (N.D. Cal. Aug. 16, 2024); *Weiss v. Permanente Med. Grp., Inc.*, No. 23-cv-03490-RS, 2024 WL 3090496, at *3 (N.D. Cal. June 21, 2024); *Riser v. St. Charles Health Sys., Inc.*, No. 6:23-cv-01720-AA, 2024 WL 2864405, *5 (D. Or. June 6, 2024); *Bohlmann v. Kaiser Found. Hosps.*, No. 3:23-cv-1322-JR, 2024 WL 2984517, at * (D. Or. May 16, 2024); *Prakash v. Or. Health & Sci. Univ.*, No. 3:23-cv-01653-IM, 2024 WL 1462336, at *2 (D. Or. Apr. 4, 2024; *Craven v. Shriners Hosps. for Children*, No. 3:22-cv-01619-IM, 2024 WL 21557, at *4 (D. Or. Jan. 2, 2024); *Nogowski v. St. Charles Med. Ctr.*, No. 6:23-cv-00027-AA, 2023 WL 7003702, at *4 (D. Or. Oct. 24, 2023); *Ruscitti v. Legacy Health*, No. 3:23-cv-00787-JR, 2023 WL 8007620, at *3 (D. Or. Sept. 27, 2023).

28

The dissenting judge in *Passarella* reasoned, however, that "without any elaboration as to why becoming vaccinated against COVID-19 would be inconsistent with treating her body as G-d's temple," what the plaintiff "articulated . . .was not a religious belief that proscribes vaccinations . . . , but rather a high-level, religiously-inspired goal; treat one's body well." 108 F.4th at 1014 (Rovner, J., dissenting). While the goal may be religious, "the implementation of that goal with respect to a compulsory vaccine . . . was secular: evaluate the provenance of a vaccine and avoid it if it is untested and unproven." *Id*. Judge Rovner likened this to "an employee who seeks a religious exemption from a requirement that he work late on Thursday evenings, on the ground that his religion calls on him to be a good father, and Thursday night is the night he and his family have chosen as 'family night'" for scheduling reasons. *Id*. While "[t]he goal is religiously-motivated—honor one's G-d and one's faith by being a good parent— . . . the rationale for not wanting to work on Thursday evening is not." *Id*.

Of course, none of the opinions of its sister circuits are binding on this Court (including *Fallon*). The County respectfully submits, however, that Fallon and Judge Rovner's dissent represents the sounder position—and the one with which

29

the vast majority of federal district courts around the country have agreed in rejecting body-as-temple beliefs in the COVID-19 context.[17]

Applying the majority view among the federal courts to Moli's complaint, it fails to establish a religiously-based objection to COVID-19 vaccination. Her exemption request described Moli's beliefs at a very high level of abstraction,

---

[17] *See supra* at 27–29 & n.16; *see also Ellison v. Inova Health Care Servs.*, 692 F. Supp. 3d 548, 558 (E.D. Va. 2023); *Matos v. Discovery Commc'n*, No. 23-CV-2218 (KMK), 2024 WL 4290674, at *9 (S.D.N.Y. Sept. 25, 2024); *Brown v. Cook Cnty. Auditor's Off.*, No. 23-cv-10452, 2024 WL 3426888, *5 (N.D. Ill. July 16, 2024); *Millwood v. Tyson Foods, Inc.*, No. 8:23-cv-6004-DCC-KDW, 2024 WL 3666446, at *8 (D.S.C. June 14, 2024); *Nelson-Godfrey v. Cook Cnty.*, No. 23 C 16893, 2024 WL 2722668, *2 (N.D. Ill. May 28, 2024); *Caruano v. Bayhealth Med. Ctr., Inc.*, No. 22-1284-RGA, 2024 WL 406438, at *4 (D. Del. Feb. 2, 2024); *Maher v. Bayhealth Med. Ctr., Inc.*, No. 22-1551-RGA, 2024 WL 406494, at *5 (D. Del. Feb. 2, 2024); *Wilson v. Bayhealth Med. Ctr.*, No. 22-1550-RGA, 2024 WL 359464, at *4 (D. Del. Jan. 31, 2024); *Hand v. Bayhealth Med. Ctr. Inc.*, No. 22-1548-RGA, 2024 WL 359245, at *5 (D. Del. Jan. 31, 2024); *Roberts v. Bayhealth Med. Ctr., Inc.*, No. 23-330-RGA, 2024 WL 359467, at *4–5 (D. Del. Jan. 31, 2024); *McDowell v. Bayhealth Med. Ctr., Inc.*, No. 22-1392-RGA, 2024 WL 278187, at *4–5 (D. Del. Jan. 25, 2024); *Guthrie-Wilson v. Cook Cnty.*, No. 1:23-cv-362, 2023 WL 8372043, *2 (N.D. Ill. Dec. 4, 2023); *McKinley v. Princeton Univ.*, No. 22-5069 (MAS) (TJB), 2023 WL 8374486, at *4 (D.N.J. Dec. 1, 2023); *Jackson v. Tyson Foods, Inc.*, No. 5:23-CV-5102, 2023 WL 9097854, at *7–8 (W.D. Ark. Nov. 27, 2023); *DiOrio v. Nat'l Educ. Ass'n*, No. 23-246 WES, 2023 WL 7300080, at *10 n.11 (D.R.I. Nov. 6, 2023); *Thornton v. Ipsen Biopharmaceuticals, Inc.*, No. 23-11171-JCB, 2023 WL 7116739, at *4 (D. Mass. Oct. 26, 2023); *Prida v. Option Care Enters., Inc.*, No. 5:23-CV-00905, 2023 WL 7003402, at *5–6 (N.D. Ohio Oct. 24, 2023); *Foshee v. Astrazeneca Pharms. LP*, No. SAG-23-00894, 2023 WL 6845425, at *1–2, *4 (D. Md. Oct. 17, 2023); *Ulrich v. Lancaster Gen. Health*, No. CV 22-4945, 2023 WL 2939585, at *4, *5 (E.D. Pa. Apr. 13, 2023); *Petermann v. Aspirus, Inc.*, No. 22-cv-332-jdp, 2023 WL 2662899, at *2 (W.D. Wis. Mar. 28, 2023); *Blackwell v. Lehigh Valley Health Network*, No. 5:22-cv-03360, 2023 WL 362392, at *4, *6 (E.D. Pa. Jan. 23, 2023).

making the sweeping assertion that "I am a temple of God" and "God has given me a choice to live eternity in heaven or to live eternity in hell after I die." ER-17 ¶ 18. Such generalized, one-size-fits-all principles are insufficient, for they are "fungible enough to cover anything [Moli] trains it on." *Medrano*, 2024 WL 3383704, at *4. Indeed, Moli did not explain *why* she believes the COVID-19 vaccines are a "desecration/defilement" of her temple—especially where she admittedly does not oppose all vaccines. To accept Moli's amorphous belief as a bona fide religious objection to an emergency public health order would afford Moli "a blanket privilege 'to make [her] own standards on matters of conduct in which society as a whole has important interests.'" *Africa*, 662 F.2d at 1031 (quoting *Yoder*, 406 U.S. at 215–16).

Moli argues that the District Court erred in questioning the "legitimacy" of her religious beliefs. Op. Br. at 24–25. This misreads the District Court's decision, which states that "the Court fully credits her belief that her body is to be cherished and protected as a reflection of and temple to her deity." ER-10–11. Instead of questioning the *legitimacy* or *reasonableness* of Moli's asserted religious beliefs—including her belief that she is "a temple of God"—the Court held only that such beliefs do not actually conflict with COVID-19 vaccination. ER-11; *see, e.g.*, *Bolden-Hardge*, 63 F.4th at 1223 ("[W]e do not interrogate the reasonableness of

31

[the plaintiff's] beliefs and instead focus our inquiry on whether she has alleged an *actual conflict*.") (emphasis added).

Moli also argues that she has plausibly alleged a religious conflict with vaccination because her exemption request "succinctly cites the Bible" and "lays out verses supporting a belief that she is a temple of God and determines the COVID-19 vaccine will defile that temple with the resulting damnation of her spirit and soul." Op. Br. at 40. But "[t]he use of religious vocabulary does not elevate a personal medical judgment to a matter of protected religion." *Cox v. Valley Health Sys.*, No. 5:23-cv-00051, 2024 WL 3236414, at *4 (W.D. Va. June 28, 2024) (cleaned up); *see also Prida*, 2023 WL 7003402, at *5 ("While [plaintiff's] request for accommodation . . . did use some religious language, including several quotes from the Bible, these attempts to couch secular preferences amongst generic religious statements do not amount to a sincerely held religious belief. . . . [Her] alleged religious belief that her body is 'God's temple' would, if allowed, grant the plaintiff carte blanche to accept or reject nearly any condition of her employment. Accordingly, courts have routinely rejected failure to accommodate claims based on such 'blanket assertions,' finding that they present

32

'isolated moral teachings' rather than sincerely held religious beliefs.") (collecting cases).[18]

For those reasons, the District Court correctly ruled that Moli's exemption request, as quoted in her complaint, does not describe an actual religious conflict with COVID-19 vaccination so as to support her failure-to-accommodate claim.

### 3. The District Court correctly ruled that Moli failed to allege facts supporting the notice element of her prima facie case

Because Moli's exemption request did not establish any religious conflict with the COVID-19 vaccines, she ipso facto cannot satisfy the second element of her Title VII claim, namely, that she *informed* the County of her religious beliefs and the conflict. *See Sutton*, 192 F.3d at 830. Thus, even if Moli could plead additional facts to show that she has some other, as yet unmentioned religious beliefs that actually do conflict with COVID-19 vaccination, it would not save her claims. That is so because, "under the second element of a prima facie case, the

---

[18] In support of her argument, Moli cites *Bartholomew*, 2024 WL 1426308, and *Kather v. Asante Health Systems*, No. 1:22-cv-01843-MC, 2023 WL 4865533 (D. Or. July 28, 2023). Op. Br. at 36–40. Neither case supports her position. In *Bartholomew*, the court dismissed the plaintiff's Title VII and WLAD claims where the plaintiff's objection to the COVID-19 vaccines was based on his belief in "glorify[ing] Him by keeping our body Holy," which is very similar to Moli's "body-as-temple" beliefs. 2024 WL 1426308, at *4–5. In *Kather*, none of the three plaintiffs whose claims survived dismissal relied on beliefs similar to Moli's body-as-temple belief. 2023 WL 4865533, at *4–5. In contrast, like Moli, all three *Kather* plaintiffs whose claims were dismissed alleged "vague expressions of sincerely held Christian beliefs," which the court correctly ruled "cannot serve as a blanket excuse for avoiding all unwanted employment obligations." *Id.* at *5.

conflict a Title VII Plaintiff alleges *must be the same conflict of which he informed his employer*.” *Craven v. Shriners Hospitals for Children*, No. 3:22-cv-01619-IM, 2024 WL 21557, at *4 & n.3 (D. Or. Jan. 2, 2024); *see also Blackwell v. Lehigh Valley Health Network*, No. 5:22-cv-03360-JMG, 2023 WL 5807840, at *8 (E.D. Pa. Sept. 7, 2023) (“[A]lthough Plaintiff’s Amended Complaint now pleads additional purported religious beliefs in opposition to nasal swab COVID-19 testing, because . . . Plaintiff failed to inform Defendant of these beliefs, these beliefs cannot form the basis of her religious discrimination claim.”). Because Moli’s exemption request—which she quoted in the SAC, *see* ER-17–18 ¶ 18—did not describe a religious conflict with COVID-19 vaccination, it was impossible for her to plausibly allege that she informed the County of any sincerely held religious belief that conflicted with the Executive Order.

Moli argues that Title VII “does not impose a notice requirement or an ‘actual knowledge’ requirement in order for an employee to adequately allege a claim” under a failure-to-accommodate theory, relying on *Abercrombie*, 575 U.S. at 772. Op. Br. at 44. Moli’s argument fails for two reasons.

First, under *Abercrombie*, a plaintiff need not have informed her employer of a conflicting religious belief only when she instead plausibly alleges that the employer acted with a *motive* to avoid having to accommodate her religious practices. *See, e.g., Bhuiyan v. PNC Bank, Nat’l Ass’n*, No. 19-14265, 2023 WL

34

2733510, at *4 (11th Cir. Mar. 31, 2023) ("[T]he Supreme Court's decision in *Abercrombie* clarified that an employer need not have 'actual knowledge' of . . . an employee's need for accommodation *if the employee can show* that his need for an accommodation was a motivating factor in the employer's adverse employment action.") (emphasis added) (cleaned up). Here, Moli alleged in the SAC that "[b]y denying [her] reasonable accommodation request, the [County] violated [her] rights" and "refused to entertain [her] request for a religious accommodation." ER-15, 19 ¶¶ 2, 29. Moli did not (and cannot) plausibly allege that the County acted with a motive to avoid having to accommodate her particular religious beliefs or practices—partly because she did not *inform* the County of any bona fide religious belief that conflicts with vaccination. *See Bhuiyan*, 2023 WL 2733510, at *4.

Second, the facts of *Abercrombie* differ critically from those here. *Abercrombie* involved an employer who refused to hire an applicant who wore a hijab during her interview. It was undisputed, then, that the employer "knew—or at least suspected—that the scarf was worn for religious reasons." *Abercrombie*, 575 U.S. at 774 n.3. Here, on the other hand, Moli was already employed by the County, which would have had no reason to suppose she had a religious objection to vaccination unless she requested an accommodation, which she did. And unless Moli explained the religious basis for her request, the County could have no way of knowing whether it stemmed from religious beliefs (which are statutorily

35

protected) or secular preferences (which are not). Thus, it "would be very strange" to conclude that an employer could discriminate against an employee on the basis of religion unless it at least has some "inkling" that the employee's objection to a work requirement was religious in nature. *Id*. at 776–78 (Alito, J., concurring).

For those reasons, *Abercrombie* does not help Moli, and the District Court correctly held that she did not plausibly allege she informed the County of any religious conflict with COVID-19 vaccination—the second prima facie element of her failure-to-accommodate claim. Her claim fails for that reason, too.

### B. Moli Did Not Plead a Traditional Disparate Treatment Claim

For the reasons explained above, Moli's failure-to-accommodate claims under Title VII and the WLAD fail as a matter of law. In her opening brief, however, Moli also appears to advance for the first time a "traditional" disparate treatment claim under Title VII. *See* Op. Br. at 16–23.[19] To sustain a "traditional"

---

[19] A "failure to accommodate religion" theory is a subset of a disparate treatment claim because Title VII does not set forth a separate failure-to-accommodate cause of action. *See, e.g., Abercrombie*, 575 U.S. at 789 (Thomas J., concurring in part) ("The Court today rightly puts to rest the notion that Title VII creates a freestanding religious-accommodation claim . . . ."). But the elements of a "traditional disparate treatment" theory—which alleges that the plaintiff's religion was a motivating factor in his termination—are distinct from a "failure-to-accommodate-disparate-treatment" theory. *See Baily v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1274 (11th Cir. 2021) (affirming summary judgment to employer on plaintiff's "religious discrimination disparate treatment claim" where plaintiff "failed to identify any adverse actions that were based on his religion, and failed to clearly explain that he still maintains a disparate treatment claim *separate from his failure to accommodate* and retaliation claims") (emphasis added).

disparate treatment claim, a plaintiff must plead facts sufficient to show that "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 656 (9th Cir. 2006). If a plaintiff establishes a prima facie case, an employer must then provide a nondiscriminatory reason for the adverse action. *See id*. Moli has not alleged a traditional disparate treatment claim.

To begin, Moli's traditional disparate treatment theory is waived because she did not assert such a theory in the SAC or at any point in the District Court. The SAC expressly asserts a Title VII claim "for Failure to Accommodate," reciting the elements of the prima facie case. ER-19. And for Moli's WLAD claim, the SAC "incorporates the facts set forth in [her] first cause of action above," i.e., her Title VII claim because the WLAD "is modeled after Title VII, and because the analysis for religious discrimination claims under both statutes is identical." ER-20 ¶ 33. In her opposition to the County's motion to dismiss, Moli argued that the SAC "plausibly pleads a prima facie case of unlawful discrimination under Title VII and the WLAD *as failure-to-accommodate claims*." SER-99 (emphasis added). Moli's opposition does not use the phrase "disparate treatment," recite the elements of a

37

traditional disparate treatment claim, or otherwise advance an argument to support such a theory. By failing to raise this theory of liability in the District Court first, Moli has forfeited it. *Van Pelt v. Nevada ex rel. Nevada Dep't of Corr.*, 637 F. App'x 307, 307 (9th Cir. 2016) (plaintiff waived disparate treatment theory by failing to raise it in district court) (citing *Walsh v. Nev. Dep't of Human Res.,* 471 F.3d 1033, 1037 (9th Cir. 2006)).

On the merits, Moli's traditional disparate treatment claim also fails. First, Moli does not identify a protected class to which she belongs. Moli states in a conclusory fashion that she "assert[ed] her protected rights as a member of a protected class," ER-18 ¶ 21, but she does not allege that her opposition to the COVID-19 vaccines reflects the tenet of any religious group of which she is a member. Rather, Moli alleges that her individual "Religious principles" "guide [her] objection to the COVID vaccination," including that "I am a temple of God," "I can not desecrate/defile myself," and "God has given me a choice to live eternity in heaven or to live eternity in hell." ER-17 ¶ 18. Courts have repeatedly dismissed disparate treatment claims against vaccination requirements "when a plaintiff's protected class was premised on a particular religious belief." *See Matthews v. Legacy Health*, No. 6:24-cv-00592-MC, 2024 WL 3970794, at *2–3 (D. Or. Aug. 26, 2024) (collecting cases). Therefore, Moli's assertions regarding her specific beliefs do not amount to an allegation that she is a member of a protected class.

38

Additionally, Moli cannot show that she was qualified for the position. She alleged in the SAC that "Executive Order ACO-8-27-EO, require[ed] all county executive employees to obtain vaccination against the CoVid-19 virus," ER-16–17 ¶ 13, she "fil[ed] a request for a religious exemption" *id*. at 17 ¶ 18, and that she "was terminated from her employment" *id*. at 18 ¶ 21. Thus, she was not qualified for the position because COVID-19 vaccination was required for her position, and she did not receive the vaccine. *See Haczynska v. Mount Sinai Health Sys., Inc.*, No. 23-CV-3091 (MKB), 2024 WL 3178639, at *11 n.15 (E.D.N.Y. June 26, 2024) (Plaintiffs "fail to allege that they were 'qualified for the position' they sought, because even as described in the Amended Complaint, receipt of the COVID-19 vaccine was a requirement for their positions while Section 2.61 was in effect.").

Finally, Moli did not allege that similarly situated individuals outside her protected class were treated more favorably, or any other facts surrounding her separation that give rise to an inference of discrimination. *See Berry*, 447 F.3d at 656. To meet Title VII's "similarly situated" requirement, the plaintiff must demonstrate that she was similar to a proposed comparator "in all material respects." *See Sheets v. City of Winslow*, 859 F. App'x 161, 162 (9th Cir. 2021). In the SAC, Moli did not even mention how anyone else subject to the same vaccination requirement was treated, let alone identify a proposed comparator who

39

was treated more favorably. Therefore, Moli has not plausibly alleged facts to support the fourth prong of a traditional disparate treatment claim.

For these reasons, any traditional disparate treatment claim Moli attempts to assert now would fail on the face of the complaint.

## C. The District Court Correctly Dismissed the SAC With Prejudice

In determining whether to allow leave to amend, courts consider "five factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). "Futility alone can justify the denial of a motion for leave to amend." *Id.*

The District Court did not err in denying leave to amend because Moli's own allegations revealed that she neither has a sincerely held religious belief precluding vaccination against COVID-19 nor gave the County notice of any such belief—both required elements of her claims. No subsequent amendment would enable Moli to overcome those deficiencies. And although Moli asked the District Court for leave to amend her complaint a third time, she did not identify any additional facts that would cure the complaint's defects—nor has she done so in this Court. SER-106; *see, e.g.*, *Shree Shiva, LLC v. City of Redding*, No. 22-15395, 2023 WL 1775650, at *1 (9th Cir. Feb. 6, 2023) (affirming dismissal with prejudice where plaintiff "has not suggested additional facts that could cure the complaint's

40

deficiencies"); *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1129 (9th Cir. 2013) (same where plaintiff "represented to the district court that he knew additional facts that could solve the deficiencies in the complaint, but counsel never proffered these facts to the court"). The District Court therefore correctly dismissed the SAC with prejudice.[20]

## VIII.    CONCLUSION

The County respectfully requests that the Court affirm the District Court.

DATED this 9th day of October, 2024.

PACIFICA LAW GROUP LLP

By: *s/Zachary J. Pekelis*
　　　Zachary J. Pekelis, WSBA No. 44557
　　　Meha Goyal, WSBA No. 56058

1191 2nd Ave., Suite 2000
Seattle, Washington 98101
(206) 245-1700
zach.pekelis@pacificalawgroup.com
meha.goyal@pacificalawgroup.com

*Attorneys for Defendants-Appellees*
*King County and King County Metro Transit*

---

[20] Alternatively, leave to amend should be denied because, as the County argued in the District Court, allowing Moli to file a third amended complaint would prejudice the County and cause undue delay. SER-91.

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Defendant-Appellants King County and King County Metro Transit represent that they are unaware of any related case pending in this Court.

By: *s/Zachary J. Pekelis*
Zachary J. Pekelis, WSBA No. 44557
Meha Goyal, WSBA No. 56058
PACIFICA LAW GROUP LLP
1191 2nd Ave., Suite 2000
Seattle, Washington 98101
(206) 245-1700
zach.pekelis@pacificalawgroup.com
meha.goyal@pacificalawgroup.co

42

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s)** ___24-3155_____

I am the attorney or self-represented party.

**This brief contains ___10,042_____ words,** including ___0_____ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** ___*s/Zachary J. Pekelis*_____ **Date** ___October 9, 2024____
*(use "*s/[typed name]*" to sign electronically-filed documents)*

**Form 8**                                                                                   *Rev. 12/01/22*

i