**Case No. 24-3155**

*In the*

# United States Court of Appeals
*for the*
# Ninth Circuit

---

FUAMATALA MOLI,
*Plaintiff-Appellant*,

v.

KING COUNTY – STATE OF WASHINGTON;
KING COUNTY METRO TRANSIT; JOHN AND JANE DOES, 1–10,
*Defendants-Appellees.*

_____

*Appeal from the United States District Court for the Western District of Washington (Seattle),*
*Case No. 2:23-cv-00823-RSL · Honorable Robert S. Lasnik, District Judge*

## APPELLANT'S REPLY BRIEF

EMILY C. MIMNAUGH
PACIFIC JUSTICE INSTITUTE
1580 Grand Point Way, Suite 33171
Reno, Nevada 89533
Telephone: (916) 857-6900
emimnaugh@pji.org

*Counsel for Appellant,*
*Fuamatala Moli*



COUNSEL PRESS INC. · (213) 680-2300

PRINTED ON RECYCLED PAPER

## TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................iii

INTRODUCTION..........................................................................1

ARGUMENT ................................................................................3

I. Ms. Moli adequately pleaded a failure-to-accommodate claim under Title VII and the WLAD...................................3

   A. The Religious Exemption Request, which Defendants granted, gave them notice of a conflict between Ms. Moli's religion and a workplace requirement................7

     1. *Religion.* Sincere, Biblically-based beliefs that a Covid-19 vaccine will defile the body as a Temple of God and condemn the believer's soul to Hell are protected as "religion" under Title VII ...............7

     2. *Conflict.* The sincere assertion that compliance with a job requirement would violate the believer's Biblically-based religion and condemn the believer's soul to Hell is a religious conflict under Title VII......................................................13

     3. *Notice.* The Religious Exemption Request informed Defendants of a religious conflict and need for accommodation under Title VII ................23

   B. This Court should follow its own precedent and should remain aligned with its sister circuits............27

II. Denying leave to amend compounded the original errors that led to finding Ms. Moli failed to state a claim.............31

i

CONCLUSION ...................................................................... 33

CERTIFICATE OF COMPLIANCE ................................................ 35

CERTIFICATE OF SERVICE ...................................................... 36

# TABLE OF AUTHORITIES

**CASES**

*Africa v. Pennsylvania,*
  662 F.2d 1025 (3d Cir. 1981) .................................... 10, *passim*

*Alvarado v. City of San Jose,*
  94 F.3d 1223 (9th Cir. 1996) ....................................................... 10

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................... 32

*Bacon v. Woodward,*
  No. 22-35611, 2024 U.S. App. LEXIS 14756
  (9th Cir. June 18, 2024) .............................................................. 14

*Bazinet v. Beth Israel Lahey Health, Inc.,*
  113 F.4th 9 (1st Cir. 2024) .............................................. 28, 29, 30

*Beuca v. Washington State Univ.,*
  No. 23-35395, 2024 U.S. App. LEXIS 17665,
  (9th Cir. July 18, 2024) ............................................................... 14

*Bolden-Hardge v. Office of Cal. State Controller,*
  63 F.4th 1215 (9th Cir. 2023) ..................................... 7, *passim*

*Bube v. Aspirus Hosp., Inc.,*
  108 F.4th 1017 (7th Cir. 2024) ..................................... 27, 29, 33

*Callahan v. Woods,*
  658 F.2d 679 (9th Cir. 1981) ....................................... 20, 21, 29

*Chinnery v. Kaiser Found. Health Plan of Mid-Atl.*
  *States, Inc.,*
  No. 1:23-cv-1110-DJN, 2024 U.S. Dist. LEXIS 110887
  (E.D. Va. June 24, 2024) ............................................................. 18

*Cox v. Valley Health Sys.*,
  No. 5:23-cv-00051-EKD, 2024 U.S. Dist. LEXIS 114491
  (W.D. Va. June 28, 2024) .............................................. 15, 16, 18

*Craven v. Shriners Hosps. for Children*,
  No. 3:22-cv-01619-IM, 2024 U.S. Dist. LEXIS 692
  (D. Or. Jan. 2, 2024) ................................................................. 30

*Curtis v. Inslee*,
  709 F.Supp.3d 1257 (W.D. Wash. 2023) ..................................... 2

*Detwiler v. Mid-Columbia Med. Ctr.*,
  No. 3:22-cv-01306-JR, 2023 U.S. Dist. LEXIS 197899
  (D. Or. Sep. 13, 2023) ............................................................ 14, 19

*Doe v. San Diego Unified Sch. Dist.*,
  19 F.4th 1173 (9th Cir. 2021) ................................... 8, 13, 14, 21

*EEOC v. Abercrombie & Fitch Stores, Inc.*
  575 U.S. 768 (2015) ..................................................... 5, *passim*

*EEOC v. Union Independiente De La Autoridad De Acueductos Y*
  *Alcantarillados De P.R.*,
  279 F.3d 49 (1st Cir. 2002) ....................................................... 12

*Ellison v. Inova Healthcare Servs.*,
  No. 1:23-cv-00132-MSN/LRV, 2023 U.S. Dist. LEXIS 124861
  (E.D. Va. July 19, 2023) ........................................................... 14

*Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*,
  877 F.3d 487 (3d Cir. 2017) ......................................... 17, 18, 28

*Finkbeiner v. Geisinger Clinic*,
  623 F.Supp.3d 458 (M.D. Pa. 2022) .......................................... 14

*Friedman v. S. Cal. Permanente Med. Grp.*,
  102 Cal.App.4th 39 (2002) ................................................. 11, 12

*Grabowski v. Ariz. Bd. of Regents,*
  69 F.4th 1110 (9th Cir. 2023) ...............................................6, 32

*Groff v. DeJoy,*
  600 U.S. 447 (2023)............................................................6, 33

*Heller v. EBB Auto Co.,*
  8 F.3d 1433 (9th Cir. 1993) ........................................... 5, 26, 32

*Keene v. City & Cnty. of San Francisco,*
  No. 22-16567, 2023 U.S. App. LEXIS 11807,
  (9th Cir. May 15, 2023)............................................... 8, *passim*

*Lucky v. Landmark Med. of Mich., P.C.,*
  103 F.4th 1241 (6th Cir. 2024) .............................. 18, 27, 29, 30

*McDowell v. Bayhealth Med. Ctr., Inc.,*
  Nos. 24-1157, 24-1248, 24-1249, 24-1250, 24-1251, 24-1252,
  24-1253, 24-1254, 2024 U.S. App. LEXIS 29065
  (3d Cir. Nov. 15, 2024)........................................... 11, 16, 28, 29

*Medrano v. Permanente,*
  No. 8:23-cv-02501-DOC-ADSx,
   2024 U.S. Dist. LEXIS 124666,
  (C.D. Cal. July 10, 2024)..................................................... 19, 20

*Muldrow v. City of St. Louis,*
  144 S. Ct. 967 (2024)..............................................................34

*Oklevueha Native Am. Church of Haw., Inc. v. Lynch,*
  828 F.3d 1012 (9th Cir. 2016).................................................15

*Passarella v. Aspirus, Inc.,*
  108 F.4th 1005 (7th Cir. 2024) .................................. 14, *passim*

*Passarella v. Aspirus, Inc.,*
  No. 3:22-cv-00287-JDP, 2023 U.S. Dist. LEXIS 40958
  (W.D. Wis. Mar. 10, 2023) ..................................... 14, 16, 18, 20

v

*Prida v. Option Care Enters.,*
No. 5:23-cv-00905, 2023 U.S. Dist. LEXIS 190298
(N.D. Ohio Oct. 24, 2023) ........................................................ 19

*Ringhofer v. Mayo Clinic, Ambulance,*
102 F.4th 894 (8th Cir. 2024) ...................................... 27, 29, 30

*Riser v. St. Charles Health Sys.,*
No. 6:23-cv-01720-AA, 2024 U.S. Dist. LEXIS 100774
(D. Or. June 6, 2024) .............................................................. 30

*Sturgill v. Am. Red Cross,*
114 F.4th 803 (6th Cir. 2024) ...................................... 28, 29, 32

*Suarez v. State,*
552 P.3d 786 (Wash. 2024) ......................................................... 4

*Swierkiewicz v. Sorema N.A.,*
534 U.S. 506 (2002)................................................................. 32

*Thomas v. Review Bd. of Ind. Emp't Sec. Div.,*
450 U.S. 707 (1981)............................................................ 7, 17

*Ulrich v. Lancaster Gen. Health,*
No. 22-4945, 2023 U.S. Dist. LEXIS 64750,
(E.D. Pa. Apr. 13, 2023) .......................................................... 14

*United States v. Seeger*
380 U.S. 163 (1965)........................................................ 8, 11, 20

*Welsh v. United States,*
398 U.S. 333 (1970)................................................. 7, 11, 20, 21

## CONSTITUTION

U.S. CONST. amend I .................................................................. 10

## STATUTES

42 U.S.C. § 2000e-2 ........................................................ 25, *passim*

42 U.S.C. § 2000e(j) ...................................................... 8, 21, 22, 34

RCW 49.60.180 (WLAD)................................................... 3, *passim*

## REGULATIONS

29 C.F.R. § 1605.1. ...................................................................7, 11

## RULES

Fed. R. Civ. P. 12(b)(6) ............................................................. 4, 32

Fed. R. Civ. P. 15(a)...................................................................31

Fed. R. Evid. 201. ........................................................................2

## OTHER SOURCES

U.S. Equal Emp. Opportunity Comm'n, Oct. 25, 2021, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (EEOC Covid Guidance), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.................................................................. 8, *passim*

vii

## INTRODUCTION

Ms. Moli timely submitted her employer's "Religious Exemption Request" form. In it, she described her religious beliefs, cited the Bible and asserted a religious conflict with receipt of a Covid-19 vaccine:

> The Religious principles that guide my objection to the COVID vaccination are as follows: God has given me a choice to live eternity in heaven or to live eternity in hell after I die. (Deuteronomy 30:15-20) There is only one true God and I am to worship him only. (James 2:19 and Revelation 14-9-10) I am a temple of God, he live in me and I can not desecrate/defile myself. (1 Corinthians 3:16-19) The COVID vaccination is a desecration/defilement of my temple and it will condemn my spirit and soul to eternity in hell after I die. My sincerely held religious beliefs conflict with King County's vaccination mandate because receiving the COVID vaccinations will guarantee that my spirit and soul will NOT return to heaven but be sent to hell for eternity.

ER-17–18.

Defendants received and granted Ms. Moli's Religious Exemption Request. Nonetheless, Defendants suggest that her beliefs lack "religiosity." Answering Br. 21. The lower court said it "fully credits her belief that her body is to be cherished and protected as a reflection of her deity," but the Religious Exemption Request fails to "identify any element of her religious belief system that conflicted with her employer's COVID-19 vaccination requirement." ER-10–11.

1

The question before this Court is whether an employee seeks an accommodation because of religion under Title VII when she asserts sincere, Biblically-based beliefs that compliance with a workplace requirement will condemn her soul to an eternity in Hell.

While this case arises in the context of a Covid-19 vaccine mandate, the appeal does not turn on what one thinks about the wisdom of mandates or the efficacy of measures taken to combat the Covid-19 pandemic.[1] Rather, at its core, this appeal focuses on (1) protecting the broad scope of "religion" recognized under Title VII and (2) preventing employees from being forced to prove more than the law requires so that the courthouse doors remain open to those seeking legal redress for unlawful discrimination.

---

[1] Defendants seek to supplement the record on appeal with vaguely described "judicially noticeable facts." Answering Br. 4. This seems to be in reference to their opening ten footnotes and corresponding assertions. Answering Br. 4-8 n.1-10. Despite twice conceding that these factual allegations "are not necessary" for the issue presented, SER-124–25, Defendants renew a request previously denied by the lower court, which took notice only of the vaccine mandate at issue, *compare* ER-6 n.2, *with* SER-74–77 n.1-10, and also denied in *Curtis v. Inslee*, 709 F.Supp.3d 1257, 1264-65 (W.D. Wash. 2023) (taking judicial notice only of the approval date for the Pfizer-BioNTech vaccine). Defendants' request remains inconsistent with Fed. R. Evid. 201 and should again be denied. SER-104–05.

## ARGUMENT

This Reply addresses Defendants' arguments that: (I) "The District Court Correctly Held that Moli Failed to State Title VII and WLAD Failure-to-Accommodate Claims," Answering Br. 16-36, and that (II) "The District Court Correctly Dismissed the SAC with Prejudice." Answering Br. 40-41. Defendants also discuss several arguments not raised in the Opening Brief, including a "traditional" disparate treatment theory, Answering Br. 36-40, "abrogation," Answering Br. 17-18, and "estoppel," Answering Br. 19-20. The latter two items are addressed in Part I.

## I. Ms. Moli adequately pleaded a failure-to-accommodate claim under Title VII and the WLAD.

A plain reading of Ms. Moli's Religious Exemption Request resolves this appeal in her favor. In it, she sought accommodation for a conflict between her bona fide religious beliefs and a workplace requirement because she holds religious beliefs that if she receives a Covid-19 vaccine her temple of God will be defiled and she will suffer eternal damnation. ER-17–18. *Infra* Section I.A.

The crux of Defendants' position is that the Religious Exemption Request, granted by Defendants and quoted in the operative complaint

3

("Complaint"), is defective. It does not, they argue, assert religious beliefs that conflict with receipt of a Covid-19 vaccine. Answering Br. 14; ER-12–13. Based on this failing, Defendants reason that Ms. Moli cannot establish the first element of a prima facie failure-to-accommodate claim (no religious conflict). They further reason that the original sin of the defective Religious Exemption Request means she "ipso facto" cannot establish the second element of a prima facie failure-to-accommodate claim because she did not inform her employer of a religious conflict (no notice). Answering Br. 33.

Before addressing the significant disagreement between Ms. Moli and Defendants about the pleading requirements for a failure-to-accommodate claim and Fed. R. Civ. P. 12(b)(6)—*infra* Section I.A.1 (religion), Section I.A.2 (conflict), Section I.A.3 (notice)— two points of agreement emerge.

First, Ms. Moli agrees the Washington Supreme Court has recently confirmed that the WLAD prima facie elements for a disparate treatment, failure-to-accommodate claim still track those of Title VII. *Suarez v. State*, 552 P.3d 786, 795 (Wash. 2024); Answering Br. 18. This

Reply will thus use "Title VII" to reference both the federal claim and the state claim in the operative Complaint.

Second, Ms. Moli agrees that the prima facie elements for a disparate treatment, failure-to-accommodate claim require that the employee (1) had a bona fide religious belief, the practice or observance of which conflicted with an employment duty; (2) informed her employer of the belief and conflict; and (3) was subjected to discriminatory treatment, including discharge, because of her inability to fulfill her job requirements. *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993); Answering Br. 16-17.

Ms. Moli does not agree, however, that her appeal requires or suggests that these prima facie elements were "abrogated" by the Supreme Court in *EEOC v. Abercrombie & Fitch Stores, Inc.,* 575 U.S. 768 (2015). Answering Br. 17. This appeal argues that the District Court, at Defendants' urging, applied these elements incorrectly, and part of that error occurred by adding an "actual knowledge" requirement to the second prima facie element (notice), contrary to the text of Title VII and *Abercrombie. Compare* Opening Br. 1, 5, 12-14, 19,

5

42-52, 56, 57, 60-62, *and* ER-8 n.4, *and* SER-103, *with* Answering Br. 16-19, *and* ER-12–13.

This Court directly observed that "Congress did not add a knowledge requirement to the intentional-discrimination provisions in Title VII." *Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1118 (9th Cir. 2023) (citing *Abercrombie,* 575 U.S. at 768). The prima facie elements of a failure-to-accommodate claim stem from "the 'disparate treatment' (or 'intentional discrimination') provision" of Title VII. *Abercrombie,* 575 U.S. at 773; *Groff v. DeJoy,* 600 U.S. 447, 457 (2023). It is improper to backdoor a knowledge requirement into the second prima facie element (notice), and this appeal specifically objects to the imposition of such a requirement for a failure-to-accommodate claim. *Infra* Section I.A.3.

The Complaint uses the Religious Exemption Request and alleges sufficient facts that, accepted as true, enable the court to draw a reasonable inference that Defendants violated Title VII: Ms. Moli informed Defendants that receiving a Covid-19 vaccine would defile her body as a temple of God and condemn her soul to Hell— sincerely held religious beliefs which conflicted with a workplace requirement—and

6

instead of offering her any reasonable accommodation, they terminated her. ER-17–18.

### A. The Religious Exemption Request, which Defendants granted, gave them notice of a conflict between Ms. Moli's religion and a workplace requirement.

The key disagreement between the parties is whether Ms. Moli "has adequately pleaded a conflict between her job requirements and religious beliefs." *Bolden-Hardge v. Office of Cal. State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023); Answering Br. 25, 31, 33.

The "burden to allege a conflict with religious beliefs is fairly minimal." *Bolden-Hardge,* 63 F.4th at 1223 (citing *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715 (1981)). Here, Ms. Moli adequately alleged (1) religious beliefs, (2) a conflict between those religious beliefs and receipt of a Covid-19 vaccine, and (3) notice to her employer of the religious conflict.

### 1. *Religion.* Sincere, Biblically-based beliefs that a Covid-19 vaccine will defile the body as a Temple of God and condemn the believer's soul to Hell are protected as "religion" under Title VII.

The definition of "religion" is so broad under Title VII that in "most cases whether or not a practice or belief is religious is not at issue." 29 C.F.R. § 1605.1 (citing *Welsh v. United States*, 398 U.S. 333 (1970);

7

*United States v. Seeger*, 380 U.S. 163 (1965); 42 U.S.C. § 2000e(j)). This Court stated, absent undue hardship, that "a request for an exemption from a COVID-19 vaccination mandate can be denied on the ground that the employee's belief is not [1] truly religious in nature or is [2] not sincerely held." *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021) (citing *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, at L.2 to L.3, U.S. Equal Emp. Opportunity Comm'n ("EEOC") (Oct. 25, 2021), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L ("EEOC Covid Guidance")).

Ms. Moli's sincerity has not been directly challenged. The District Court "fully credits" the statements in Ms. Moli's Religious Exemption Request as sincere, ER-10–11. Defendants concede that "courts do not generally question the *sincerity* of a plaintiff's asserted beliefs," Answering Br. 21. Further, this Court has confirmed that, even in the Covid-19 vaccine mandate context, the "sincerity of an employee's stated religious belief is usually not in dispute and is generally presumed or easily established." *Keene v. City & Cty. of San Francisco,* No. 22-16567, 2023 U.S. App. LEXIS 11807, at *5 (9th Cir. May 15,

8

2023). Defendants thus do not appear to pursue a direct attack on sincerity at the pleadings stage.

But as to the religious nature of Ms. Moli's beliefs, Defendants encourage scrutiny because they claim that courts "routinely assess the *religiosity* of those beliefs." Answering Br. 21. This Court has stated that a "bona fide religious belief is one that is 'sincerely held.'" *Keene*, 2023 U.S. App. LEXIS 11807, at *3 (quoting EEOC, EEOC-CVG-2021-3, Section 12: Religious Discrimination, § 12-I(A)(2) (Jan. 15, 2021) ("EEOC Guidance")). Defendants do not engage with *Keene* or the EEOC Guidance.

The District Court quoted the EEOC Covid Guidance for the proposition that a purportedly religious belief may still be denied Title VII protection when it is "*purely* based on social, political, or economic views or personal preferences, or any other nonreligious concern," ER-9 (quoting EEOC Covid Guidance, at L.2 to L.3) (emphasis added), but Defendants also do not engage with the EEOC Covid Guidance.

Ms. Moli has repeatedly asked how a Biblically-based belief in eternal damnation can be classified as a *purely* nonreligious belief. Opening Br. 21, 31, 60. Defendants do not directly answer this question.

9

Instead, they change the question by focusing on the Third Circuit and *Africa.* Answering Br. 22 (citing *Africa v. Pennsylvania,* 662 F.2d 1025 (3d Cir. 1981)). *Africa,* a First Amendment case, adopts the "definition by analogy process" by using three useful indicia "to determine the existence of a religion" in the context of a "non-theistic" and "non-traditional" religion. 662 F.2d at 1032. Ms. Moli's religion, however, is clearly theistic and relies upon a traditional sacred source, the Bible. When Defendants cite the only case from this Court to reference *Africa* in the past thirty years, Answering Br. 22 (citing *Alvarado v. City of San Jose*, 94 F.3d 1223, 1229-30 (9th Cir. 1996)), it is an Establishment Clause case asking if a sculpture of the Plumed Serpent, Quetzalcoatl, is "an unconstitutional promotion of religion." *Alvarado*, 94 F.3d at 1226. Even in the context of the Establishment Clause, this Court relayed "cautioning" that *Africa* provides only guidelines that "should not be regarded as a final 'test' for religion." *Id.* at 1229 n.3. This single application of *Africa,* accompanied by an explicit warning about its limitations, does not mean this Court has "embraced" *Africa* for its Establishment Clause analysis, much less for Title VII. *Contra.* Answering Br. 22.

10

Defendants do not seem to suggest applying *Africa* because there is confusion about whether faiths based upon the Bible can be identified as religion. The District Court did not cite to *Africa*. ER-4–13. But Defendants look to *Africa* for reasons made plain by *Friedman,* the California state court decision they cite. Answering Br. 23 (quoting *Friedman v. S. Cal. Permanente Med. Grp.*, 102 Cal.App.4th 39, 66 (2002)). *Friedman* states that the "indicia of religion" guidelines from *Africa* "moved away from the expansive definition of religion in the early conscientious objector cases, *Seeger* and *Welsh*, to a **more narrow test**." *Id.* (emphasis added). *Africa*, unlike *Seeger* and *Welsh,* uses a notably narrow definition of "religion." The reason *Africa* may appeal to Defendants is the reason it is a poor fit for "religion" under Title VII, which includes *all aspects* of religious belief, practice and observance. *See* 29 C.F.R. § 1605.1; *see also McDowell v. Bayhealth Med. Ctr., Inc.*, Nos. 24-1157, 24-1248, 24-1249, 24-1250, 24-1251, 24-1252, 24-1253, 24-1254, 2024 U.S. App. LEXIS 29065, at *8 n.1 (3d Cir. Nov. 15, 2024) (Matey, J., dissenting).

*Friedman* further acknowledges that federal courts have only applied *Africa* "[o]ther than in the title VII context." 102 Cal.App.4th at 66. This Court has never applied *Africa* to Title VII.

Defendants also argue they are "not estopped" from challenging whether Ms. Moli "plausibly alleged facts to support the first prima facie element." Answering Br. 19. But the Opening Brief does not argue this generally or with regard to the first prima facie element. Answering Br. 19. Rather, Ms. Moli takes the position that by alleging Defendants accepted and granted her Religious Exemption Request, she satisfies the second prima facie element (notice). *Infra* Section I.A.3.

Defendants do not directly answer the question of how Ms. Moli's beliefs are entirely nonreligious, but they also do not directly deny the religiosity of her stated beliefs. *See* Answering Br. 19-24. Even when they cite an opinion from the First Circuit for support, that same case opines that unless the accommodation request is a "*purely* personal preference," then "Title VII's capacious definition of 'religion'… leaves little room for a party to challenge the religious nature of an employee's professed beliefs." Answering Br. 22 (quoting *EEOC v. Union*

12

*Independiente De La Autoridad De Acueductos Y Alcantarillados De P.R.*, 279 F.3d 49, 56 (1st Cir. 2002)).

Defendants are thus unable to assert directly that Ms. Moli's beliefs are not (1) actually religious in nature or (2) sincerely held. *Compare San Diego Unified Sch. Dist.,* 19 F.4th at 1180, *with* Answering Br. 19-24. So, Defendants choose door number three, proposing that while Ms. Moli has religion and sincerity, she lacks "a conflict between her religion and vaccination." Answering Br. 25.

> **2.** *Conflict.* **The sincere assertion that compliance with a job requirement would violate the believer's Biblically-based religion and condemn the believer's soul to Hell is a religious conflict under Title VII**.

To argue Ms. Moli failed to allege the second prima facie element, Defendants quote *Bolden-Hardge*: "[W]e do not interrogate the reasonableness of [the plaintiff's] belief and instead focus our inquiry on whether she has alleged an "*actual conflict*." Answering Br. 31-32 (quoting *Bolden-Hardge,* 63 F.4th at 1223). But, aside from this one quote, Defendants argue an alleged lack of conflict without focusing on

13

any Covid-19 mandate decision from this Court[2] or citing any other

decision from this Court. *See* Answering Br. 25-33.

Defendants instead provide two footnotes containing string citations

to 30 district court cases—most are out-of-circuit and none have

explanatory parentheticals.[3] Answering Br. 28 n.16, 30 n.17. As

discussed later, Defendants' attempt at "canvassing cases" is self-

---

[2] *See, e.g. Beuca v. Washington State Univ.,* No. 23-35395, 2024 U.S. App. LEXIS 17665 (9th Cir. July 18, 2024); *Bacon v. Woodward*, No. 22-35611, 2024 U.S. App. LEXIS 14756 (9th Cir. June 18, 2024); *Keene,* 2023 U.S. App. LEXIS 11807; *San Diego Unified Sch. Dist.,* 19 F.4th 1173.

[3] Defendants' citations to in-circuit district court cases merit closer scrutiny, too. For example, they describe *Detwiler v. Mid-Columbia Med. Ctr.* as "collecting cases," but omit critical details: The collection consists of only four out-of-circuit district court cases, including one that was reversed months before the Answering Brief. *See* Answering Br. 26 (citing "*Detwiler v. Mid-Columbia Med. Ctr.*, No. 3:22-cv-01306-JR, 2023 WL 7221458, at *[5, (D. Or. Sep. 13, 2023)] [page and date citation corrected] [2023 U.S. Dist. LEXIS 197899, at *13-14, *appeal docketed,* No. 23-3710 (9th Cir.)]").  The collected cases are (1) *Passarella v. Aspirus, Inc.*, No. 3:22-cv-00287-JDP, 2023 U.S. Dist. LEXIS 40958 (W.D. Wis. Mar. 10, 2023), *rev'd* 108 F.4th 1005 (7th Cir. 2024); (2) *Ellison v. Inova Healthcare Servs.*, No. 1:23-cv-00132-MSN/LRV, 2023 U.S. Dist. LEXIS 124861 (E.D. Va. July 19, 2023); (3) *Ulrich v. Lancaster Gen. Health*, No. 22-4945, 2023 U.S. Dist. LEXIS 64750, (E.D. Pa. Apr. 13, 2023); (4) *Finkbeiner v. Geisinger Clinic*, 623 F.Supp.3d 458 (M.D. Pa. 2022). *Ellison* also relied on the lower court's analysis of religious beliefs in *Passarella* before its reversal by the Seventh Circuit. 2023 U.S. Dist. LEXIS 124861, at *12. *Infra* Section I.B.

14

defeating because it paints their position into a profoundly unflattering legal landscape. Answering Br. 26; *infra* Section I.B.

Where Defendants discuss specific district court cases to argue the absence of an actual conflict, these arguments are addressed here with case law from this Court.

*Bolden-Hardge* is particularly instructive because this Court provided *Oklevueha* as a specific example of a case lacking an actual conflict. 63 F.4th at 1223 (citing *Oklevueha Native Am. Church of Haw., Inc. v. Lynch*, 828 F.3d 1012, 1016-17 (9th Cir. 2016)). In *Oklevueha,* no conflict existed because cannabis was not required for religious ceremonies. *Id.* Here, in stark contrast, Ms. Moli faces a direct conflict: She was required to receive a Covid-19 injection that she believes will condemn her spirit and soul to Hell. ER-17–18.

Defendants brush aside her alleged religious conflict of "resulting damnation," Answering Br. 32 (quoting Opening Br. 40), as no more than the "use of a **religious vocabulary**." Answering Br. 32 (quoting *Cox v. Valley Health Sys.*, No. 5:23-cv-00051-EKD, 2024 U.S. Dist.

15

LEXIS 114491, at \*12 (W.D. Va. June 28, 2024)) (emphasis added).[4]

Defendants might disregard her stated religious conflict as insincere,

but this does not mean Ms. Moli failed to allege a religious conflict.

"Concerns that [a plaintiff's] beliefs are insincere or disingenuous attack

the merits, not the sufficiency of the pleadings." *McDowell,* 2024 U.S.

App. LEXIS 29065, at \*10 (Matey, J., dissenting). But Defendants press

forward with this type of attack:

> The obvious missing link in this chain of beliefs is *why* she
> believes "the COVID vaccination is a desecration/defilement"
> of her body or will prevent her "spirit and soul" from
> "return[ing]" to heaven.

Answering Br. 25 (quoting ER-17–18). This argument reveals

Defendants' true position: Ms. Moli's religious beliefs and alleged

conflict do not appear to be reasonable in their view, so her conflict

must actually derive from some other nonreligious source. Of course,

"religious beliefs need not be acceptable, logical, consistent, or

---

[4] The "religious vocabulary" descriptor quoted by Defendants and attributed to *Cox* is actually a quote from the lower court opinion in *Passarella,* a case reversed by the Seventh Circuit months prior to the Answering Brief. *Compare Cox,* 2024 U.S. Dist. LEXIS 114491, at \*12 (quoting *Passarella*, 2023 U.S. Dist. LEXIS 40958, at \*14, *rev'd* 108 F.4th 1005 (7th Cir. 2024)), *with* Answering Br. 28-29 (quoting *Cox,* 2024 U.S. Dist. LEXIS 114491, at \*12).

comprehensible to others." *Keene,* 2023 U.S. App. LEXIS 11807, at \*5

(quoting *Thomas,* 450 U.S. at 714). Defendants nonetheless press this

objection that she lacks a sincere religious conflict and her objection

must have an alternate, nonreligious source.

To do this, Defendants do not address Ms. Moli's stated religious

beliefs, but **rewrite** her beliefs so as to force them into *Fallon,* a flu

vaccine case from the Third Circuit:

> [Ms. Moli] applies one general moral commandment (which
> might be **paraphrased** as, "Do not harm your own body") to
> come to the conclusion that the [COVID-19] vaccine is
> morally wrong."

Answering Br. 25 (quoting *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.,*

877 F.3d 487, 494 (3d Cir. 2017)) (emphasis added). In this reimagining

of Ms. Moli's beliefs, Defendants strip away every religious reference:

her soul, her spirit, Heaven, Hell, eternity, God, worship, the Bible, the

temple, Deuteronomy, Revelation, 1 Corinthians and James. *Compare*

Answering Br. 25, *with* ER-17–18. Having expunged her religious

beliefs, Defendants rebrand her beliefs as nothing more than "anti-

vaccine beliefs." Answering Br. 26. Defendants argue these anti-vaccine

beliefs are actually "highly similar" to the medical beliefs presented in

17

four out-of-circuit district court cases—*Prida*,[5] *Cox*,[6] *Chinnery*[7] and

*Fallon*[8]—they cite. Answering Br. 25-26, 32-33. Ms. Moli's Religious

Exemption Request does not consist of anti-vaccine, medically-focused

objections, so she can likewise distinguish the two in-circuit district

---

[5] *Prida v. Option Care Enters.,* No. 5:23-cv-00905, 2023 U.S. Dist. LEXIS 190298, at *4, *14 (N.D. Ohio Oct. 24, 2023), *appeal docketed,* No. 23-3936 (6th Cir. argued Oct. 30, 2024) (finding Covid-19 testing objections focused on "natural rights and bodily autonomy" with citations to the Nuremberg Code against forced medical treatments not to qualify as religious beliefs). *Prida* also predates *Lucky v. Landmark Med. of Mich., P.C.*, 103 F.4th 1241 (6th Cir. 2024). *Infra* Section I.B.
[6] 2024 U.S. Dist. LEXIS 114491, at *4-5, *14 (finding Covid-19 vaccine objections focused on "personal medical judgment," the "CDC's own vaccine injury reporting" and opposition to a "culture of doctor knows best" not to qualify as religious beliefs). *Cox* also relied on the lower court opinion subsequently reversed by the Seventh Circuit in *Passarella. Id.* at *12 (quoting *Passarella*, 2023 U.S. Dist. LEXIS 40958, at *14, *rev'd* 108 F.4th 1005 (7th Cir. 2024)).
[7] *Chinnery v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.,* No. 1:23-cv-1110-DJN, 2024 U.S. Dist. LEXIS 110887, at *3-5, *13-14 (E.D. Va. June 24, 2024), *appeal docketed*, No. 24-1110 (4th Cir., July 26, 2024) (finding Covid-19 vaccine objections focused on eschewing "any foreign substances" with refusals to answer any employer follow-up questions not to qualify as religious beliefs). Like *Cox,* the district court in *Chinnery* relied on the lower court opinion subsequently reversed by the Seventh Circuit in *Passarella. Id.* at *14 n.6 (quoting *Passarella,* 2023 U.S. Dist. LEXIS 40958, at *6, *13, *rev'd* 108 F.4th 1005 (7th Cir. 2024)).
[8] 877 F.3d at 492 (finding influenza vaccine objections focused on not doing more harm than good to one's body not to qualify as religious beliefs).

court cases—*Detwiler*[9] and *Medrano*[10]—quoted by Defendants. Answering Br. 26-28.

Defendants rewrite the Religious Exemption Request and shoehorn Ms. Moli's beliefs into the foregoing line of nonprecedential cases in a misguided effort to ferret out a nonreligious missing link that disproves the existence of an actual religious conflict. Answering Br. 25, 31-32. This effort fails for at least three reasons.

First, the effort to expose a missing link is an effort to discredit Ms. Moli's religious reasonableness, which is not an inquiry properly before this Court. *Bolden-Hardge,* 63 F.4th at 1223. Ms. Moli, having applied the religious principles of her belief system to interpret Scripture, sincerely believes that receipt of a Covid-19 injection would prevent her spirit and soul from returning to Heaven. ER-17–18. This is a religious conflict. This religious conviction, born of revelation from the Holy

---

[9] *Detwiler,* 2023 U.S. Dist. LEXIS 197899, at *16 (finding objections to Covid-19 testing and ethylene oxide based on the employee's "research-based scientific/medical judgments" not to qualify as religious beliefs).
[10] *Medrano v. Permanente*, No. 8:23-cv-02501-DOC-ADSx, 2024 U.S. Dist. LEXIS 124666, at *8 (C.D. Cal. July 10, 2024)*, appeal docketed,* No. 24-6278 (9th Cir.) (finding objections to Covid-19 vaccination based on the employee's concerns about "the severity of the side effects" focused on "safety" not to qualify as religious beliefs).

19

Spirit, led her to sacrifice her livelihood rather than face eternal damnation. Opening Br. 55; ER-17–18 (citing Rev. 14:9-10). These beliefs surely are, "in [her] own scheme of things, religious," *Seeger,* 380 U.S. at 185; *Welsh,* 398 U.S. at 340; *contra* Answering Br. 25-26.

"Applying [Title VII's] statutory language necessarily requires an exercise of judgment: the standard is not amenable to formulaic resolution like solving a math equation." *Passarella v. Aspirus, Inc.,* 108 F.4th 1005, 1007 (7th Cir. 2024). Additional information may further detail why Ms. Moli believes she has a religious conflict with Covid-19 vaccination, but so long as "one's faith is religiously based at the time it is asserted," it can be recognized as such regardless of "whether that faith derived from revelation, study, upbringing, gradual evolution, or some source that appears entirely incomprehensible." *Callahan v. Woods*, 658 F.2d 679, 687 (9th Cir. 1981). The Religious Exemption Request presents a conflict based on religious beliefs by its own terms.

Second, even if Ms. Moli's beliefs incorporated elements similar to those in *Medrano* and *Detwiler,* this would not negate their religious character. The EEOC Covid Guidance, cited by this Court, explicitly protects beliefs that incorporate both religious and nonreligious reasons

20

("overlap between a religious and political view does not place it outside the scope of Title VII's religious protections, as long as the view is part of a comprehensive religious belief system and is not simply an isolated teaching"). *San Diego Unified Sch. Dist.,* 19 F.4th at 1180 (citing EEOC Covid Guidance, at L.2). Defendants' quest to identify a "fatal" secular belief is futile, Answering Br. 25, because even if they sniff out a secular belief, they cannot snuff out a religious belief. *Callahan,* 658 F.2d at 684. Religious beliefs need not exist in a sterile vacuum in order to merit Title VII protection. Religious-based beliefs that overlap with secular-based beliefs are protected so as to encompass "all aspects" of religion. 42 U.S.C. § 2000e(j).

Third, Defendants present a parade of horribles, warning six times about a "blanket" privilege for allegedly religious beliefs. Answering Br. 2, 12, 27, 31-33. They conjure images of secular preferences being converted into sacred protections and transforming Thursday "family night" into a divine get out of work card. Answering Br. 29-30 (quoting *Passarella,* 108 F.4th at 1014 (Rovner, J., dissenting)).

It is true that Title VII draws an exceptionally wide circle of protection around "all aspects of religious observance and practice, as

21

well as belief." 42 U.S.C. §2000e(j). It is also true that, as recognized by the Supreme Court, Title VII uses intentionally broad language to address unlawful employment practices, broad even as compared to other antidiscrimination statutes. *Abercrombie,* 575 U.S. at 772-73. But concern about the scope of Title VII does not permit Defendants to reimagine, reduce or rewrite Ms. Moli's beliefs.

Title VII already provides guardrails against the blanket privilege decried by Defendants. One established limiting principle that serves as a bona fide backstop is sincerity. *Keene,* 2023 U.S. App. LEXIS 11807, at *5-6. This limiting principle is not merely theoretical, and it has practical applications before the pleadings stage. For example, when reviewing Ms. Moli's Religious Exemption Request form, Defendants could have requested more information if they had "an objective basis for questioning either the religious nature or the sincerity of a particular belief, practice, or observance." EEOC Covid Guidance, at K.12.

This limiting principle remains effective after the pleadings stage as well. Defendants, "like any employer," retain the opportunity "to

22

develop evidence that the beliefs in question are not 'sincere' or even 'religious.'" *Passarella,* 108 F.4th at 1005.

This established process may not satisfy employers facing "thousands" of requests for religious accommodation in the wake of an "unprecedented" pandemic with vaccine mandates "around the country." Answering Br. 1. Yet this Court has noted that when a believer "is not alone in her stated convictions," this actually will "support the notion that [the] beliefs reflect 'an honest conviction.'" *Bolden-Hardge,* 63 F.4th at 1223 n.5. *Infra* Section I.B. At this stage, Ms. Moli has clearly asserted an actual conflict because she sincerely believes receipt of a Covid-19 vaccine would defile her temple of God and result in the loss of Heaven and an eternity in Hell. ER-17–18. Neither her beliefs nor the conflict she faced can be described as purely nonreligious. *Compare* ER-9, *with* EEOC Covid Guidance, at L.2.

### 3. *Notice.* The Religious Exemption Request informed Defendants of a religious conflict and need for accommodation under Title VII.

Ms. Moli not only informed Defendants of the conflict between her sincerely held religious beliefs and Covid-19 vaccination, but she did so

23

by timely submitting their Religious Exemption Request form, which they received and granted. ER-17–18.

Having granted Ms. Moli's Religious Exemption Request, it is patently implausible for Defendants to claim they lacked even "some 'inkling' that the employee's objection to a work requirement was religious in nature." Answering Br. 36 (quoting *Abercrombie,* 575 U.S. at 776-78 (Alito, J., concurring)).

Defendants' attempt to distinguish *Abercrombie* only helps establish Ms. Moli's case. They acknowledge that in *Abercrombie* "the employer knew—or at least suspected—that the scarf was worn for religious reasons," Answering Br. 35 (quoting *Abercrombie*, 575 U.S. at 774 n.3). Then they admit that, since Ms. Moli's accommodation need was not visible like a headscarf, they "would have had no reason to suppose she had a religious objection to vaccination unless she requested an accommodation, **which she did**." Answering Br. 35 (emphasis added).

Defendants further concede that after receiving Ms. Moli's Religious Exemption Request, they "did not question her assertion that she had a sincere religious belief precluding vaccination against COVID-19." Answering Br. 10. But, after granting the Religious Exemption Request

24

Ms. Moli submitted on their employer-provided form, Defendants maintain "they could have no way of knowing whether it stemmed from religious beliefs." Answering Br. 35-36. "That would be very strange." *Abercrombie,* 575 U.S. at 777 (Alito, J., concurring).

Even if Defendants could somehow establish that they had "no way of **knowing**" about Ms. Moli's religious conflict based upon the Religious Exemption Request, this would not change the legal outcome. Answering Br. 35 (emphasis added). As the Supreme Court made clear: "It is significant that §2000e-2(a)(1) [the disparate-treatment provision] does not impose a knowledge requirement." *Abercrombie,* 575 U.S. at 773. A failure-to-accommodate claim is a type of disparate treatment claim. *Id.* Because a disparate treatment claim does not impose a knowledge requirement, *id.,* the second prima facie element (notice) of a failure-to-accommodate claim cannot impose a knowledge requirement either. *Heller,* 8 F.3d at 1438.

In response, Defendants argue the allegations also cannot show they "acted with a motive to avoid having to accommodate [Ms. Moli's] particular religious beliefs." Answering Br. 35. But "an employer who acts with the motive of avoiding accommodation may violate Title VII

25

even if he has no more than an unsubstantiated suspicion that accommodation would be needed." *Abercrombie,* 575 U.S. at 773. Ms. Moli alleges a clear sequence of events: After Defendants granted her Religious Exemption Request, they promptly denied her a meaningful interactive process and a reasonable accommodation. Instead of considering alternative accommodations, they terminated her due to her unvaccinated status. ER-17–19. These allegations support a reasonable inference that her employer acted with a motive to avoid accommodation.

The District Court erred by grafting additional requirements — timely notice with actual knowledge—onto the notice element. No such knowledge-based requirement exists in order for an employee to inform her employer that she is seeking accommodation because of religion under Title VII. *Compare Abercrombie,* 575 U.S. at 773, *with* ER-12–13. The District Court incorrectly applied the notice requirement.

Ms. Moli satisfied the second prima facie element of her failure-to-accommodate claim by informing Defendants, using their Religious Exemption Request form, of the conflict between her religious beliefs and a workplace requirement. *Heller*, 8 F.3d at 1438.

26

### B. This Court should follow its own precedent and should remain aligned with its sister circuits.

Defendants encourage this Court to adopt the "majority view among the federal courts," Answering Br. 30, but that very consensus compels reversal. "To be sure," Defendants caveat, "not every federal court has agreed that such 'body-as-temple' assertions fail to establish a religiously based opposition to COVID-19 vaccination." *Id*. 28. This was an understatement both then and now.

To be sure, **every sister circuit** to consider these questions **reversed** similar dismissals at the time of the Answering Brief: The First, Sixth, Seventh and Eighth Circuits have repeatedly and directly reversed dismissals of Title VII Covid-19 mandate cases where lower courts found religious beliefs inadequately pleaded. *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 899-902 (8th Cir. 2024) (reversing the lower court's dismissal of plaintiffs for failing to plausibly plead religious beliefs that conflict with Covid-19 vaccination or testing under Title VII, filed May 24, 2024); *Lucky v. Landmark Med. of Mich., P.C.*, 103 F.4th 1241, 1243-44 (6th Cir. 2024) (same, decided June 12, 2024); *Passarella*, 108 F.4th at 1009 (same, decided July 29, 2024); *Bube v. Aspirus Hosp., Inc.*, 108 F.4th 1017, 1021 (7th Cir. 2024) (same,

27

decided July 29, 2024); *Bazinet v. Beth Isr. Lahey Health, Inc.*, 113 F.4th 9, 15-18 (1st Cir. 2024) (same, decided Aug. 13, 2024); *Sturgill v. Am. Red Cross*, 114 F.4th 803 (6th Cir. 2024) (same, decided Aug. 21, 2024).

The Seventh Circuit in *Passarella* concisely stated this consensus when holding "that an employee seeks accommodation because of their religion when **their request, by its terms, is plausibly based at least in part on some aspect of their religious belief or practice**." 108 F.4th at 1007 (holding explicitly "aligned" with the Sixth Circuit and Eighth Circuit) (emphasis added).

Defendants comment that "none of the opinions of its sister circuits are binding," and urge this Court to take "the sounder position" presented by the *Passarella* dissent in relying upon *Fallon.* Answering Br. 28-29. In the intervening months, however, no circuit court has broken from this consensus to apply the *Africa* guidelines and follow *Fallon,* a Third Circuit precedent, except for the Third Circuit itself in *McDowell.* 2024 U.S. App. LEXIS 29065.

*McDowell* imposes a gratuitous dichotomy in which "we must decide whether Plaintiffs' objections to the vaccine are best classified as either

(1) personal, secular, or medical, **or** (2) religious." *Id.* at \*4 (emphasis added). This is a false choice, duly recognized as such by the First, Sixth, Seventh and Eighth Circuits and also by this Court: "But a coincidence of religious and secular claims in no way extinguishes the weight appropriately accorded the religious one." *Callahan,* 658 F.2d at 684; *supra* Section I.A.2.

*McDowell* stands alone in several critical ways: It uniquely applies the *Africa* guidelines to its Title VII analysis. It is an unpublished, nonprecedential opinion,[11] unlike the published opinions in *Ringhofer, Lucky, Passarella, Bube, Bazinet* and *Sturgill*. It alone employs a false binary between religious and secular beliefs, allowing a secular belief to supersede and snuff out a religious belief.

Still, Defendants assert that their position represents the "vast majority of federal district courts." Answering Br. 30. This claim is doubtful. Defendants allege that "this case is one of thousands," and that in this "vaccination context, hundreds of federal district courts" have differentiated between beliefs that are religious and those that are

---

[11] See Rule 5.7 of the Internal Operating Procedures (I.O.P.) of the United States Court of Appeals for the Third Circuit.

not. Answering Br. 1, 24. From these alleged multitudes, Defendants cite (a) 21 out-of-circuit district court cases and (b) 11 in-circuit district court cases. Answering Br. 28 n.16, 30 n.17.

Of the (a) 21 out-of-circuit cases, Defendants cite nine opinions from district courts within the Third Circuit, six of which come from the same judge with the same defendant within a nine-day period. Answering Br. 30 n.17. Defendants cite another eight cases from district courts under the First, Sixth, Seventh and Eighth Circuits that each predate *Bazinet*, *Lucky*, *Passarella* and *Ringhofer*, respectively. Answering Br. 30 n.17.

Of the (b) 11 district court cases from within this Circuit, only two Oregon District Court cases resulted in dismissals with prejudice for plaintiffs with plainly nonreligious objections. *See Craven v. Shriners Hosps. for Children*, No. 3:22-cv-01619-IM, 2024 U.S. Dist. LEXIS 692, at *9-10 (D. Or. Jan. 2, 2024) (finding amendment futile because the original request was "decidedly secular"); *Riser v. St. Charles Health Sys.*, No. 6:23-cv-01720-AA, 2024 U.S. Dist. LEXIS 100774, at *14-16 (D. Or. June 6, 2024) (citing *Craven* and finding amendment futile for two of the plaintiffs whose original requests focused on "health issues").

30

The district court cases listed by Defendants do not support the assertion that the "vast majority of the federal district courts across the country" agree with dismissing pleadings with religious beliefs like Ms. Moli's, and Defendants take an outlier position that facially religious beliefs should be dismissed with prejudice. Answering Br. 30.

This Court has never applied *Africa* to Title VII, and the compelling weight of authorities does not support Defendants. This Court should continue to protect the full promise of Title VII alongside the First, Sixth, Seventh and Eighth Circuits.

## II. Denying leave to amend compounded the original errors that led to finding Ms. Moli failed to state a claim.

The District Court, while acknowledging that "leave to amend would be the norm," denied the request based on alleged futility. ER-12 (citing Fed. R. Civ. P. 15(a)(2)). Defendants prop up this decision by recycling their flawed claim that Ms. Moli's Religious Exemption Request was deficient as to religious substance and notice. Answering Br. 40. For Defendants, the allegation of defective notice means any amendment is futile. Answering Br. 40. Defendants, in alleging futility, do not marshal additional arguments to defend the District Court's use of the prima facie elements to impose a notice with knowledge requirement, ER-12–

31

13, and they cannot reconcile such an addition with section 2000e-2(a)(1). *Abercrombie,* 575 U.S. at 773; *Grabowski,* 69 F.4th at 1118; *supra* Section I.A.3.

Ms. Moli has alleged sufficient facts to establish the prima facie elements and withstand dismissal under Fed. R. Civ. P. 12(b)(6). Her employer received and granted her Religious Exemption Request, which on its face is "plausibly based at least in part on some aspect of [her] religious belief." *Passarella*, 108 F.4th at 1007; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The first and second elements are thus met, and the third—adverse employment action—is undisputed. *Heller*, 8 F.3d at 1438.

Moreover, because a prima facie case "is an evidentiary standard, not a pleading requirement," it "cannot be transposed into a rigid pleading standard for discrimination cases." *Sturgill,* 114 F.4th at 809 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510, 512 (2002)).

Even if this Court were to depart from its precedent and its sister circuits by requiring additional facts about Ms. Moli's religious beliefs at the pleading stage, amendment would not be futile because Ms. Moli has plausibly alleged facts to establish the second prima facie element

32

of notice. *Supra* Section I.A.3. Therefore, the denial of leave to amend also constitutes reversible error. ER-12–13.

## CONCLUSION

Ms. Moli's Religious Exemption Request, by its own terms, is plausibly based on an aspect of her sincerely held religious beliefs. ER-17–18. The District Court agreed that the Religious Exemption Request did identify a "religious belief that her body is a temple of God to justify her objection" to the Covid-19 vaccine. ER-12. Ms. Moli also stated her religious belief that receipt of a Covid-19 vaccine would result in her eternal damnation. ER-17–18. Defendants admit they did not question Ms. Moli's religious conflict after receiving and granting the Religious Exemption Request. Answering Br. 10.

> Scrutinizing the composition of these requests—especially at the pleading stage—runs counter to not only the broad language of Title VII but also the Supreme Court's repeated warnings that the law requires a hands-off approach when it comes to defining and discerning the core limits of religious exercise.

*Bube,* 108 F.4th at 1020. Title VII means what it says. *Groff,* 600 U.S. at 471. Title VII says it protects *all* religious observances and practice, as well as belief, 42 U.S.C. § 2000e(j), and that includes religious beliefs

33

that overlap with nonreligious beliefs. EEOC Covid Guidance, at L.2 to L.3; ER-9.

The District Court improperly "add[ed] words—and significant words, as it were—to the statute Congress enacted." *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974-75 (2024). Following both its sister circuits and the unanimous directive of the Supreme Court, reversal is required where a lower court demands "something more of her than the law as written." *Id.* at 974.

Ms. Moli respectfully requests that this Court reverse the decision below in its entirety.

Dated: November 29, 2024

/s/ Emily C. Mimnaugh
Emily C. Mimnaugh

*Counsel for Plaintiff-Appellant,*
*Fuamatala Moli*

34

# CERTIFICATE OF COMPLIANCE
## Form 8. Certificate of Compliance for Briefs

I certify that pursuant to FRAP 32(a)(7) and Ninth Circuit Rule 32-1, the attached opening brief is proportionately spaced, has a typeface of 14 points, is composed Century Schoolbook font, and contains no more than 7,000 words. According to Microsoft Word's "Statistics," this document contains 6,746 words.

/s/ Emily C. Mimnaugh
Emily C. Mimnaugh

35

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: November 29, 2024

/s/ Emily C. Mimnaugh
Emily C. Mimnaugh