Case No. 24-3155

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**FUAMATALA MOLI, an individual,**

*Plaintiff-Appellant,*

**v.**

**KING COUNTY – STATE OF WASHINGTON, a public entity; KING COUNTY METRO TRANSIT, a public entity, JOHN AND JANE DOES 1-10,**

*Defendants-Appellees.*

*Appeal from a decision of the United States District Court for the Western District of Washington, No. 2:23-CV-00823-RSL Hon. Robert S. Lasnik*

## APPELLANT'S SUPPLEMENTAL BRIEF

Matthew B. McReynolds
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Telephone: (916) 857-6900
mmcreynolds@pji.org

*Counsel for Appellant Fuamatala Moli*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................... ii

INTRODUCTION ..................................................................1

SUMMARY OF ARGUMENT.......................................................1

ARGUMENT .......................................................................2

   I.  Applying the panel decision in *Detwiler* to the present appeal would be premature ................................................2

   II. *Detwiler* and *Moli* are dissimilar in material respects ..........3

      A. *Detwiler* distinguished cases involving nasal swab testing from those involving vaccine mandates................3

      B. *Detwiler* does not control where, as here, an employee has identified several religious bases for her accommodation request..................................................7

      C. *Detwiler* does not address a central issue in this case—whether an employer can accept an employee's beliefs at the time, and only claim years later to have been uninformed ...........................................................9

CONCLUSION......................................................................10

CERTIFICATE OF COMPLIANCE ..............................................12

CERTIFICATE OF SERVICE ......................................................13

i

# TABLE OF AUTHORITIES

**CASES**

*Bazinet v. Beth Israel Lahey Health, Inc.*,
    113 F.4th 9 (1st Cir. 2024) ....................................................5, 6

*Callahan v. Woods*,
    658 F.2d 679 (9th Cir. 1981)................................................7, 8

*Detwiler v. Mid-Columbia Medical Center*,
    No. 23-3710, 2025 U.S. App. LEXIS 24567
    (9th Cir. Sept. 23, 2025)......................................................*passim*

*EEOC v. Abercrombie & Fitch Stores, Inc.*,
    575 U.S. 768 (2015)..................................................................10

*Gatto v. Johnson & Johnson Servs. Inc.*,
    No. 24-1992, 2025 U.S. App. LEXIS 5995
    (3d Cir. March 14, 2025) ...........................................................4

*Keene v. City & County of San Francisco*,
    No. 22-16567, 2023 U.S. App. LEXIS 11807
    (9th Cir. May 15, 2023) .........................................................7, 8

*Lucky v. Landmark Med. of Mich., P.C.*,
    103 F.4th 1241 (6th Cir. 2024) .............................................5, 6

*Moli v. King County*,
    No. 2:23-cv-00823-RSL, 2024 U.S. Dist. LEXIS 77904
    (W.D. Wash. April 29, 2024) ...............................................3, 10

*Passarella v. Aspirus, Inc.*,
    108 F.4th 1005 (7th Cir. 2024).............................................5, 6

*Ringhofer v. Mayo Clinic Amb.*,
    102 F.4th 894 (8th Cir. 2024)...................................................4

*Wright v. Honeywell Int'l, Inc.*,
   148 F.4th 779 (5th Cir. Aug. 5, 2025) ....................................5, 6

## CONSTITUTIONS AND STATUTES

Free Exercise Clause, U.S. Const. amend. I...............................6, 7

42 U.S.C. § 2000e et seq. (Title VII) .............................................10

## INTRODUCTION

Plaintiff-Appellant Fuamatala Moli submits this supplemental brief pursuant to this Court's order of September 25, 2025. Following oral argument of this appeal, on July 15 the panel vacated submission of the case pending a decision in *Detwiler v. Mid-Columbia Medical Center*, No. 23-3710, which had been argued June 13, 2025, in Portland.

After a split decision from the *Detwiler* panel, presently reported at 2025 U.S. App. LEXIS 24567 (9th Cir. Sept. 23, 2025), this Court directed Moli and King County to submit supplemental briefing within fourteen days, or by October 9, addressing the impact, if any, of that panel decision on disposition of this appeal.

## SUMMARY OF ARGUMENT

The *Detwiler* decision remains non-final, and it will first be noted below that the Court would thus be best served to await finality before applying that decision to the present. Assuming, though, the current panel decision in *Detwiler* will become final without modification, at least three key distinctions set the two cases apart.

First, the *Detwiler* panel distinguished its facts involving nasal swab testing from decisions like the present involving vaccine

1

mandates. Indeed, this was the primary response to the dissent's contention that the panel majority was departing from the national consensus.

Second, the panel decision in *Detwiler* draws a distinction between beliefs stated in terms of perceived medical danger or harm, and cases like the present which involve broader and deeper identification of Scripture-based opposition and fears of eternal damnation.

Third, Moli's appeal can and should be independently decided on the alleged failure to inform her employer of her beliefs. Accepting the County's argument and the district court's rationale on this crucial point would create additional conflict within and beyond the Circuit, beyond that already created by *Detwiler*.

## ARGUMENT

### I. Applying the panel decision in *Detwiler* to the present appeal would be premature.

As a procedural matter, Ms. Detwiler (whose counsel also represents Ms. Moli) intends to file a combined petition for rehearing and rehearing en banc. With the Court having granted a fourteen-day extension, the petitions are due October 21, 2025. The split decision of

the panel and dissent, and the majority's committal of the Circuit to the minority position in a widening Circuit conflict, would seem to increase the odds that rehearing could be granted. Second, and relatedly, the Circuit split which will persist regardless of which way *Detwiler* is ultimately decided will incentivize the losing side to pursue a petition for certiorari to the U.S. Supreme Court.

The *Detwiler* panel's direction that the courts of this Circuit begin scrutinizing which religious accommodation claimants are "truly religious" is expected to attract the interest of at least some fellow Circuit judges, and perhaps Justices.

For these reasons, Moli submits that this panel would be best served to await finality from *Detwiler* before attempting to apply it here.

## II. *Detwiler* and *Moli* are dissimilar in material respects.

### A. *Detwiler* distinguished cases involving nasal swab testing from those involving vaccine mandates.

Assuming that *Detwiler* does achieve finality in its current form, the arguments there and here certainly overlap. At a high level of

3

generality, both sought religious exemptions and accommodations from COVID-19-related mandates.

Initially, *Detwiler* paints in broad strokes, leading the reader to expect a broad holding. *See, e.g., Detwiler* at *4-6, *14-18, *20-24.

But in response to criticism from the dissent, the panel majority appeared to narrow its holding considerably to the atypical facts before it. Unlike Ms. Moli, Ms. Detwiler was actually granted an accommodation to the vaccine mandate while being denied a further accommodation to use saliva testing rather than nasal swab testing as an alternative. And ultimately, the distinction mattered to the panel, as will be explained next.

The majority found particularly relevant a Third Circuit decision, *Gatto v. Johnson & Johnson Servs. Inc.*, No. 24-1992, 2025 U.S. App. LEXIS 5995 (3d Cir. March 14, 2025). *Gatto* upheld dismissal of a claim by an employee whose request for accommodation to nasal swab testing had been rejected. To the panel majority, this was "strikingly similar," *Detwiler* at *24. Meanwhile, the Eighth Circuit had reached the opposite conclusion in *Ringhofer v. Mayo Clinic Amb.*, 102 F.4th 894 (8th Cir. 2024), which also addressed both COVID-19 vaccine and

testing mandates, reversing dismissals of the claims. *Detwiler* at \*25-26. The *Detwiler* majority sided with the Third Circuit.

In dissent, Judge VanDyke pointed out that several other Circuits had weighed in, all aligning with the Eighth Circuit in similar COVID-19 mandate cases, and none with the Third Circuit. To this end, he cited *Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th 9 (1st Cir. 2024); *Wright v. Honeywell Int'l, Inc.*, No. 24-30667, 148 F.4th 779, 2025 WL 2218131 (5th Cir. Aug. 5, 2025); *Lucky v. Landmark Med. of Mich., P.C.*, 103 F.4th 1241 (6th Cir. 2024); and *Passarella v. Aspirus, Inc.*, 108 F.4th 1005 (7th Cir. 2024). He could have further cited several other very similar decisions from these Circuits and from the Fourth Circuit as well.

In response, the panel majority drew a distinction between the Circuit decisions identified by Judge VanDyke, discounting them as not involving nasal swab testing. The majority wrote, "The cases from the First, Fifth, Sixth, and Seventh Circuits, cited by the dissent for the proposition that today's decision departs from a national consensus, adjudicate challenges to vaccine mandates, not testing requirements."

5

*Detwiler* at fn. 5 (citations omitted to *Bazinet*; *Wright*; *Lucky*; and *Passarella*).

To be sure, the panel majority elsewhere cites several vaccine mandate decisions and Free Exercise decisions while criticizing the dissent for doing so. And the majority believed its task was to discern whether the Plaintiff had identified a "truly religious principle," *Detwiler* at *17.

But taking its explanation at face value, the panel does not appear to intend that its decision on swab testing is to control other Circuit decisions on vaccine mandates. If this Court accepts and applies the *Detwiler* panel's distinction between testing and vaccine mandates, it should review the additional Circuit conflict identified by Judge VanDyke with fresh eyes. And having done so, Moli submits that this Court should not extend conflict with the Eighth Circuit to further encompass disagreement with the First, Fourth, Fifth, Sixth, and Seventh Circuits. Should the Court ultimately embark on that path, it might benefit from more fulsome briefing delving into not only the decisions put forward by Judge VanDyke, but additional, similar holdings from those Circuits and the Fourth Circuit.

6

### B. *Detwiler* does not control where, as here, an employee has identified several religious bases for her accommodation request.

The panel majority in *Detwiler* drew further distinctions between that plaintiff's objections to the perceived harmfulness of nasal swab testing, which the panel interpreted as personal or medical rather than "truly religious," *Detwiler* at \*17, and objections to the vaccines based in concerns such as fetal cell testing and connection to the biblical "mark of the beast." In this way, the panel distinguished *Keene v. City & County of San Francisco,* No. 22-16567, 2023 U.S. App. LEXIS 11807 (9th Cir. May 15, 2023) (*Keene I*), which involved concerns about fetal cell testing of vaccines that tied in with religious opposition to abortion. The panel also distinguished *Callahan v. Woods*, 658 F.2d 679 (9th Cir. 1981), a Free Exercise decision finding sufficiently religious a former inmate's perceived connection between social security numbers and the mark of the beast in the Book of Revelation.

Like Ms. Detwiler, Ms. Moli noted her belief that her body was a temple of the Holy Spirit, as set forth in the Apostle Paul's first epistle to the Corinthians. But Moli went further, and this was one of at least

7

four Scripture passages she presented. The others included a reference to Deuteronomy 30:15-20, a passage urging believers to "choose life," often invoked by those who oppose abortion and its derivatives from a religious standpoint; James chapter 2 which warns against failing to act on one's beliefs; and the Book of Revelation chapter 14 which forecasts hellfire for those receiving the mandated "mark of the beast." Moli expressed a particularly strong fear of damnation if she received the vaccine. ER-6–7 (citing Scriptures in accommodation request).

The *Detwiler* majority did not purport to consign all such accommodation requests to the recycle bin. Where *Detwiler* read that appellant's connection between her body as a temple and nasal swab testing as not truly religious, it is considerably less tenable to say Moli's fears of eternal damnation, supported by Scripture passages—from Deuteronomy to James to Revelation in addition to I Corinthians—were not even plausibly religious. Indeed, some of Moli's stated beliefs are akin to those regarded as sufficiently religious in *Keene I* and *Callahan*. *Detwiler* did not hold otherwise, and neither should this Court.

8

### C. *Detwiler* does not address a central issue in this case-- whether an employer can accept an employee's beliefs at the time, and only claim years later to have been uninformed.

Of the five issues presented by Moli on appeal, only the first one, referencing the "body as a temple" rationale, is arguably affected by *Detwiler*. AOB at 5. The other four questions presented were not. The second and third questions presented by Moli pose especially troubling implications for this Circuit and should not be subsumed into *Detwiler*, which did not address them expressly or impliedly. In short, the County asserted—and the district court accepted—Moli failed to inform them that she had a religious conflict with a work requirement and thus needed accommodation. But Moli had no way of knowing that her attempt to explain her biblically-based beliefs, on a form provided by the County in which she cited Deuteronomy, I Corinthians, James, and Revelation, would much later be deemed insufficiently religious. When the County in actuality accepted those stated beliefs at the time and granted her an exemption, no reasonable employee in her position could

9

possibly know that the employer would later claim to be uninformed by the notice it indisputably received.

The district court nevertheless held the following:

> Even if plaintiff could now identify a sincerely held religious belief that actually precludes receiving the COVID-19 vaccine, she failed to give the employer timely notice of any such belief and will therefore be unable to raise an inference of unlawful employment discrimination.

ER-12–13; *Moli v. King County*, No. 2:23-cv-00823-RSL, 2024 U.S. Dist. LEXIS 77904 at \*11 (W.D. Wash. April 29, 2024). Endorsing the district court's view would arguably conflict with *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015) (rejecting employer's claim it did not have actual notice of applicant's religious beliefs and need for accommodation). Because *Detwiler* did not address these sobering implications of the *Moli* decision, and because determination of this issue can be expected to affect many other Title VII cases beyond the COVID-19 context, to the detriment of plaintiffs, this Court should address the question in the first instance once *Detwiler* becomes final.

## CONCLUSION

The many COVID-19 termination cases presently pending in this Court do not all present identical issues and should not be swept away

10

in one stroke. For the foregoing reasons, it would be a manifest injustice to Ms. Moli for her case to be deemed controlled by the split panel decision in *Detwiler*, with its self-described limitations to nasal swab testing and body-as-temple beliefs.

Respectfully submitted this 9th day of October 2025,

/s/ Matthew B. McReynolds
Matthew B. McReynolds

*Counsel for Plaintiff-Appellant,*
*Fuamatala Moli*

## CERTIFICATE OF COMPLIANCE

### Form 8. Certificate of Compliance for Briefs

I certify that pursuant to FRAP 32(a)(7) and Ninth Circuit Rule 32-1, the supplemental brief is proportionately spaced, has a typeface of 14 points, is composed in Century Schoolbook font, and contains no more than 2,000 words in the body of the brief. According to Microsoft Word's "Statistics," this document contains 1,886 words.

<u>/s/ Matthew B. McReynolds</u>
Matthew B. McReynolds

*Counsel for Plaintiff-Appellant*

12

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system.

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.

Dated: October 9, 2025

/s/ Matthew B. McReynolds
Matthew B. McReynolds

*Counsel for Plaintiff-Appellant*

13